**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 10 2010

JAMES W. McCORMACK CLERK
By: _Hautermaton_
DEP CLERK

| | | |
|---|---|---|
| RICELAND FOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | 4:10-CV-091 SWW |
| | ) | |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | This case assigned to District Judge _Wright_ |

**COMPLAINT** and to Magistrate Judge _Deere_

COMES NOW Plaintiff Riceland Foods, Inc. ("Riceland"), by and through its

undersigned counsel, and for its Complaint against Defendant Liberty Mutual Insurance

Company ("Liberty") states:

### THE PARTIES

#### Riceland

1.    Riceland is, and at all relevant times has been, an Arkansas corporation with its

principal place of business in Arkansas and more specifically in Stuttgart, Arkansas.

2.    Riceland is, and at relevant times has been, an agricultural cooperative comprised of

farmer-members.

3.    Riceland is in the business, among others, of providing marketing services for rice,

soybeans, and wheat grown by its farmers.  Riceland is the world's largest miller and marketer

of rice.

**Liberty**

4.   On information and belief, Liberty is, and at all relevant times has been, an insurance company organized and existing under the laws of Massachusetts with its principal place of business in Massachusetts.

5.   On information and belief, Liberty is qualified to do business in Arkansas and in fact, has done business and insured risks within the Arkansas, including those involving Riceland.

6.   This action arises out of and relates to Liberty's refusal to honor its contractual obligations under one or more policies of insurance that it issued to Riceland.  Specifically, numerous lawsuits have been filed by farmers and other entities seeking damages related to the alleged contamination of the U.S. long-grain rice supply with genetically engineered rice.  In addition, this action pertains to Liberty's attempt to demand that Riceland arbitrate coverage issues.

## JURISDICTION AND VENUE

7.   In accordance with 28 U.S.C. § 1332, this Court has subject matter jurisdiction over this action because complete diversity exists between the parties.  The amount in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00).

8.   This Court has personal jurisdiction over Liberty.  On information and belief, Liberty conducts business in Arkansas (and within this judicial district) on a continuous and systematic basis, including, but not necessarily limited to, contracting to insure persons and/or risks in Arkansas (and within this judicial district), and/or adjusting claims involving residents of and risks in Arkansas (and within this judicial district).  The insurance policies at issue herein and giving rise to the claims asserted involve Liberty's business activities in Arkansas (and this

judicial district); namely, Liberty contracted with an Arkansas corporation that is headquartered in Arkansas (and this judicial district) and the placement of the subject insurance policies involved Liberty's offices and/or agents within Arkansas (and this judicial district).

9.   Venue is proper in accordance with 28 U.S.C. § 1391 in that, on information and belief, Liberty conducts business in Arkansas (and this judicial district) on a regular basis, has contracted to insure persons and/or risks in Arkansas (and this judicial district), and/or adjusted claims involving residents of and risks in Arkansas (and this judicial district).  Riceland's headquarters are within this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## ALLEGATIONS COMMON TO ALL COUNTS

### THE POLICIES

10. During times relevant hereto, Riceland maintained certain insurance coverage through Liberty.

11. Specifically, Liberty issued certain general liability policies to Riceland in exchange for premiums charged.

12. Among the general liability policies of insurance that Riceland purchased and Liberty sold is a policy (numbered TB1-191-012268-184) for the period of August 1, 2004 to August 1, 2005 (the "2004 Policy").

13. The 2004 Policy contained no provision(s) seeking to mandate arbitration of disputes between Liberty and Riceland.

14. As the 2004 Policy was due to expire, Riceland communicated its desire to Liberty to renew the 2004 Policy for the next policy year.

15. Liberty advised Riceland of its willingness to renew Riceland's coverage, but omitted to disclose or explain to Riceland that the renewed policy would contain terms different from the 2004 Policy, and more specifically omitted to disclose or explain to Riceland that the renewal policy would contain an endorsement or terms not contained in the 2004 Policy concerning arbitration.

### The 2005 Policy

16. Liberty issued a policy of insurance, numbered TB1-191-012268-185, to Riceland with effective dates of August 1, 2005 to August 1, 2006 (the "2005 Policy").

17. The 2005 Policy was a renewal of the 2004 Policy.

18. A true and accurate copy of the 2005 Policy is attached hereto as **Exhibit 1** and incorporated herein by reference as if set forth fully herein.

19. Riceland purchased the 2005 Policy from Liberty by paying the premium charged.

20. The 2005 Policy identifies Riceland as the Named Insured, and includes an endorsement further expanding the "Named Insured" broadly to include Riceland and affiliated cooperatives. Exhibit 1, Endorsement 1.

21. The 2005 Policy provides Riceland with general liability coverage. Exhibit 1.

22. The per occurrence limit for coverage provided under the 2005 Policy is in the amount of $1,000,000 and the aggregate limit is $2,000,000. Exhibit 1.

23. The "Insuring Agreement" for Coverage A ("Bodily Injury and Property Damage Liability") in the 2005 Policy states, in part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damages" to which this insurance does not apply.

\* \* \*

   b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to policy period, no insured listed under Paragraph 1 of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change, or resumption of such "bodily injury" or property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Exhibit 1.

    24. The "Insuring Agreement" for Coverage A of the 2005 Policy also states "[t]he amount [Liberty] will pay for damages is limited as described in Section III – Limits of Insurance" and "[Liberty's] right and duty to defend ends when [Liberty] has used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C." Exhibit 1.

    25. Section III - Limits of Insurance of the 2005 Policy states that subject to the aggregate limit(s), the occurrence limit is the most Liberty will pay for the sum of damages under Coverage A. Exhibit 1.

    26. The 2005 Policy defines "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions". Exhibit 1. By endorsement, the following definition of "Occurrence" is added: "an Accident or Happening or

continuous or repeated exposure to conditions which unexpectedly and unintentionally caused

Personal Injury to or Destruction of Tangible Property." Exhibit 1, Endorsement 31.

27. The 2005 Policy defines "Property Damage" in relevant part as follows:

a.       Physical injury to tangible property, including all resulting loss of use of
that property.  All such loss of use shall be deemed to occur at the time of the
physical injury that caused it; or

b.       Loss of use of tangible property that is not physically injured.  All such loss
of use shall be deemed to occur at the time of the "occurrence" that caused it.

Exhibit 1.

28. The 2005 Policy contains an Endorsement 10 ("Binding Arbitration") that states, in

part:

If we and the insured do not agree whether coverage is provided under this
Coverage Part for a claim made against the insured, then either party may make a
written demand for arbitration.

Exhibit 1, Endorsement 10.

### The 2006 Policy

29. Liberty issued a policy of insurance, numbered TB1-191-012268-186, to Riceland with

effective dates of August 1, 2006 to August 1, 2007 (the "2006 Policy").

30. A true and accurate copy of the 2006 Policy is attached hereto as **Exhibit 2** and

incorporated herein by reference as if set forth fully herein.

31. Riceland purchased the 2006 Policy from Liberty by paying the premium charged.

32. The 2006 Policy identifies Riceland as the Named Insured, and includes an

endorsement further expanding the "Named Insured" broadly to include Riceland and affiliated

cooperatives.  Exhibit 2, Endorsement 1.

33. The 2006 Policy provides Riceland with general liability coverage.  Exhibit 2.

34. The per occurrence limit for coverage provided under the 2006 Policy is in the amount of $1,000,000 and the aggregate limit is $2,000,000. Exhibit 2.

35. The "Insuring Agreement" for Coverage A ("Bodily Injury and Property Damage Liability") in the 2006 Policy states, in part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damages" to which this insurance does not apply.
>
> * * *
>
> b.      This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> (3) Prior to policy period, no insured listed under Paragraph 1 of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change, or resumption of such "bodily injury" or property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Exhibit 2.

36. The "Insuring Agreement" for Coverage A of the 2006 Policy also states "[t]he amount [Liberty] will pay for damages is limited as described in Section III – Limits of Insurance" and "[Liberty's] right and duty to defend ends when [Liberty] has used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C." Exhibit 2.

37. Section III - Limits of Insurance of the 2006 Policy states that subject to the aggregate limit(s), the occurrence limit is the most Liberty will pay for the sum of damages under Coverage A.   Exhibit 2.

38. The 2006 Policy defines "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions".   Exhibit 2.   By endorsement, the following definition of "Occurrence" is added:   "an Accident or Happening or continuous or repeated exposure to conditions which unexpectedly and unintentionally caused Personal Injury to or Destruction of Tangible Property."   Exhibit 2, Endorsement 30.

39. The 2006 Policy defines "Property Damage" in relevant part as follows:

a.      Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Exhibit 2.

40. The 2006 Policy contains an Endorsement 10 ("Binding Arbitration") that states, in part:

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then either party may make a written demand for arbitration.

Exhibit 2, Endorsement 10.

### The 2007 Policy

41. Liberty issued a policy of insurance, numbered TB1-191-012268-187, to Riceland with effective dates of August 1, 2007 to August 1, 2008 (the "2007 Policy").

42. A true and accurate copy of the 2007 Policy is attached hereto as **Exhibit 3** and incorporated herein by reference as if set forth fully herein.

43. Riceland purchased the 2007 Policy from Liberty by paying the premium charged.

44. The 2007 Policy identifies Riceland as the Named Insured, and includes an endorsement further expanding the "Named Insured" broadly to include Riceland and affiliated cooperatives.  Exhibit 3, Endorsement 1.

45. The 2007 Policy provides Riceland with general liability coverage.  Exhibit 3.

46. The per occurrence limit for coverage provided under the 2007 Policy is in the amount of $1,000,000 and the aggregate limit is $2,000,000.  Exhibit 3.

47. The "Insuring Agreement" for Coverage A ("Bodily Injury and Property Damage Liability") in the 2007 Policy states, in part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damages" to which this insurance does not apply.
>
> \* \* \*
>
> b.     This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> (3) Prior to policy period, no insured listed under Paragraph 1 of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change, or resumption of such "bodily injury" or property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Exhibit 3.

48. The "Insuring Agreement" for Coverage A of the 2007 Policy also states "[t]he amount [Liberty] will pay for damages is limited as described in Section III – Limits of Insurance" and "[Liberty's] right and duty to defend ends when [Liberty] has used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C." Exhibit 3.

49. Section III - Limits of Insurance of the 2007 Policy states that subject to the aggregate limit(s), the occurrence limit is the most Liberty will pay for the sum of damages under Coverage A. Exhibit 3.

50. The 2007 Policy defines "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions". Exhibit 3. By endorsement, the following definition of "Occurrence" is added: "an Accident or Happening or continuous or repeated exposure to conditions which unexpectedly and unintentionally caused Personal Injury to or Destruction of Tangible Property." Exhibit 3, Endorsement 30.

51. The 2007 Policy defines "Property Damage" in relevant part as follows:

a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Exhibit 3.

52. The 2007 Policy contains an Endorsement 10 ("Binding Arbitration") that states, in part:

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then either party may make a written demand for arbitration.

Exhibit 3, Endorsement 10.

53. The 2005-2007 Policies (hereinafter, referred to collectively as the "Policies") provide consecutive "occurrence-based" general liability policies to Riceland spanning periods from August 1, 2005 to August 1, 2008.

54. The Policies obligate Liberty to defend any claims against Riceland or the other insureds falling within the insuring agreements (unless otherwise excluded) until the exhaustion of the applicable policy limits through satisfaction of judgments, if any, or good faith settlements.

## THE UNDERLYING LAWSUITS

55. Riceland has been named as one of several defendants in numerous lawsuits initiated by various farmers or growers of rice.

56. The claimants in these lawsuits are residents and/or business entities located in various counties throughout Arkansas and/or other states where they own and operate rice farms.

57. In addition, Riceland has been named as a defendant in numerous lawsuits initiated by various rice distributors. The farmer and distributor lawsuits are sometimes collectively referred to hereinafter as the "Underlying Lawsuits."

58. These farmer and/or distributor claimants in the Underlying Lawsuits are pursuing damages from Riceland and other defendants as a result of alleged contamination of the Arkansas and United States long-grain rice supply with genetically modified rice.

59. There are in excess of 100 Underlying Lawsuits in which Riceland has been so named as a defendant.

60. Collectively, all such complaints in these Underlying Lawsuits prove voluminous and attachment of such pleadings to this Complaint is impracticable for filing purposes, but examples of such pleadings from the Underlying Lawsuits are attached hereto as **Exhibits 4-5**.

61. More specifically, Exhibit 4 is a true and accurate copy of the complaint in *Goodgame, et al. v. Bayer Cropscience, L.P., et al.*, Case No. CV-2009-199-3, Circuit Court of Desha County, Arkansas, which is a lawsuit filed by a farmer or grower; Exhibit 5 is a true and accurate copy of an amended complaint in *In Re Genetically Modified Rice Litigation (Tilda LTD v. Riceland Foods, Inc.*, Case No. 4:06MD 1811 CDP (No. 4:07-CV-0457 CDP), which is a lawsuit filed by a distributor.

62. The Underlying Lawsuits allege that an intrusion or commingling of genetically engineered rice into the U.S. long-grain rice occurred, resulting in damage to the United States long-grain rice supply.

63. Among others, the Underlying Lawsuits each allege that Riceland acted negligently in various respects in failing to prevent and/or causing contamination of the United States long-rice supply and subjecting Riceland to claimed joint and several liability for the damages sustained.

64. Many of the Underlying Lawsuits also or in the alternative purport to claim that Riceland has strict liability with respect for the damage that genetically engineered rice allegedly caused the United States long-grain rice supply and the claimants in the Underlying Lawsuits.

65. The Underlying Lawsuits allege that the contamination of the United States long-grain rice supply with genetically modified rice took place in 2006-2008.

66. The Underlying Lawsuits have progressed at various speeds, with trial in the first such lawsuit beginning the week of February 8, 2010.

67. Riceland has denied all essential allegations made by the claimants in the Underlying Lawsuits, disputed the liability and/or damages claimed by such claimants, and asserted certain defenses.

## Liberty's Coverage Response(s)

68. Riceland promptly and properly notified Liberty of the Underlying Lawsuits after Riceland received service of such Underlying Lawsuits.

69. Riceland made a claim(s) under the Policies for the Lawsuits, entitling it to coverage, which would include both a defense and indemnification up to the applicable limits, if any be required.

70. Riceland tendered the Underlying Lawsuits to Liberty seeking defense.

71. Riceland made the first such notification to and coverage claim on Liberty over three years prior to the filing of this action.

72. Riceland retained counsel to defend it in the Underlying Lawsuits to avoid any resulting prejudice that would or could befall it without representation.

73. Riceland advised Liberty of the counsel retained and representing Riceland in the Underlying Lawsuits.

74. Liberty did not object to such representation to protect Riceland in the Underlying Lawsuits.

75. Despite Riceland's notifications and coverage claims to Liberty, Liberty failed to assume responsibility for its coverage obligations to Riceland with respect to the Underlying Lawsuits.

76. Liberty unreasonably delayed in providing its coverage position to Riceland.

77. With limited exception of three lawsuits for which Liberty ultimately and improperly denied Riceland coverage, Liberty repeatedly advised Riceland and/or its representatives that Liberty agreed to defend the Underlying Lawsuits and/or participate in the defense of the Underlying Lawsuits by satisfying defenses costs being expended and/or to be expended.

78. Liberty sought and was provided the billing statements reflecting sums that Riceland reasonably incurred in the defense of the Underlying Lawsuits for purposes of reimbursement to Riceland of these expenditures.

79. Despite Liberty's repeated statements that the potential or possibility of coverage exists under the Policies with respect to the Underlying Lawsuits and that it would, therefore, participate in their defense (or through payment of defense costs) subject to the reservation of certain rights that Liberty would seek to preserve, Liberty never assumed the defense of any of the Underlying Lawsuits, reimbursed Riceland any monies for its fees and costs incurred in the Underlying Lawsuits, or paid any monies directly to the counsel defending Riceland in the Underlying Lawsuits.

80. As of the date of this filing, Riceland has incurred a sum in excess of Seventy-Five Thousand ($75,000.00) in attorney's fees and expenses defending itself in the Underlying Lawsuits.

81. Liberty failed, and fails, to articulate any good faith basis for refusing to reimburse Riceland its costs to defend the Underlying Lawsuits to date or satisfy such expenditures on a going forward basis.

82. Riceland is informed and believes that Liberty has unnecessarily, improperly, and intentionally refused to honor its obligations under the Policies.

83. Riceland complied with all conditions precedent under the Policies or Liberty otherwise waived or should be estopped from asserting such conditions.

84. Having made no contribution to the defense of these many Underlying Lawsuits and despite its contractual obligation and previous representations that it would do so, Liberty elected to send Riceland an arbitration complaint by electronic means late in the afternoon of January 22, 2010, while Riceland faced trial in the first of the Underlying Lawsuits, seeking a declaration that Liberty owed Riceland no coverage under the Policies for the Underlying Lawsuits.

85. A true and accurate copy of Liberty's "Arbitration Complaint", without its exhibits, is attached hereto as **Exhibit 6** and incorporated by reference as if set forth fully herein.

### COUNT I
### (Declaratory Judgment - Arbitration)

86. Riceland realleges and incorporates paragraphs 1 through 85, inclusive, as if set forth fully herein.

87. This Court has the power to grant a declaratory judgment concerning the rights and liabilities of the parties pursuant to 28 U.S.C. § 2201 in that an actual controversy exists between Riceland and Liberty concerning the parties' respective rights and obligations under the Policies and the law, including, the lack of enforceability of arbitration endorsements in the Policies and Liberty's duty to defend Riceland under the Policies in the Underlying Lawsuits.

88. The 2005, 2006 and 2007 Policies each contain an endorsement pertaining to arbitration of disputes between Riceland and Liberty. Exhibits 1-3, Endorsements 10.

89. Neither the arbitration endorsement nor other provisions concerning arbitration of disputes between Liberty and Riceland appeared in the 2004 Policy of which the Policies are renewals, and Liberty never advised or explained to Riceland that it had altered policy terms

through the addition of an arbitration clause beginning with the renewal and placement of the
2005 Policy.

90. Liberty's arbitration complaint identifies the arbitration endorsements as its means
for Liberty's demand that Riceland attend binding arbitration concerning the coverage issues
presented in Liberty's arbitration complaint. Exhibit 6.

91. Arkansas Code § 16-108-201 states, in relevant part:

(b)(1)  A written provision to submit to arbitration any controversy thereafter
arising between the parties bound by the terms of the writing is valid, enforceable,
and irrevocable, save upon such grounds as exist for the revocation of any
contract.

(2)  This subsection shall have no application to personal injury or tort matters,
employer-employee disputes, nor to any insured or beneficiary under any
insurance policy or annuity contract.

92. Arkansas Code § 23-79-203 states, in relevant part:

(a)  No insurance policy or annuity contract shall contain any condition,
provision, or agreement which directly or indirectly deprives the insured . . . of
the right to trial by jury on any question of fact arising under the policy or
contract.

(b)  All such provisions, conditions, or agreements shall be void.

93. Pursuant to Arkansas Code § 16-108-201 and/or Arkansas Code § 23-79-203, the
endorsements to the Policies upon which Liberty relies to demand arbitration are invalid, void,
null, unenforceable, or of no effect as they violate Arkansas statutory law and the public policy
of Arkansas.  Accordingly, Liberty's arbitration demand is without force and effect.

94. In addition or in the alternative, the endorsements to the Policies upon which Liberty
relies to demand arbitration are invalid, void, null, unenforceable, or of no effect as Liberty
failed to advise Riceland of the inclusion of such terms upon renewal of the 2004 Policy and
thereafter and Liberty's arbitration demand is therefore ineffectual.

## COUNT II
### (Breach of Contract)

95. Riceland realleges and incorporates paragraphs 1 through 94, inclusive, as if set forth fully herein.

96. Riceland purchased coverage applicable to the Underlying Lawsuits for valuable consideration, by means of premiums paid to Liberty for the Policies.

97. The Policies are contracts of insurance that are valid and enforceable against Liberty.

98. Pursuant to the Policies, Liberty is obligated to provide a defense for Riceland (or otherwise satisfy Riceland's defense costs) in the Underlying Lawsuit, including, but not limited to, payment for attorneys' fees and costs incurred to defend Riceland in the Underlying Lawsuits.

99. Riceland has performed or is otherwise excused from performing all other obligations and responsibilities required of Riceland pursuant to the Policies.

100. Liberty has failed and refused to honor its obligations related to the Underlying Lawsuits, including, but not limited to, failure to pay attorneys' fees, expenses, and costs reasonably incurred in defense of the Underlying Lawsuits.

101. As a result of Liberty's breach(es) of the Policies by virtue of its refusal to defend or otherwise satisfy Riceland's defense costs in the Underlying Lawsuit, Riceland has been damaged in the sum in excess of Seventy-Five Thousand Dollars ($75,000.00) (which consists of the attorneys' fees and expenses incurred by Riceland in defending the Underlying Lawsuits), plus foreseeable consequential damages, pre-judgment interest for such liquidated sums, attorney's fees and costs, all to be proven at the time of trial.

102. Riceland continues to incur attorneys' fees and other litigation costs and expenses in the Underlying Lawsuits that constitute part of its damages resulting from Liberty's

breach(es) and as such, expressly reserves its right to seek damages in excess of the sum certain identified in the foregoing paragraph, which reflect the damages as of the date of filing.

## COUNT III
### (Declaratory Judgment - Duty to Defend Riceland)

103.   Riceland realleges and incorporates paragraphs 1 through 102, inclusive, as if set forth fully herein.

104.   The Policies require Liberty to pay all of Riceland's defense costs in the Underlying Lawsuits, including, but not limited to, attorneys' fees, costs, and expenses.

105.   Liberty's failure to satisfy its obligations under the Policies to defend Riceland or pay for its defense costs in the Underlying Lawsuits is contrary to the Policies and the law.

106.   Riceland requires a declaration of rights and any related relief because it continues to incur attorneys' fees and expense in the Underlying Lawsuits. To the extent the claims made against Riceland in the Underlying Lawsuits have not finally resolved prior to entry of judgment in this lawsuit, Riceland requires a declaration of the respective rights of Riceland and Liberty as to the Policies, as Riceland cannot fully assess all of its damages.

## COUNT IV
### (Statutory Damages - Liberty)

107.   Riceland realleges and incorporates paragraphs 1 through 106, inclusive, as if set forth fully herein.

108.   The Underlying Lawsuits constitutes claim(s) insured under the Policies that Riceland purchased from Liberty.

109.   Liberty acted as an insurance company in issuing the Policies to Riceland.

110.   Liberty bears liability to Riceland upon the Policies, including, but not necessarily limited to, liability for defense costs incurred by Riceland in defending the Underlying Lawsuits.

111.   Riceland made demands upon Liberty to assume Riceland's defense and/or pay its defense costs in the Underlying Lawsuits.

112.   Liberty has failed to timely assume Riceland's defense or pay Riceland's defense costs in the Underlying Lawsuit within the time proscribed by the Policies and/or within a reasonable period of time.

113.   In addition to recovery of its damages sought in the foregoing counts, Riceland is entitled to recover from Liberty the statutory damages that shall be awarded Riceland in accordance with Arkansas Code § 23-79-208, which amount includes 12% of Riceland's loss as well as its reasonable attorney's fees for prosecution of this lawsuit.

## COUNT V
## (Bad Faith - Liberty)

114.   Riceland realleges and incorporates paragraphs 1 through 113, inclusive, as if set forth fully herein.

115.   At all material times and in doing the acts alleged herein, Liberty knew or should have known that Riceland was entitled to a defense (or payment of its defense costs) pursuant to the terms and conditions of the Policies.

116.   At all material times and in doing the acts alleged herein, Riceland knew or should have known that it would be improper to refuse to defend or pay defense costs on behalf of Riceland based on the terms and conditions of the Policies and the Underlying Lawsuits.

117.   At all material times and in doing the acts alleged herein, Liberty knew or should have known that it owed Riceland a timely and reasonable coverage evaluation and response,

including its participation to the extent that Liberty elected not to deny coverage in the ongoing Underlying Lawsuits.

118. Nevertheless, acting fraudulently, oppressively, maliciously, outrageously, and in bad faith towards Riceland, and in conscious disregard for the law and Riceland's known rights and with the intention of wrongfully interfering with Riceland's prospective economic advantage and property interest in the benefits of the Policies, and of intentionally causing, or willfully disregarding the probability of causing, unjust and cruel hardship to Riceland, Liberty has refused to provide a defense and or pay the defense costs for the Underlying Lawsuits when it was timely advised of their existence, requested to satisfy these defense costs by Riceland, and advised that it would do so.

119. Liberty has acted unreasonably and in bad faith in reviewing and interpreting the terms and conditions of the applicable Policies and in seeking to avoid coverage altogether through its arbitration demand, which is of itself in violation of the law.

120. On information and belief, Liberty waited in excess of three years from its first notification of the Underlying Lawsuits without indication that it sought to avoid its coverage obligations and initiated its arbitration demand within approximately ten (10) days of the start of trial in the first such Underlying Lawsuit with intent to achieve a tactical advantage over Riceland as it is left to defend the Underlying Lawsuits, including trial of the first such Underlying Lawsuit.

121. As a result of Liberty's bad faith and breach of the implied covenant of good faith and fair dealing, Riceland has been damaged in the sum of at least Seventy-Five Thousand Dollars ($75,000.00) as of the date of this filing and which continue to accrue, plus foreseeable

consequential damages, pre-judgment interest and attorney's fees and other costs, all to be proven at the time of trial.

122.   As a result of the conduct alleged above, Riceland is further entitled to an award of punitive damages in an amount according to proof at trial necessary to punish Liberty and deter Liberty and others from engaging in such future conduct.

123.   Riceland requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Riceland respectfully requests that this Honorable Court enter an order and judgment granting the following relief in Riceland's favor and against Liberty:

A.      A declaration that the endorsements on the Policies concerning binding arbitration at either parties' demand are unenforceable, invalid, void, null, and/or of no effect as they are in conflict with Arkansas Code § 16-108-201 and/or Arkansas Code § 23-79-203;

B.      A declaration that the endorsements on the Policies concerning binding arbitration at either parties' demand are additionally or alternatively unenforceable, invalid, void, null, and/or of no effect as they constitute a material change in the placement of renewal policies that Liberty omitted to disclose or explain to Riceland;

C.      A declaration that Riceland is not required to comply with Liberty's arbitration demand and that Liberty's arbitration demand is ineffectual;

D.      A declaration that Liberty has no right to compel Riceland to arbitrate coverage disputes under the Policies;

E.      Awarding Riceland a sum greater than Seventy-Five Thousand Dollars ($75,000) reflective of the damages incurred by Riceland and to be proven prior to the time of such

judgment, including such damages Riceland incurred in satisfying the defense costs with respect to the Underlying Lawsuits;

      F.      A declaration that the Policies apply to Riceland's claims arising out of the Underlying Lawsuits;

      G.      A declaration that Liberty shall bear responsibility for any and all of Riceland's defense costs (including attorneys' fees, costs, and expenses) in the Underlying Lawsuits;

      H.      A declaration that Liberty shall honor all of the obligations and responsibilities set forth in the Policies for the Underlying Lawsuits;

      I.      Awarding Riceland the statutory damages required under Arkansas Code § 23-79-208, inclusive of 12% penalty, interest and attorney's fees;

      J.      Awarding Riceland pre-judgment interest with respect to its damages;

      K.      Awarding Riceland post-judgment interest with respect to its damages;

      L.      Awarding Riceland its attorneys' fees and costs for prosecution of this lawsuit;

      M.      Awarding a sum sufficient to punish Liberty and deter such conduct; and

      N.      Such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

In accordance with Federal Rule of Civil Procedure 38, Riceland hereby demands **trial by jury** on all issues so triable raised in this complaint or other pleadings in this lawsuit.

Respectfully submitted,

Barry Deacon (75030)
Paul D. Waddell (87179)
BARRETT & DEACON, P.A.
P.O. Box 1700
Jonesboro, AR 72403
(870) 931-1700
bdeacon@barrettdeacon.com
pwaddell@barrettdeacon.com

By: _____

Attorneys for Plaintiff