256200500007000002

**Liberty Mutual Insurance Company**

**Liberty Mutual.**

Liberty Mutual Insurance Group/Boston

**COMMERCIAL GENERAL LIABILITY DECLARATIONS**

| ACCOUNT | SUB-ACCT NO. | | | | |
|---|---|---|---|---|---|
| 01 22 68 | 0000 | | | | |

| POLICY NO. | TD/CD | SALES OFFICE | CODE | SALES REPRESENTATIVE | CODE | NR | 1ST YR |
|---|---|---|---|---|---|---|---|
| TB1-191-012258-185 | 23/4 | LITTLE ROCK, AR | 0933 | ZIHALA | 7101 | 2 | 1992 |

**Item 1.** Named Insured     Riceland Foods and as per Endorsement #1

Address     P.O. Box 927
Stuttgart, AR 72180

The named insured is:  Corporation

Business of named insured is:  Rice Milling

| **Item 2.** Policy Period | From | Mo. 08 | Day 01 | Year 2005 | to | Mo. 08 | Day 01 | Year 2006 |
|---|---|---|---|---|---|---|---|---|

12:01 A.M., standard time at the address of the named insured as stated herein.

**Item 3.** In return for the payment of the premium, and subject to all of the terms of this policy, we agree with you to provide the insurance as stated in this policy

**LIMITS OF INSURANCE**

| | |
|---|---|
| EACH OCCURRENCE LIMIT | $ 1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 100,000  Any one premises |
| MEDICAL EXPENSE LIMIT | $ 5,000  Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000  Any one person or organization |
| GENERAL AGGREGATE LIMIT | $ 2,000,000 |
| PRODUCTS / COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 |

Deductible Endorsement   Yes ☒    No ☐

TOTAL ADVANCE PREMIUM   $ 419,404

The premium for this policy is payable $ _____ In advance, $ _____ on first anniversary
and $ _____ on the second anniversary.

Audit Basis:   1 – At Expiration

The declarations are completed on the schedules designated Declarations Extension Schedules

These declarations, together with the Common Policy Conditions and Coverage Form(s) and any endorsement(s) complete the above numbered policy.

Forms and endorsements attached to this policy:  See attached forms and endorsements schedule

This policy, including all endorsements issued herewith, is hereby countersigned by _____

"N"1L00"     Authorized Representative

| Loc. Code | Typed | Periodic Payment | Rating Basis | Audit Basis | Home State | Pol. H. G. | Renewal of |
|---|---|---|---|---|---|---|---|
| | MBC 08/18/2005 | $ | R | 1 | AR | S- ☐ | TB1-191-012258-184 |

GPO 4051 R3



EXHIBIT
1

256200500007800003

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Form Number | Form Name | Endorsement Number | Comments / Expiring End. |
|---|---|---|---|
| GPO 4613 | Policy Cover | | |
| GPO 4078 R2 11 01 | Dividend Backers | | |
| GPO 4051 R3 | Com'l General Liability Declaration | | |
| GPO 4054 R1 | Declarations Extension Schedule | | |
| GPO 4096 R2 10 02 | Arkansas - Important Information To Policyholders | | |
| IL 00 17 11 98 | Common Policy Conditions | | |
| CG 00 01 12 04 | Commercial General Liability Coverage Form | | |
| 102 | Amendatory Endorsement | 1A | |
| LM 102 | Named Insured Endorsement | 1 | |
| CG 00 67 03 05 | Exclusion - Violation of Statue That Govern E-Mails, Fax, Phone Calls or Other Methods of | 2 | |
| CG 20 28 07 04 | Additional Insured - Lessor Of Leased Equipment | 3 | |
| CG 21 47 07 98 | Employment - Related Practices Exclusion | 4 | |
| CG 21 49 09 99 | Total Pollution Exclusion Endorsement | 5 | |
| CG 21 67 12 04 | Fungi Or Bacteria Exclusion | 6 | |
| CG 21 73 12 02 | Excl of Certified Acts of Terrorism | 7 | |
| CG 21 75 12 02 | Exclusion Of Certified Acts Of Terrorism And Other Acts Of Terrorism | 8 | |
| CG 21 87 05 04 | Conditional Exclusion of Terrorism (Relating to Disposition of Federal Terrorism Risk Insurance | 9 | |
| CG 24 02 12 04 | Binding Arbitration | 10 | |
| CG 24 04 10 93 | Waiver of Transfer of Rights of Recovery Against Others to Us | 11 | |
| CG 24 12 11 85 | Boats | 12 | |
| LG 10 18 05 01 | Additional Insured-Managers or Lessors Of Premises | 13 | |
| LG 2054 R1 10 96 | Employee Benefits Liability Endorsement | 14 | |
| LG 3025 R1 02 99 | Asbestos Exclusion Endorsement | 15 | |
| LG 3026 R1 02 99 | Discrimination Exclusion Endorsement | 16 | |
| LG 3112 07 03 | Silica Exclusion endorsement | 17 | |

2562005000070000004

# SCHEDULE OF FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| LG 3153 02 05 | General Amendatory Endorsement | 18 |
| LG 3160 04 05 | Liberty DirectSolutions for Food Processors | 19 |
| LG 31 62 12 04 | State Application of Terrorism Endorsement - TRIA Rejection | 20 |
| LG 5056 | Exclusion - Bodily Injury and Personal Injury to Employees | 21 |
| LG 6033 9 87 | Composite Rate Endorsement - Per $100 WC Payroll | 22 |
| LG 6044 01 93 | Amendment Non-Cumulation of Liability (Same Occurrence) | 23 |
| LG 6075 R4 04 02 | Personal And Advertising Injury Endorsement | 24 |
| LG 6112 01 96 | Amendment Suits - GL | 25 |
| IL 00 21 07 02 | Nuclear Energy Liability Exclusion Endorsement | 26 |
| 2319 (9-1-87) | Notice of Cancellation | 27 |
| 102 | Amendatory Endorsement | 28 |
| 102 | Amendatory Endorsement | 29 |
| 102 | Amendatory Endorsement | 30 |
| 102 | Amendatory Endorsement | 31 |
| 2290 R4 3-92 | Premium Discount | 32 |
| CG 26 08 04 90 | Arkansas Changes - Multi - Year Policies | 33 |
| IL 01 99 07 02 | AR CHG - Transfer of Rights of Recovery | 34 |
| IL 02 31 07 02 | AR Changes | 35 |
| CG 01 23 03 97 | Indiana Changes - Pollution Exclusion | 36 |
| IL 01 58 04 98 | Indiana Changes | 37 |
| CG 01 18 12 04 | Louisiana Changes - Legal Action Against Us | 38 |
| CG 01 25 03 03 | Louisiana Changes - Insuring Agreement | 39 |
| CG 26 84 12 04 | Louisiana Changes - Transfer of Rights of Recovery Others To Us Condition | 40 |
| CG 26 72 01 02 | Louisiana Changes - Premium Audit Condition | 41 |
| CG 01 34 08 03 | Missouri Changes - Pollution Exclusion | 42 |
| CG 26 25 12 04 | Missouri Changes - Guaranty Association | 43 |

254200500007000005

## SCHEDULE OF FORMS AND ENDORSEMENTS

| CG 26 50 12 98 | Missouri Changes - Medical Payment | 44 |
| CG 01 04 12 01 | New York Changes - Premium Audit | 45 |
| CG 01 63 09 99 | New York Changes - Commercial General Liability Form Endorsement | 46 |
| CG 26 21 10 91 | New York Changes - Transfer of Duties When Limit of Insurance Has Been Used Up | 47 |
| CG 26 24 08 92 | New York Changes- Legal Action Against Us | 48 |
| CG 01 03 03 02 | Texas Changes | 49 |
| CG 26 39 04 99 | TX Empl-Related Practices Exclusion | 50 |
| IL 01 68 05 02 | Texas Changes - Duties | 51 |

256200500007000006

## Declarations Extension Schedule

| Classifications And Locations | Code No | Premium Base WC Payroll | Rates per $100 WC Payroll | Advance Premiums |
|---|---|---|---|---|
| All Operations of the Named Insured | 20150 | | | |
| AR | | 59,359,500 | E) 0.3540 | 210,132 |
| | | 59,359,500 | AG) 0.1621 | 96,221 |
| | | 59,359,500 | AE) 0.0926 | 54,966 |
| FL | | 71,000 | AE) 0.0926 | 66 |
| | | 71,000 | AG) 0.1621 | 115 |
| | | 71,000 | E) 0.3540 | 251 |
| IN | | 72,300 | AG) 0.1621 | 117 |
| | | 72,300 | E) 0.3540 | 256 |
| | | 72,300 | AE) 0.0926 | 67 |
| LA | | 32,000 | E) 0.3540 | 113 |
| | | 32,000 | AE) 0.0926 | 30 |
| | | 32,000 | AG) 0.1621 | 52 |
| MO | | 2,933,800 | AE) 0.0926 | 2,716 |
| | | 2,933,800 | E) 0.3540 | 10,386 |
| | | 2,933,800 | AG) 0.1621 | 4,756 |
| NY | | 90,400 | AE) 0.0926 | 84 |
| | | 90,400 | AG) 0.1621 | 147 |
| | | 90,400 | E) 0.3540 | 320 |
| TX | | 182,100 | E) 0.3540 | 645 |
| | | 182,100 | AE) 0.0926 | 169 |
| | | 182,100 | AG) 0.1621 | 295 |
| Estimated Loss Expense | | | | 37,500 |
| AE)  Administrative Expense Rate | | | | |
| AG)  Aggregate Rate | | | | |
| E)  Excess Rate | | | | |
| M = Minimum Premium | | | Total | 419,404 |

GPO 4054 R1          Policy No: TB1-191-012266-185                    Page 1

256200500007000007

**RICELAND FOODS, INC.**

**LARGE RISK ALTERNATIVE RATING OPTION ENDORSEMENT**
**LARGE DEDUCTIBLE RETROSPECTIVE PLAN**

The insured and insurer have mutually agreed to a Large Deductible Retrospective Plan. This endorsement, and no other endorsement, determines the retrospective premium for the insurance provided during the rating plan period by the policy(ies). The terms and conditions of the applicable Deductible Endorsement(s) included with the policy(ies) are utilized in conjunction with this Large Risk Alternative Rating Option for a Large Deductible Retrospective Plan.

**I.      Coverage and Policies**

This retrospective rating agreement applies to the following lines of insurance:

a.   All General Liability (except Professional Liability and Product Recall Expense)
b.   All Automobile Liability (including Uninsured, Underinsured Motorists, Medical Payment and Personal Injury Protection)

provided under the policies listed below and renewal and rewrites thereof:

| Policies | States/Coverages |
|---|---|
| TB1-191-012268-185 | all states and coverages to which the policy(ies) applies |
| AST-191-012268-205 | |
| AS2-191-012268-255 | |

**II.     Period of the Rating Plan Agreement**

This rating agreement will apply to the coverage as specified in Section I - Coverage and Policies for the period beginning 08/01/2005 and ending 08/01/2006, referred to herein as the Rating Plan Period.

**III.    Definition of Terms**

**Deductible Limit**

"Deductible Limit" is the policyholder's deductible limit, as defined by any applicable Deductible Endorsement(s) attached to the policies listed in Section I above.

**Standard Premium**

"Standard Premium" is the premium we would charge during the Rating Plan Period for the insurance subject to the Rating Plan if you had not chosen the Retrospective Rating Plan, but with exceptions. Standard premium does not include the audited expense constant charge, the premium discount credit, the deductible premium credit or any other expense modification.

For lines of insurance other than workers compensation, the definition of "Standard Premium" does not include those items listed in Section V: Deductible Expense Premium, Administrative Expense Premium, Loss Limitation Premium, Excess Premium and Not Subject Premium.

If this endorsement applies to more than one policy or state, the "Standard Premium"

256200500007000008

will be the sum of the "Standard Premiums" for each policy and state.

<u>Ratable Incurred Losses</u>

"Ratable Incurred Losses" are all amounts we pay for losses and estimates that we will pay for losses, including all amounts paid or estimated to be paid for deductible losses as defined by any applicable Deductible Endorsement(s) attached to the policies listed in Section I above, and the following items:

1. premium on bonds paid for by us in accordance with the provisions of the policies, except that this provision will not apply for workers' compensation, employers liability or auto physical damage insurance;

2. interest on judgments payable in accordance with the provisions of the workers' compensation policy(ies);

3. expense incurred in seeking recovery against a third party under the insurance subject to retrospective rating, except that this will apply for workers' compensation and employers liability insurance only if recovery is obtained against the third party.

4. all amounts that we pay and estimates that we will pay for allocated loss adjustment expense, which shall include non-workers' compensation interest on judgments payable in accordance with the provisions of the policy(ies).

For the purpose of this definition:

"Ratable Incurred Losses" shall not include losses resulting from an "act of terrorism" as defined under the Terrorism Risk Insurance Act of 2002. The Act defines "act of terrorism" to mean:

Any act that is certified by the Secretary [of the Treasury], in concurrence with the Secretary of State, and the Attorney General of the United States

(i) to be an act of terrorism;
(ii) to be a violent act or an act that is dangerous to –

   (I) human life;
   (II) property; or
   (III) infrastructure;

(iii) to have resulted in damage within the United States, or outside of the United States in the case of –

   (I) an air carrier (as defined in section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States); or
   (II) the premises of a United States mission; and

(iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

General Liability "Ratable Incurred Losses" to which this rating agreement applies that

256200500007000009

are caused by a single occurrence will be subject to a $250,000 Deductible Limit. However, if a single occurrence results in "Ratable Incurred Losses" over multiple rating plan periods and/or multiple anniversary periods, then each such rating period's and/or anniversary period's Deductible Limit will be triggered and will apply to the portion of the losses within that particular rating plan period or anniversary period.

Automobile Liability "Ratable Incurred Losses" to which this rating agreement applies caused by a single accident will be subject to a $250,000 Deductible Limit. However, if a single accident results in "Ratable Incurred Losses" over multiple rating periods and/or multiple anniversary periods, then each such rating period's and/or anniversary period's Deductible Limit will be triggered and will apply to the portion of the losses within that particular rating plan period or anniversary period.

Plan Aggregate Limit is equal to 750,000.

**IV.    Retrospective Premium Rating Formula**

Insurance policies listed in the Schedule will be combined to calculate the total retrospective premium.  If the policies provide insurance for more than one insured, the retrospective premium will be determined for all insureds combined, not separately for each insured.

Retrospective Premium means the sum of the following elements, subject to minimum and maximum provisions when applicable:

**V.    Deductible Expense Premium, Administrative Expense Premium, Loss Limitation Premium, Excess Premium and Not Subject Premium**

   a.    Terrorism Risk Insurance Act Premium.

         A flat charge of $0 for the General Liability Terrorism Risk Insurance Act Premium, plus

         A flat charge of $0 for the Auto Liability Terrorism Risk Insurance Act Premium, plus

   b.    Converted Deductible Variable Expense Charge

         Actual Ratable losses multiplied by a Deductible Variable Expense Factor of 0.150 for General Liability, plus

         Actual Ratable losses multiplied by a Deductible Variable Expense Factor of 0.1250 for Automobile Liability, plus

   c.    Deductible Administrative Expense Premium

         A rate of 0.09260 multiplied per 100 of audited WC payroll for General Liability Deductible Administrative Expense Premium, plus

         A rate of 0.03090 multiplied per 100 of audited WC payroll for Automobile Liability Deductible Administrative Expense Premium, plus

   d.    Deductible Loss Limitation Premium

         A rate of 0.15210 multiplied per 100 of audited WC payroll for General Liability

154200500007000010

Deductible Loss Limitation Premium, plus

A rate of 0.032460 multiplied per 100 of audited WC payroll for Automobile Liability Deductible Loss Limitation Premium, plus

**e.**   Deductible Excess Premium

A Discounted rate of 0.3540 multiplied per 100 of WC payroll for General Liability Deductible Excess Premium as audited under the provisions of the General Liability policy(ies), plus

A Discounted rate of 0.3120 multiplied per 100 of WC payroll for Automobile Liability Deductible Excess Premium as audited under the provisions of the Automobile Liability policy(ies), plus

Assessment Charges are collected as part of the premium or as a separate surcharge (not premium) as defined by the state jurisdiction; surcharges are not part of this Retrospective Premium plan agreement because they are not premium.

**VI.**   Dates of Computation of Retrospective Rating Premium

**A.**   We will calculate the Retrospective Premium and the Not Subject Premium using the audited exposure base and rates/factors agreed to in Section IV. Retrospective Premium Rating Formula and Section V. Not Subject Premium along with the "Ratable Insured Losses" valued as of a date six months, or as otherwise mutually agreed to, after the expiration of the Rating Plan Period or after each anniversary period ends if this is a multi-year plan agreement. This calculation will be made by us as soon as practicable after such valuation date, and annually thereafter.

**B.**   We may make a special valuation of the Retrospective Premium and the Not Subject Premium as of any date that any insured covered by this policy(ies) is declared bankrupt or insolvent, or makes an assignment for the benefit of creditors, or is involved in reorganization, receivership or liquidation, or disposes of all its interest in work covered by this policy(ies).

**C.**   If after any valuation date and subsequent calculation, the Retrospective Premium and Not Subject Premium that you have paid us prior to such calculation, is less than the Retrospective Premium and Not Subject Premium due as result of such calculation, then you shall pay us the difference when billed. Conversely, if after any such calculation, the Retrospective Premium and Not Subject Premium that you have paid us prior to such calculation, is greater than the premium due as result of such calculation, then we shall refund you the difference as soon as practicable, or, at our option, credit such amounts to any unpaid balances that you owe us.

Each Name Insured covered under the policy(ies) listed in Section I is jointly and severally liable for all premiums due under this rating agreement, and for any other financial obligations of any Named Insured to us arising out of any agreements contained in the policy(ies) listed in Section I.

**D.**   We may mutually agree with you that any calculation of the Retrospective Premium is the final calculation. If we make such an agreement, no other calculation will be made unless there is clerical error in the final calculation.

## VI. Cancellation

The cancellation or non-renewal, prior to the end of the period of this rating agreement, of any policy designated in Section I, or renewals or rewrites thereof will be considered cancellation of this rating agreement.

In the event of cancellation by you:

A. The premium for the cancellation become effective will be computed by applying the short rate penalty provisions of the policies corresponding to the time the policy is in force to the premium extended pro-rata to a full annual basis. Such premium for that period and all completed annual periods will be used in the computation of the retrospective and excess premiums. The sum of such premiums will be the minimum.

B. In computing the minimum retrospective premium, the premium will be audited premium to the date of cancellation and then extended pro-rata from the date of cancellation to the end of the period of this rating agreement. Cancellation by us because of non-payment of premium by you will be considered to be cancellation by you for the purpose of computing the maximum premium.

C. Not Subject Premium will be computed as follows:

(i) If you cancel, the refund, if any, will be computed in accordance with the customary short rate procedure.

(ii) If we cancel for any reason other than non-payment, the refund, if any will be computed pro-rata.

Cancellation of the insurance apply to a part of the operations as designated in the declarations of the policy(les) listed in Section I, is deemed to be cancellation of the entire rating agreement except that the cancellation of the insurance applying to that part of the operations that are discontinued or sold by the insured will not be deemed to be cancellation of this rating agreement.

In the event of cancellation by you:

The premium for the period before the cancellation becomes effective will be computed by applying the short rate penalty provisions of the policies corresponding to the time the policy is in force to the premium extended pro-rata to a full annual basis. Such premium for that period and all completed annual periods will be used in the computation of the retrospective and excess premiums. The sum of such premiums will be the minimum.

## VIII. Change in Service Provider

One or more of the policies to which this endorsement applies has been issued based upon representations made to us concerning the manner by which claims services are to be provided and the identity of the party or parties, other than us, providing those services. If, during the term of such policy or policies, you intend to make any significant change in the manner by which claims services are performed or any change in the identity of the party or parties providing those services to you, you shall send us as much advance written notice of the proposed change as is reasonably possible.

25C00500007R00001

256200500007000012

If such a change does occur we shall have the right, in our sole discretion, to revise the premium chargeable and/or other terms of such policy or policies effective from the date of such change through the expiration of the policy period, or, where permissible by law, to cancel such policy or policies by providing you with appropriate advance written notice of cancellation.

Accepted by _Terry Richardson_   _VP-Administration_   _Aug 28, 20__
           (Insured)              (Title)              (Date)

(Proprietor, Partner or Authorized Officer of Corporation)

This endorsement is executed by the company below designated by an entry in the box opposite its name

Premium $

☐ LIBERTY MUTUAL INSURANCE COMPANY
☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

Effective Date          Expiration Date

For attachment to Policy or Bond No. TB1-191-012268-185

_Dexter R. Legg_              _Edmund F. Kelly_
SECRETARY                    PRESIDENT

Audit Basis

Issued To .

                        Countersigned by _____
                                        Authorized Representative

Issued              Sales Office and No.              End. Serial No. 1A

(Ed. 3/98)                    Copyright 1998 Liberty Mutual Group

256200500007000013

## ''.\MED INSURED ENDORSEM''''\T

It is agreed that the term "Named Insured" includes in addition to the person or organization named in Item 1 of the Declarations

Riceland foods, Inc. and affiliated cooperatives including but not limited to the following:
Stuttgart Grain Drying Cooperative
Lonoke Grain Drying Cooperative
Wheatley Grain Drying Cooperative
Hickory Ridge Grain Drying Cooperative
McGehee Grain Drying Cooperative
Hazen Grain Drying Cooperative
Fair Oaks Grain Drying Cooperative
Weiner Grain Drying Cooperative
Dumas Grain Drying Cooperative
East Arkansas Grain Drying Cooperative
Tuckerman Grain Drying Cooperative
Lee County Grain Drying Cooperative
Jackson County Grain Drying Cooperative
Riceland Foods, Inc.
Pendleton Facility
West Memphis Facility
Stuttgart Soya Processing

And to any other interest newly acquired or constituted, and owned or affiliated with the Arkansas Rice Growers and Riceland Foods, Inc.

This endorsement is executed by:   Liberty Mutual Insurance Company

Premium $
Effective Date                          Expiration Date                         Dexter R. Long
                                                                                SECRETARY          Edmund F Kelly
                                                                                                   PRESIDENT

For attachment to Policy or Bond No.   TB1-191-012268-185
Audit Basis
Issued To

                                        Countersigned by _____
                                                         Authorized Representative

        Issued              Sales Office and No.                    End. Serial No. 1

LM 102                                                              Page 1   of  1

256200500007000014

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date

For attachment to Policy No.    TB1-191-012266-185

Audit Basis

Issued To

*Dexter P. Legg*                *Edmund F. Kelly*
SECRETARY                        PRESIDENT

Countersigned by    _____
                         Authorized Representative

Issued            Sales Office and No.            End. Serial No. 2

CG 00 67 03 05            © ISO Properties, Inc., 2004            Page 1 of 1

256200500007000015

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) |
|---|
| VFS Leasing Company<br>PO Box 5751<br>Cincinnati, OH 45201<br><br>"As their interest may appear" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

A. Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

B. With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY.

Premium  $
Effective Date
For attachment to Policy No.     TB1-191-012268-185
Audit Basis

Issued To

*Dexter P. Legg*
SECRETARY

*Edmund F. Kelly*
PRESIDENT

Countersigned by _____
Authorized Representative

Issued                              Sales Office and No.                    End. Serial No.  3

CG 20 28 07 04                     © ISO Properties, Inc., 2004                      Page 1 of 1

25620050007000016

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to :

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

**B.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**C.** The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date      Expiration Date

For attachment to Policy No.    TB1-191-012268-185

Audit Basis

Issued To

*Dexter R. Legg*
SECRETARY

*Edmund F. Kelly*
PRESIDENT

Countersigned by _____
                       Authorized Representative

Issued           Sales Office and No.           End. Serial No. 4

CG 21 47 07 98          Copyright, Insurance Services Office, Inc., 1997

156200500067000017

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f.  **Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date

For attachment to Policy No.    TB1-191-012268-185

Audit Basis

Issued To

SECRETARY                                    PRESIDENT

Countersigned by  _____
                              Authorized Representative

Issued              Sales Office and No.              End. Serial No. 5

256200500007000018

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

a. "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

CG 21 67 12 04                    © ISO Properties, Inc., 2003                    Page 1 of 2

256100500007000019

**C. The following definition is added to the Definitions Section:**

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date                    Expiration Date

For attachment to Policy No.    TB1-191-012268-185

Audit Basis

Issued To

SECRETARY                        PRESIDENT

Countersigned by   _____
                              Authorized Representative

Issued             Sales Office and No.        End. Serial No. 6

© ISO Properties, Inc., 2003          CG 21 67 12 04

25620050000700020

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of "a certified act of terrorism".

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

a. The act resulted in aggregate losses in excess of $5 million; and

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium  $
Effective Date                        Expiration Date
For attachment to Policy No.    TB1-191-012268-185
Audit Basis

Issued To

Dexter R. Legg
SECRETARY

Gene F. Kff
PRESIDENT

Countersigned by _____
                                Authorized Representative

Issued                          Sales Office and No.                    End. Serial No. 7

254200500007000021

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 · threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a. Physical injury that involves a substantial risk of death; or

    b. Protracted and obvious physical disfigurement; or

    c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

    a. The act resulted in aggregate losses in excess of $5 million; and

256200050007000022

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium $

Effective Date                          Expiration Date

For attachment to Policy No.   TB1-191-012268-185

Audit Basis

Issued To

SECRETARY          PRESIDENT

Countersigned by _____

                                        Authorized Representative

Issued                    Sales Office and No.          End. Serial No. 8

CG 21 75 12 02               © ISO Properties, Inc., 2002          Page 2 of 2      □

256200500007000023

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A. Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs:

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

   b. A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

© ISO Properties, Inc., 2004

25620050007000024

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

   EXCLUSION OF TERRORISM

   We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

   1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C.5. or C.6. are exceeded.

© ISO Properties, Inc., 2004     CG 21 57 05 04

256200500007000025

With respect to this Exclusion, Paragraphs C.5. and C.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date                          Expiration Date

For attachment to Policy No.   TB1-191-012268-185

Audit Basis

Issued To

Dixie R. Lay                    Lance F Kliff
SECRETARY                                PRESIDENT

Countersigned by _____
                              Authorized Representative

Issued                          Sales Office and No.              End. Serial No.   9

256200500007000026

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BINDING ARBITRATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then either party may make a written demand for arbitration.

When this demand is made, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

  1.  Pay the expenses it incurs; and

  2.  Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county or parish in which the address shown in the Declarations is located. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium   $
Effective Date
For attachment to Policy No.        TB1-191-012268-186
Audit Basis

Issued To

SECRETARY          PRESIDENT

Countersigned by _____
                            Authorized Representative

Issued          Sales Office and No.          End. Serial No. 10

256200500007000027

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**
Port of New Orleans
P.O. Box 60046
New Orleans, LA 70169

Sysco Corporation and / or its affiliates
1390 Enclave Parkway
Houston, TX 77077

Southern Pacific Transportation Company
4099 McEwen Road
Room 600
Dallas, TX 75244

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Conditions (Section IV - COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following"

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium   $
Effective Date
For attachment to Policy No.   TB1-191-012268-185
Audit Basis

Issued To

SECRETARY                    PRESIDENT

Countersigned by _____

Authorized Representative

Issued                        Sales Office and No.              End. Serial No. 11

254240500007000028

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BOATS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| | |
|---|---|
| Description of Watercraft: | 1981 Monark 14' |
| | 1983 Polarcraft 18' |
| | 1986 Duracraft 16' No DUR41545H86 |

Additional Premium:    Included in Composite

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1.  Exclusion g. of COVERAGE A (Section I) does not apply to any watercraft owned or used by or rented to the insured shown in the Schedule.

2.  WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization legally responsible for the use of any such watercraft you own, provided the actual use is with your permission.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date

For attachment to Policy No.    TB1-191-012268-186

Audit Basis

Issued To

*Dixie R. Jay*                    *Lewis F Kff*
SECRETARY                        PRESIDENT

Countersigned by    _____
                    Authorized Representative

Issued              Sales Office and No.         End. Serial No. 12

CG 24 12 11 85        Copyright, Insurance Services Office, Inc., 1986

256200300007000029

# ADDITIONAL INSURED—MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

Designation of Premises (Part Leased to You):   Per Schedule on File

Name of Person or Organization (Additional Insured):

Additional Premium:

(If no entry for Additional Premium appears above, information required to complete the endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, or, if no person or organization is shown in the Schedule, then any person or organization to whom you are obligated by a written agreement to procure additional insured coverage, provided that:

(a) the "bodily injury", "property damage", "personal injury" or advertising injury" giving rise to liability occurs subsequent to the execution of the agreement; and

(b) the written agreement is in effect at the time of the "bodily injury", "property damage", "personal injury" or "advertising injury" for which coverage is sought.

That person or organization shall be referred to as the "Additional Insured."

The coverage afforded to the Additional Insured is limited to liability incurred as a result of some negligent act or omission of the Named Insured, its employees, agents, or subcontractors in the conduct of the Named Insured's ongoing operations.

If the written agreement to procure additional insured coverage requires that the insurance provided for the Additional Insured be broader than as provided by the preceding paragraph, then the coverage for the Additional Insured shall conform to that contract; provided, however, that in no event shall the coverage for the Additional Insured under this or the proceeding paragraph apply to liability that does not arise out of the ownership, maintenance or use of that part of the premises leased to you and the coverage is subject to the following additional exclusions:

This insurance does not apply to:

(a) Any "occurrence" which takes place after you cease to be a tenant in that premises.

(b) Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

As used above, that part of the premises leased to you shall only include those premises designated in the Schedule, or, if no premises are designated in the Schedule, only those locations leased to you for which you have agreed in a written agreement to provide additional insured coverage.

LG 1018 05 01                                                    Page 1 of 2

256200500007000030

The insurance provided by this endorsement applies only to coverages and limits of insurance required by written agreement, but in no event exceeds either the scope of coverage or the limits of insurance provided by this policy.

If a contract with the Named Insured requires that the insurance provided for the Additional Insured be primary concurrent or primary non-contributory, then the coverage provided to the Additional Insured under this endorsement shall conform to that contract. However, this insurance will conform to that contract only to the extent that the contract requires this insurance to be primary in comparison to the Additional Insured's own policy or polices; in no event shall a contract with the named insured operate to require this insurance to contribute with other additional insured coverage available to the Additional Insured, and this insurance shall be excess over any such other insurance, whether on an excess, contingent or primary basis.

To the extent that the Additional Insured would have had the right to pursue any other insurance carrier for coverage, including a defense, we shall share that right with the Additional Insured.

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date                    Expiration Date

For attachment to Policy No.     TB1-191-012288-185

Audit Basis

Issued To

SECRETARY                         PRESIDENT

Countersigned by   _____

                                  Authorized Representative

Issued            Sales Office and No.        End. Serial No. 13

LG 10 18 05 01                                Page 2 of 2

256200500007000031

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EMPLOYEE BENEFITS LIABILITY INSURANCE ENDORSEMENT**
**THIS A CLAIMS MADE COVERAGE**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

It is agreed that, subject to all of the terms of the policy not modified herein:

**1.   COVERAGE-EMPLOYEE BENEFITS LIABILITY**

We will pay those sums which the insured becomes legally obligated to pay as damages because of injury to the rights or interests of employees or their beneficiaries in "employee benefits programs" caused by any improper advice, error omission in the "administration" of such programs by persons authorized by the insured.

**2.   EXCLUSIONS**

This coverage does not apply to:

a.   Any claim based upon unlawful discrimination;

b.   Any claim with respect to which insurance is afforded in whole or part under any other coverage afforded by this policy or any endorsement thereto;

c.   Any claim based upon your failure or the failure of any insurer to pay or provide the benefits allegedly due under the contract relation to "employee benefits programs", or

d.   Any claim based upon the failure of stock or any compensation, investment or saving program to produce the financial gain represented.

**3.   COVERAGE PERIOD**

a.   This coverage applies only to claims first made against the insured on or after the effective date of this endorsement and before the end of the endorsement period; but, if during this endorsement period the insured becomes aware of any incident which may give rise to a claim covered by this insurance and gives us written notice of such incident, within 60 days after the end of this endorsement period, any claim which is later made and which arises out of such incident will be deemed to have been first made during this endorsement period.

b.   All claims for damages arising out of any one or relate series of errors, omissions or improper advice to which this insurance applies will be deemed to have been made at the time the first of those claims is made against any insured in accordance with paragraph a. above.

**4.   LIMITS OF INSURANCE**

a.   The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

256200500007090632

(1) insureds;

(2) claims made or suits brought; or

(3) persons or organizations making claims or bringing suits.

b.  The Aggregate Limit is the most we will pay for the sum of all damages arising out of all claims made during the endorsement period.

c.  Subject to b. above, Each Claim Limit is the most we will pay for all damages arising out of any one claim.

d.  If a Deductible Each Claim is shown in the Schedule of this endorsement, you are obligated to pay that amount of damages for each claim to which this insurance applies.  We are obligated to pay only that portion of the total of all damages (subject to the Limits of Insurance) which exceeds that deductible amount.  We may investigate and settle any claim at our discretion.  However, regardless of the amount of any claim, you must;

(1)  notify us promptly as required by Condition 2 of the policy ("Duties in the Event of Occurrence, Claim or Suit"), and

(2)  reimburse us promptly for all amounts we pay within the deductible amount.

Both your Aggregate Limit and your Each Claim Limit of insurance are reduced by the amount of damages paid or payable by you up to the deductible amount shown in the Schedule of this endorsement.

5.  **PERSONS INSURED**

a.  All of your elected and appointed General, Division and Department officer, Directors and Stockholders while acting within the scope of their duties as such; and

b.  Any of your employees who are authorized to act to in the "administration" of your "employee benefits programs."

6.  **DEFINITIONS**

A.  "Administration" means:

(1)  the determination of the eligibility of employees to participate in "employee benefits programs;"

(2)  The enrollment of employees in those programs;

(3)  the keeping of records as to those programs;

(4)  interpreting of the provisions of those programs; and

(5)  the giving of advice or counsel to employees or their beneficiaries as their rights or interests in those programs.

B.  "Employee Benefits programs: means those:

(1)  group life insurance

(2)  "accident and health insurance";

(3)  dental insurance;



25620050000700033

(4) pension;

(5) employee stock subscription;

(6) profit sharing;

(7) disability;

(8) retirement; or

any similar programs described in the Schedule of this endorsement and offered to employees and their beneficiaries in the United States of America, its territories and possessions, Puerto Rico and Canada.

It also include workers compensation, unemployment insurance and social security. If during this endorsement period you offer additional "employee benefits programs" not described in the Schedule of this endorsement then this insurance will also apply to those programs, but only until the 30th after you first offer each additional programs or the end of this endorsement period, whichever is earlier. If we add such additional program to the Schedule, the insurance will then continue to apply to those programs.

7.  **SCHEDULE**

    a.  LIMITS OF INSURANCE AGGREGATE LIMIT         $   1,000,000

          EACH CLAIM LIMIT                  $   1,000,000

    b.  DEDUCTIBLE EACH CLAIM             $       0

    c.  LIST OF "EMPLOYEE BENEFITS PROGRAM"

    d.  PREMIUM

         (1)  Number of Employees

         (2)  Rate of Employee

         (3)  Advance Premium

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date

For attachment to Policy No.    Expiration Date

Audit Basis              TB1-191-012268-185

Issued To

                                  SECRETARY           PRESIDENT

                       Countersigned by   _____

                                       Authorized Representative

          Issued                   Sales Office and No.           End. Serial No. 14

256200500007000034

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ASBESTOS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**The following exclusion is added to Paragraph 2., Exclusion of Section I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

bodily injury:
personal injury:
property damage:
caused by, or allegedly caused by, asbestos either alone or in combination with other substances or factors.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $
Effective Date
For attachment to Policy No.    TB1-191-012268-185
Audit Basis

Issued To

SECRETARY                    PRESIDENT

Countersigned by            Authorized Representative

Issued            Sales Office and No.            End. Serial No. 15

LG 3025 R1 02 99

256200500007000035

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - DISCRIMINATION

This endorsement modifies insurance provided under the following:

   COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage - A - Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

**This insurance does not apply to:**
Damages arising out of unlawful discrimination.

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium   $
Effective Date                              Expiration Date
For attachment to Policy No.    TB1-191-012268-185
Audit Basis

Issued To

                                                SECRETARY                    PRESIDENT

                              Countersigned by  _____
                                                        Authorized Representative

          Issued                    Sales Office and No.          End. Serial No. 16

LG 3026 R1 02 99                                              Page 1 of 1

256200500007000036

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.   The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

2.   Exclusions

This insurance does not apply to:

"Bodily injury" or "property damage" any part of which is caused by, or allegedly caused by, silica in any form or any substance containing silica, either alone, or in combination with other substances or factors, whether included in a product or otherwise

B.   The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2.   Exclusions

This insurance does not apply to:

"Personal and advertising injury" any part of which is caused by, or allegedly caused by, silica in any form or any substance containing silica, either alone, or in combination with other substances or factors, whether included in a product or otherwise

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium   $

Effective Date

For attachment to Policy No.       TB1-191-012268-185

Audit Basis

Issued To

SECRETARY                                PRESIDENT

Countersigned by

Authorized Representative

Issued                                       Sales Office and No.                    End. Serial No. 17

LG 3112 07 03

256200500007000037

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GENERAL AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This endorsement modifies insurance provided by CG 00 01

## INDEX

| | |
|---|---|
| Alienated premises | Section I - 2. |
| Knowledge of an Occurrence | Section IV - 1. |
| Liberalization | Section IV - 3. |
| Mental Anguish included in Bodily Injury | Section V - 1. |
| Non-owned Watercraft 50' | Section I - 1. |
| Premium Responsibility | Common Policy Conditions E |
| Rented premises | |
|     Fire Damage Legal Liability- expanded | Section I – 3.A. |
| Supplementary Payments | |
|     Bail Bond Limit - $2500 | Section I – 4.1.b. |
|     Loss Of Earnings - $500/day | Section I – 4.1.d. |
| Unintentional Failure to disclose Hazards | Section IV - 2. |

This endorsement modifies insurance provided by CG 00 01 by broadening some coverage grants and increasing some limits of liability.  Please carefully read this endorsement in conjunction with CG 00 01.

## SECTION I - COVERAGES

1. **Non-owned Watercraft**
   Subparagraph g.(2) of Exclusion g. of COVERAGE A (Section I - Coverages) is replaced by the following:

   (2)  A watercraft you do not own that is:
   (a)  Less than 50 feet long; and
   (b)  Not being used for public transportation or as a common carrier;

2. **Coverage for unknown hazards at alienated premises**
   Subparagraph j.(2) of Exclusion j. of COVERAGE A (Section I - Coverages) is replaced by the following:

   (2)  Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises, and occurs from hazards that were known by you, or should have reasonably been known by you, at the time the property was transferred or abandoned.

3. Increased coverage for rented premises

   **A. FIRE, LIGHTNING OR EXPLOSION DAMAGE**
   The last sentence of paragraph 2. Exclusions of COVERAGE A (Section I - Coverages) is replaced by the following:

   Exclusions c. through n. do not apply to damage by fire, lightning, or explosion to premises rented to you or temporarily occupied by you with permission of the owner.  A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).

256200500007000038

B. Limits for Fire Legal Liability

Paragraph 6 of SECTION III - LIMITS OF INSURANCE is replaced by the following:

6. Subject to Paragraph 5. of SECTION III - LIMITS OF INSURANCE, the most we will pay for damages because of "property damage" to premises rented to you or temporarily occupied by you with permission of the owner resulting from fire, lightning or explosion, or any combination of the three, is the amount shown next to Fire Damage Limit in the Declarations.

4. Supplementary Payments
Section I - Coverages, Supplementary Payments - Coverages A and B, Items 1.b. And 1.d., respectively, are replaced with:

b. Up to $2,500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies.  We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit" including substantiated loss of earnings up to $500 a day because of time off from work.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Amended Duties in the event of an occurrence, offence, claim or suit
Subparagraph 2.a. and 2.b. of Condition 2. of Section IV - Commercial General Liability Conditions are amended to add the following:

As used in this paragraph, you refers to an "executive officer", partner, member or legal representative.

2. Unintentional Failure to Disclose Hazards
Condition 6. of Section IV - Commercial General Liability Conditions is amended to add the following:

d. If you unintentionally fail to disclose any hazards existing at the inception date of your policy, we will not deny coverage under this Coverage Form because of such failure.  However, this provision does not affect our right to collect additional premium or exercise our right of cancellation or non-renewal.

3. Liberalization
Section IV - Commercial General Liability Conditions is amended to add the following:

10. Liberalization
If we adopt a change in our forms or rule which would broaden your coverage without an extra charge, the broader coverage will apply to this policy.  This extension is effective upon the approval of such broader coverage in your state.

## COMMON POLICY CONDITIONS - IL 00 17

1. Premium Responsibility
Paragraph E. of COMMON POLICY CONDITIONS - PREMIUM is replaced by the following:

E. PREMIUMS
1. Each Named Insured is jointly and severally liable for all premiums due under this policy and for any other financial obligation of any Named Insured to us arising out of any agreements contained in this policy.

256200500007000039

2. The First Named Insured shown in the Declarations will be the payee for any return premiums we pay.

**SECTION V – DEFINITIONS**

1. Mental Anguish is included in "Bodily Injury"
   Item 3. of Section V - Definitions is replaced with the following:

   3. "Bodily Injury" means bodily injury, sickness or disease sustained by a person.  It includes death or mental anguish, which results at any time from such physical harm, physical sickness or physical disease.  Mental anguish means any type of mental or emotional illness or distress.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date

For attachment to Policy No.   TB1-191-012268-165

Audit Basis

Issued To

CounTersigned by

Issued                                     Sales Office and No.                    End. Serial No. 16

256200500007000040

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LIBERTY DIRECTSOLUTIONS FOR FOOD PROCESSORS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

For optional coverages (items 1 and 2) below, coverage is afforded only if the appropriate box is checked.

☐ **ITEM 1. – PRODUCT WITHDRAWAL EXPENSE COVERAGE**

### Product Withdrawal Expense Schedule

| | |
|---|---|
| Aggregate Limit | $ |
| Deductible Amount Per Product Withdrawal | $ |
| Participation Percentage Per Product Withdrawal | % |
| Cut-Off Date | |

☒ **ITEM 2. – FOREIGN COVERAGE**

Item 3 - Alienated premises
Item 4 - Bodily Injury to Co-Employees - $500,000
Item 5 - Incidental Malpractice - $500,000
Item 6 - Knowledge of an Occurrence
Item 7 - Liberalization
Item 8 - Mental Anguish Included in Bodily Injury
Item 9 - Non-owned Watercraft 50'
Item 10 - On-premises Products Coverage
Item 11 - Premium Responsibility
Item 12 - Rented premises – Expanded Coverage
        Fire Damage Legal Liability - expanded
        Increased Limits - $300,000
Item 13 - Supplementary Payments
        Bail Bond Limit - $2,500
        Loss Of Earnings - $500/day
Item 14 - Unintentional Failure to disclose Hazards
Item 15 – Vendors Coverage

**ITEM 1. – PRODUCT WITHDRAWAL EXPENSE COVERAGE**

A. The following is added to Section I – Coverages:
   SECTION I – LIMITED PRODUCT WITHDRAWAL EXPENSE COVERAGE

   1. Insuring Agreement
      a. We will reimburse you for "product withdrawal expenses" incurred by you because of a "product withdrawal" to which this insurance applies.

         The amount of such reimbursement is limited as described in Section III – Limits Of Insurance. No other obligation or liability to pay sums or perform acts or services is covered.

      b. This insurance applies to a "product withdrawal" only if the "product withdrawal" is initiated in the "coverage territory" during the policy period because:

25620050000700004

(1) You determine that the "product withdrawal" is necessary; or

(2) An authorized government entity has ordered you to conduct a "product withdrawal".

c.  We will reimburse "product withdrawal expenses" only if:

(1) The expenses are incurred within one year of the date the "product withdrawal" was initiated;

(2) The expenses are reported to us within one year of the date the expenses were incurred; and

(3) The product that is the subject of the "product withdrawal" was produced after the Cut-Off Date designated in the Schedule.

d.  The initiation of a "product withdrawal" will be deemed to have been made only at the earliest of the following times:

(1) When you first announced, in any manner, to the general public, your vendors or to your employees (other than those employees directly involved in making the determination) your decision to conduct or participate in a "product withdrawal". This applies regardless of whether the determination to conduct a "product withdrawal" is made by you or is requested by a third party; or

(2) When you first received, either orally or in writing, notification of an order from an authorized government entity to conduct a "product withdrawal.

e.  "Product withdrawal expenses" incurred to withdraw "your products" which contain the same or substantially similar "defects" will be deemed to have arisen out of the same "product withdrawal".

2.  **Exclusions**
This insurance does not apply to "product withdrawal expenses" arising out of:

a.  **Breach Of Warranty And Failure To Conform To Intended Purpose**

Any "product withdrawal" initiated due to the failure of "your product" to accomplish their intended purpose, including any breach of warranty of fitness, whether written or implied. This exclusion does not apply if such failure has caused or is reasonably expected to cause "bodily injury" or physical damage to tangible property other than "your product".

b.  **Infringement Of Copyright, Patent, Trade Secret, Trade Dress Or Trademark**

Any "product withdrawal" initiated due to copyright, patent, trade secret, trade dress or trademark infringements.

c.  **Deterioration, Decomposition Or Chemical Transformation**

Any "product withdrawal" initiated due to transformation of a chemical nature, deterioration or decomposition of "your product". This exclusion does not apply if it is caused by:
(1) An error in manufacturing, design, or processing;

(2) Transportation of "your product"; or

(3) "Product tampering".

25620050000700004

   **d.** Goodwill, Market Share, Revenue, Profit Or Redesign

The costs of regaining goodwill, market share, revenue or "profit" or the costs of redesigning "your product".

   **e.** Expiration Of Shelf Life

Any "product withdrawal" initiated due to expiration of the designated shelf life of "your product".

   **f.** Known Defect

A "product withdrawal", initiated because of a "defect" in "your product" known to exist by the Named Insured or the Named Insured's "executive officers", prior to the date when this Coverage Part was first issued to you or prior to the time "your product" leaves your control or possession.

   **g.** Otherwise Excluded Products

A recall of any specific products for which "bodily injury" or "property damage" is excluded under Coverage A – Bodily Injury And Property Damage Liability by endorsement.

   **h.** Governmental Ban

A recall when "your product" or a component contained within "your product" has been:

     **(1)** Banned from the market by an authorized government entity prior to the policy period; or

     **(2)** Distributed or sold by you subsequent to any governmental ban.

   **i.** Defense Of Claim

The defense of a claim or "suit" against you for liability arising out of a "product withdrawal".

   **j.** Third Party Damages, Fines And Penalties

Any compensatory damages, fines, penalties, punitive or exemplary or other non-compensatory damages imposed upon the insured.

   **k.** Pollution-Related Expenses

Any loss, cost or expense due to any:

     **(1)** Request, demand, order, statutory or regulatory requirement that any insured or others test for, monitor, clean up, re-move, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

     **(2)** Claim or suit by or on behalf of a governmental authority for damages be-cause of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**B.** For the purposes of this endorsement, Section III – Limits Of Insurance is replaced by the following:
SECTION III – LIMITS OF INSURANCE

   **1.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

     **a.** Insureds;

256200500007000043

b. "Product withdrawals" initiated; or

c. Number of "your products" withdrawn.

2. The Aggregate Limit is the most we will reimburse you for the sum of all "product withdrawal expenses" incurred for all "product withdrawals" initiated during the policy period.

3. Deductible And Participation Percentage Provisions

a. Deductible

We will only pay for the amount of "product withdrawal expenses" which are in excess of the deductible amount, if any, shown in the Schedule of this endorsement. The deductible applies separately to each "product withdrawal". The limits of insurance will not be reduced by the amount of this deductible.

We may, or will if required by law, pay all or any part of any deductible amount, if applicable, to effect settlement of any claim or "suit". Upon notice of our payment of a deductible amount, you shall promptly reimburse us for the part of the deductible amount we paid.

b. Participation Percentage

If a Participation Percentage is indicated in the Schedule of this endorsement, the following provision applies:

You agree to participate in the payment of "product withdrawal expenses" which are in excess of the Deductible, to the extent of the Participation Percentage indicated in the Declarations. The Participation Percentage will apply separately to each "product withdrawal".

You also agree that the cost of your participation in the loss will be borne entirely by you when due and you will not obtain insurance to cover it.

The Limits of Insurance of Product Withdrawal Expense Coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

C. For the purposes of this endorsement, the Duties In The Event Of Occurrence, Claim Or Suit Condition under Section IV – Conditions is replaced by the following:

2. Duties In The Event Of A "Defect" Or A "Product Withdrawal"

a. You must see to it that we are notified as soon as practicable of any actual, suspected or threatened "defect" in "your product", or any governmental investigation, that may result in a "product withdrawal". To the extent possible, notice should include:

(1). How, when and where the "defect" was discovered;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature, location and circumstances of any injury or damage arising out of use or consumption of "your product".

b. If a "product withdrawal" is initiated, you must:

256200500007000044

    (1)  Immediately record the specifics of the "product withdrawal" and the date it was initiated; and

    (2)  Notify us as soon as practicable.

    You must see to it that we receive written notice of the "product withdrawal" as soon as practicable.

  c.  You must promptly take all reasonable steps to mitigate the expenses associated with a "product withdrawal". Any "profit" that you receive from mitigating the expenses will be deducted from the amount of reimbursement that you will receive for "product withdrawal expenses".

  d.  You and any other involved insured must:

    (1)  Immediately send us copies of pertinent correspondence received in connection with the "product withdrawal";

    (2)  Authorize us to obtain records and other information; and

    (3)  Cooperate with us in our investigation of the "product withdrawal".

D.  For the purposes of this endorsement, the following condition is added to Section IV – Conditions: Concealment Or Fraud

  We will not provide coverage under Section I of this endorsement to you, or any other insured, who at any time:

  1.  Engaged in fraudulent conduct; or

  2.  Intentionally concealed or misrepresented a material fact concerning a "product withdrawal" or "product withdrawal expenses" incurred by you under Section I of this endorsement.

E.  The following definitions are added to the Section V - Definitions:

  1.  "Defect" means a defect, deficiency or inadequacy that creates a dangerous condition.

  2.  "Product tampering" is an act of intentional alteration of "your product" which has caused or is reasonably expected to cause "bodily injury" or physical injury to tangible property other than "your product".

    When "product tampering" is known, suspected or threatened, a "product withdrawal" will be limited to those batches of "your product" which are known or suspected to have been tampered with.

    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

  3.  "Product withdrawal" means the recall or withdrawal:

    a.  From the market; or

    b.  From use by any other person or organization;

  of "your products", or products which contain "your products", because of known or suspected "defects" in "your product", or known or suspected "product tampering", which has caused or is reasonably expected to cause "bodily injury" or physical injury to tangible property other than "your product".

256200500007000045

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

4. "Product withdrawal expenses" means those reasonable and necessary extra expenses, listed below, paid and directly related to a "product withdrawal":

   a. Costs of notification;

   b. Costs of stationery, envelopes, production of announcements and postage or facsimiles;

   c. Costs of overtime paid to your regular non-salaried employees and costs incurred by your employees, including costs of transportation and accommodations;

   d. Costs of computer time;

   e. Costs of hiring independent contractors and other temporary employees;

   f. Costs of transportation, shipping or packaging;

   g. Costs of warehouse or storage space; or

   h. Costs of proper disposal of "your products", or products that contain "your products", that can not be reused, not exceeding your purchase price or your cost to produce the products.

5. "Profit" means the positive gain from business operation after subtracting for all expenses.

## ITEM 2. - FOREIGN COVERAGE

Paragraph 4.c of SECTION V - DEFINITIONS section is replaced by the following:

c. Anywhere in the world, except with respect to injury or damage arising out of your "foreign based operations." "Foreign based operations" means:
   (1) construction, fabrication, erection or installation operations outside the territory described in a. above;
   (2) the manufacturing of goods or products outside the territory described in a. above; or
   (3) the sale or distribution of goods manufactured outside the territory described in a. above at or from locations outside the territory described in a. above.

The insured under our supervision shall investigate, defend or settle any claim or "suit" brought in any country where we are prevented by law from carrying out this agreement. We will reimburse the insured for the reasonable costs of such investigation and defense and, within the applicable limit of insurance, for the amount of any settlement made with our prior written consent.

156200500007000046

**ITEM 3. - ALIENATED PREMISES - SECTION I - COVERAGES**

Coverage for unknown hazards at alienated premises
Subparagraph j.(2) of Exclusion j. of COVERAGE A (Section I - Coverages) is replaced by the following:

(2) Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises, and occurs from hazards that were known by you, or should have reasonably been known by you, at the time the property was transferred or abandoned.

**ITEM 4. - BODILY INJURY TO CO-EMPLOYEES**

Coverage for Bodily Injury to Co-Employees
The following is added to SECTION II – WHO IS AN INSURED:

a. Your supervisory and management "employees" are insureds for "bodily injury" to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are limited liability company), or to a co-employee while that co-employee is either in the course of his or her employment or performing duties related to the conduct of your business.

b. Insurance provided under paragraph a., above, does not apply to Bodily Injury arising out of his or her providing or failing to provide professional health care services.

c. Insurance provided under paragraph a., above, is subject to a sublimit of:

$500,000 each occurrence

This sublimit is subject to the Each Occurrence Limit shown in the Declarations; it is not in addition to the Each Occurrence Limit.

d. This insurance is subject to the General Aggregate Limit shown in the Declarations.

**ITEM 5. - INCIDENTAL MALPRACTICE**

Professional Health Care by Employees
Subparagraph 2.a.(1)(d) of SECTION II – WHO IS AN INSURED is deleted.
The insurance for "bodily injury" or "personal injury" arising out of the "employee" providing or failing to provide professional health care services as provided by the above deletion is:

1. Subject to a sublimit of $500,000 each occurrence
This sublimit is subject to the Each Occurrence Limit shown in the Declarations; it is not in addition to the Each Occurrence Limit.

2. Subject to the General Aggregate Limit shown in the Declarations.

**ITEM 6. - KNOWLEDGE OF AN OCCURRENCE - SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

Amended Duties in the event of an occurrence, offense, claim or suit Subparagraph 2.a. and 2.b. of Condition 2. of Section IV – Commercial General Liability Conditions are amended to add the following:

As used in this paragraph, you refers to an "executive officer", partner, member or legal representative.

256200500007000047

**ITEM 7. - LIBERALIZATION - SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

Liberalization
   Section IV - Commercial General Liability Conditions is amended to add the following:

   10. Liberalization

      If we adopt a change in our forms or rule which would broaden your coverage without an extra charge, the broader coverage will apply to this policy. This extension is effective upon the approval of such broader coverage in your state.

**ITEM 8. - MENTAL ANGUISH INCLUDED IN BODILY INJURY - SECTION V - DEFINITIONS**

Mental Anguish is included in "Bodily Injury"
   Item 3. of Section V - Definitions is replaced with the following:

   3. "Bodily Injury" means bodily injury, sickness or disease sustained by a person. It includes death or mental anguish, which results at any time from such physical harm, physical sickness or physical disease. Mental anguish means any type of mental or emotional illness or distress.

**ITEM 9 - NON-OWNED WATERCRAFT 50' - SECTION I - COVERAGES**

Non-owned Watercraft
   Subparagraph g.(2) of Exclusion g. of COVERAGE A (Section I - Coverages) is replaced by the following:

      (3) A watercraft you do not own that is:
         (a) Less than 50 feet long; and
         (b) Not being used for public transportation or as a common carrier;

**ITEM 10. - ON-PREMISES PRODUCTS COVERAGE**

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

   1. On, from or in connection with the use of your owned or rented premises, or

   2. In connection with the conduct of any operation at your owned or rented premises, when conducted by you or on your behalf,

Paragraph a. of the definition of "Products-completed operations hazard" in the Definitions Section is replaced by the following:

   "Products-completed operations hazard":

      a. Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

**ITEM 11. - PREMIUM RESPONSIBILITY - COMMON POLICY CONDITIONS - IL 00 17**

Premium Responsibility
   Paragraph E. of COMMON POLICY CONDITIONS - PREMIUM is replaced by the following:

   E. PREMIUMS
      1. Each Named Insured is jointly and severally liable for all premiums due under this policy and for any other financial obligation of any Named Insured to us arising out of any agreements contained in this policy.

25620050000700004

2.   The First Named Insured shown in the Declarations will be the payee for any return premiums we pay.

### ITEM 12. – RENTED PREMISES – EXPANDED COVERAGE

Increased Coverage for rented premises

**A.   Fire, Lightning or Explosion Damage**

The last sentence of paragraph 2. Exclusions of COVERAGE A (Section I – Coverages) is replaced by the following:

Exclusions e. through n. do not apply to damage by fire, lightning, or explosion to premises rented to you or temporarily occupied by you with permission of the owner.  A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).

**B.   Increased Limits for Fire Legal Liability**

Paragraph 6. of SECTION III – LIMITS OF INSURANCE is replaced by the following:

Subject to Paragraph 5. of SECTION III – LIMITS OF INSURANCE, the most we will pay for damages because of "property damage" to premises rented to you or temporarily occupied by you with permission of the owner resulting from fire, lightning, or explosion, or any combination of the three, is the greater of:

a.   $300,000; or

b.   The amount shown next to Damage to Premises Rented to You Limit in the Declarations.

### ITEM 13. – SUPPLEMENTARY PAYMENTS - SECTION I - COVERAGES

Supplementary Payments

Section I - Coverages, Supplementary Payments - Coverages A and B, Items 1.b. And 1.d., respectively, are replaced with:

b.   up to $2,500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies.  We do not have to furnish these bonds.

d.   All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit" including substantiated loss of earnings up to $500 a day because of time off from work.

### ITEM 14. – UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS - SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

Unintentional Failure to Disclose Hazards

Condition 6. of Section IV - Commercial General Liability Conditions is amended to add the following:

d.   If you unintentionally fail to disclose any hazards existing at the inception date of your policy, we will not deny coverage under this Coverage Form because of such failure. However, this provision does not affect our right to collect additional premium or exercise our right of cancellation or non-renewal.

256200500007000049

## ITEM 15. – VENDORS COVERAGE - BLANKET

Additional Insured -Vendors

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) to whom you are obligated by a written agreement to procure additional insured vendors coverage, but only with respect to "bodily injury" or "property damage" caused by an actual or alleged defect or deficiency in the named insured's product when it leaves the named insured's possession which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a.  "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b.  Any express warranty unauthorized by you;

   c.  Any physical or chemical change in the product made intentionally by the vendor;

   d.  Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e.  Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f.  Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g.  Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

   h.  "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

      (1) The exceptions contained in Subparagraphs d. or f.; or

      (2) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date                    Expiration Date

For attachment to Policy No.   TB1-191-012266-185

Audit Basis

Issued To

_Dexter P. Legg_
SECRETARY

_Edmund F. Kelly_
PRESIDENT

Countersigned by _____

                                      Authorized Representative

Issued            Sales Office and No.            End. Serial No. 19

256200500007000050

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## State Application of Terrorism Endorsements – TRIA Rejected

This endorsement modifies insurance provided under the following:

    **COMMERCIAL GENERAL LIABILITY COVERAGE PART**
    **LIQUOR LIABILITY COVERAGE PART**
    **OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
    **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
    **RAILROAD PROTECTIVE LIABILITY COVERAGE PART**

If attached to your policy, the below described Terrorism endorsements shall apply as follows:

**Exclusion of Certified Acts of Terrorism and Other Acts of Terrorism – CG 21 75 12 02**

  This endorsement applies in all states and territories except Florida, Georgia, New York, Texas or Alaska.

**Exclusion of Certified Acts of Terrorism – CG 21 73 12 02**

  This endorsement applies only in Florida, Georgia, New York and Texas.

**Alaska Exclusion of Certified Acts of Terrorism and Other Acts of Terrorism – CG 26 92 06 03**

  This endorsement applies only in Alaska.

**Conditional Exclusion of Terrorism (Relating to Disposition of Federal Terrorism Risk Insurance Act of 2002) – CG 21 87 06 04**

  This endorsement applies in all states and territories except Florida, Georgia, New York, Alaska and Washington.

**Alaska Conditional Exclusion of Terrorism (Relating to Disposition of Federal Terrorism Risk Insurance Act of 2002) – CG 32 14 06 04**

  This endorsement applies only in Alaska.

2562005000007000051

**Washington Conditional Exclusion of Terrorism (Relating to Disposition of Federal Terrorism Risk Insurance Act of 2002) – CG 32 29 06 04**

This endorsement applies only in the state of Washington.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date                         Expiration Date

For attachment to Policy No.    TB1-191-012268-185

Audit Basis

Issued To

SECRETARY                    PRESIDENT

Countersigned by  _____

                                              Authorized Representative

Issued                        Sales Office and No.              End. Serial No. 20

256200500007000052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION - BODILY INJURY AND PERSONAL INJURY TO EMPLOYEES**

This endorsement modifies this Policy's COMMERCIAL GENERAL LIABILITY COVERAGE FORM Exclusions.

Words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

Paragraph 2.e. under Section I, Coverage A is deleted in its entirety and is replaced by the following:

2. **Exclusions.**

   This insurance does not apply to:

   e. "Bodily injury" or "Personal injury" to:

   (1) An employee of the insured arising out of and in the course of employment by the insured; or

   (2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

   This exclusion applies:

   (1) Whether the insured may be liable as an employer or in any other capacity, and

   (2) To any obligation to share damages with or repay someone else who must pay damages because of injury.

   This exclusion does not apply to liability assumed by the insured under as "insured contract".

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date

Expiration Date

For attachment to Policy or Bond No. TB1-191-012268-185

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

_SECRETARY_        _PRESIDENT_

Countersigned by ..............................................................................

_Authorized Representative_

Issued        Sales Office and No.        End. Serial No.  21

**LG 5056**

2562005000070000S3

# COMPOSITE RATING PLAN

The premium for this policy shall be computed on the following basis:

Per $100 of Workers' Compensation payroll
The phrase "Workers' Compensation Payroll" means all payments by "you" in money, or in substitutes for money during the policy period to all executive officers and other employees for services rendered, subject to any over-time earnings, limitation of remuneration or exception rules applicable in accordance with the Workers' Compensation manual in use by the Company.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date                           Expiration Date

For attachment to Policy No.    TB1-191-012269-185

Audit Basis

Issued To

SECRETARY          PRESIDENT

Countersigned by _____

Authorized Representative

Issued              Sales Office and No.          End. Serial No. 22

LG 6033 (9-87)                                                    Page 1 of 1

256200500007000054

**THE ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT
# NON-CUMULATION OF LIABILITY
# (SAME OCCURRENCE)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to paragraph 5 of SECTION III – LIMIT OF INSURANCE:

Non-Cumulation of Liability – Same Occurrence – If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future general liability policy(ies) issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such "occurrence".

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium   $

Effective Date                    Expiration Date

For attachment to Policy No.    TB1-191-012268-185

Audit Basis

Issued To

*Dexter R. Legg*
SECRETARY

*Lewis F. Kff*
PRESIDENT

Countersigned by    _____
                       Authorized Representative

Issued              Sales Office and No.        End. Serial No. 23

LG 6044 R1 0193

156200500007000055

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PERSONAL AND ADVERTISING INJURY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

        COMMERCIAL GENERAL LIABILITY COVERAGE PART

Coverage B of Section I-COVERAGE and Paragraph 14 of Section V-DEFINITIONS are replaced by the following:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

   a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

       (1)    The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

       (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

           No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

   b.    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

   This insurance does not apply to:

   a.   **Knowing Violation Of Rights Of Another**
   "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   b.   **Material Published With Knowledge Of Falsity**
   "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

   c.   **Material Published Prior To Policy Period**
   "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

LG 6075 R4 04 02

Page 1 of 4

256200500007000056

**d. Criminal Acts**
"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**
"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**
"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**
"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark or Trade Secret and Securities Fraud**
"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights or out of securities fraud.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**
"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 2.b.(1), (2) and (3) of "personal and advertising injury" under the Definitions Section of this endorsement.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**
"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**
Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

256200500007000057

m. **Pollution**

   "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

   Any loss, cost or expense arising out of any:

   (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

o. **Intentional Injury**

   "Personal and advertising injury" arising out of an offense committed by or at the direction of the insured for the purpose of causing injury.

## SECTION V - DEFINITIONS

1. "Advertisement" means a paid announcement that is broadcast or published in the print, broadcast or electronic media to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Announcements that are published include material placed on the Internet or on similar electronic means of communication; and
   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Personal and advertising injury" means:

   a. Injury, including consequential "bodily injury", to the feelings and reputation of a natural person (including mental anguish) caused by an offense arising out of your business, except injury arising out of:

      (1) your "advertisement", or

      (2) publishing, broadcasting or telecasting done by or for you.

   b. Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

      (1) False arrest, detention or imprisonment;

      (2) Malicious prosecution or abuse of process;

      (3) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

256200500007000058

(4)   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

(5)   Oral or written publication of material that violates a person's right of privacy;

(6)   The use of another's advertising idea in your "advertisement"; or

(7)   Infringing upon another's copyright, trade dress or slogan in your "advertisement"

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium   $

Effective Date                     Expiration Date
For attachment to Policy No.   TB1-191-012268-185
Audit Basis

Issued To

SECRETARY                          PRESIDENT

Countersigned by   _____
                                    Authorized Representative

Issued                       Sales Office and No.          End. Serial No. 24

LG 6075 R4 04 02                                        Page 4 of 4

254200500007000059

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT SUITS

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion b. of COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I Coverages) is replaced by the following:

   b. **Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

   (1) That the insured would have in the absence of the contract or agreement; or

   (2) Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

B. SUPPLEMENTARY PAYMENTS - COVERAGES A AND B is replaced by the following:

### SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of any vehicle to which the Bodily Injury Liability Coverage applies.  We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance.  We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

256200500007000060

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date                    Expiration Date

For attachment to Policy No.    TB1-191-012268-185

Audit Basis

Issued To

SECRETARY                                       PRESIDENT

Countersigned by _____

Authorized Representative

Issued                     Sales Office and No.          End. Serial No. 25

LG 8112 0196                                          Page 2 of 2

256200500007000061

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY COMMERCIAL GENERAL LIABILITY COVERAGE PART EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

   (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

© ISO Properties, Inc., 2001

156200500007000062

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date

For attachment to Policy No.        TB1-191-012268-185

Audit Basis

Issued To

*Dxtdn R. Lqy*          *Leon F. Kff*
SECRETARY              PRESIDENT

Countersigned by..................................................
                              Authorized Representative

Issued                    Sales Office and No.              End. Serial No.   26

256200500007000063

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NOTICE OF CANCELLATION

We will not cancel this policy or make changes that reduce the insurance afforded by this policy until written notice of cancellation or reduction has been mailed or delivered to those scheduled below at least

    a)    10 days before the effective date of cancellation, if we cancel for non-payment of premium; or

    b)   __180__ days before the effective date of the cancellation or reduction if we cancel
        or reduce the insurance afforded by this policy for any other reason.

| NAME | ADDRESS |
|------|---------|
| Riceland Foods, Inc., Etal | P.O. Box 927 |
| | Stuttgart, AR 72160 |

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $
Effective Date             Expiration Date
For attachment to Policy No.   TB1-191-012268-185
Audit Basis

Issued To

                                      *Dixie R. Jay*     *Lane F. Klff*
                                    SECRETARY        PRESIDENT

                    Countersigned by      _____
                                        Authorized Representative

      Issued                Sales Office and No.      End. Serial No. 27

2319                                            Page 1 of 1
(9-1-87)

256200500007000064

## CHANGE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### AMENDATORY ENDORSEMENT - BARGES

This endorsement modifies insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG 00 01.

The following is added to Section I - Coverages, Paragraph 2. Exclusions, g. Aircraft, Auto or Watercraft, (2).

　　　(c)　Barges being loaded in the course of operation for the Midland Enterprises, Inc. and its affiliated companies.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium   $

| | |
|---|---|
| [X] | Liberty Mutual Insurance Company |
| | Liberty Mutual Fire Insurance Company |
| | Liberty Insurance Corporation |
| | LM Insurance Corporation |
| | The First Liberty Insurance Corporation |

Effective Date                    Expiration Date

For Attachment to Policy or Bond No.   TB1-191-012268-185

Audit Basis

Issued To

*Dexter R. Lay*
SECRETARY

*Edward F. Kelly*
PRESIDENT

Countersigned by——————————————————————
　　　　　　　　　　　　　　　Authorized Representative

102

Issued                    Sales Office and No.                    End. Serial No.   28

156200500007000065

## CHANGE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### In Rem

It is agreed that Claim "In Rem" shall be considered as a Claim against the Insured.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium  $

| | |
|---|---|
| [X] | Liberty Mutual Insurance Company |
| [ ] | Liberty Mutual Fire Insurance Company |
| [ ] | Liberty Insurance Corporation |
| [ ] | LM Insurance Corporation |
| [ ] | The First Liberty Insurance Corporation |

Effective Date                    Expiration Date

For Attachment to Policy or Bond No.   TB1-191-012268-185

Audit Basis

Issued To

SECRETARY                    PRESIDENT

Countersigned by

Authorized Representative

102

Issued              Sales Office and No.              End. Serial No.   29

256200500007000066

## CHANGE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### AMENDATORY ENDORSEMENT - COVERAGE EXCLUSION

Coverage is excluded under this policy for bodily injury or property damage caused in whole or in part by:

A) Cross Pollination

B) Failure of Germination

C) Transmission to plants grown with such seeds, of any Disease, Rust, Wilt, Fungus or Insects or Larvae of eggs thereof by seeds sold by the Insured.

D) Mis-Delivery, Mis-Packaging, or Mis-Labeling

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium   $

| | |
|---|---|
| X | Liberty Mutual Insurance Company |
| | Liberty Mutual Fire Insurance Company |
| | Liberty Insurance Corporation |
| | LM Insurance Corporation |
| | The First Liberty Insurance Corporation |

Effective Date                      Expiration Date

For Attachment to Policy or Bond No.   TB1-191-012268-185

Audit Basis

Issued To

SECRETARY                      PRESIDENT

Countersigned by _____

Authorized Representative

102

Issued               Sales Office and No.               End. Serial No.   30

256200500007000067

## CHANGE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### AMENDATORY ENDORSEMENT - DEFINITION OF OCCURRENCE

It is agreed that the following Definition of Occurrence is added to the policy.

"To mean an Accident or Happening or continuous or repeated exposure to conditions which unexpectedly and unintentionally caused Personal Injury to or Destruction of Tangible Property."

This endorsement is executed by the company below designated by an entry in the box opposite its name.

| | |
|---|---|
| Premium  $ | [X] Liberty Mutual Insurance Company |
| | [ ] Liberty Mutual Fire Insurance Company |
| Effective Date          Expiration Date | [ ] Liberty Insurance Corporation |
| | [ ] LM Insurance Corporation |
| For Attachment to Policy or Bond No.   TB1-191-012268-185 | [ ] The First Liberty Insurance Corporation |

Audit Basis

Issued To

SECRETARY          PRESIDENT

Countersigned by_____

102                                      Authorized Representative

Issued                    Sales Office and No.              End. Serial No.   31

254200500007000068

## PREMIUM DISCOUNT ENDORSEMENT

It is agreed that the Total Standard Premium for this policy is subject to discount in accordance with the company's manuals, subject to the following:

1. The Total Standard Premium for this policy shall be the premium (average annual premium for policy terms of more than one year) computed in accordance with the provisions of the policy and exclusive of the adjustments resulting from the application of any retrospective rating plan.

2. The provisions of this endorsement also apply with respect to the policies designated below:

**POLICY NUMBERS**                          **ESTIMATED STANDARD PREMIUM**

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium    $

Effective Date                    Expiration Date

For attachment to Policy No.    TB1-191-012266-185

Audit Basis

Issued To

SECRETARY                    PRESIDENT

Countersigned by    _____

Authorized Representative

Issued            Sales Office and No.              End. Serial No. 32

2290 R4 (3-92)

256200500007000069

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ARKANSAS CHANGES - MULTI-YEAR POLICIES

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the Common Policy Conditions:

**G. MULTI-YEAR POLICIES**

We may issue this policy for a term in excess of twelve months with the premium adjusted on an annual basis in accordance with our rates and rules.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $ ·
Effective Date
For attachment to Policy No.    TB1-191-012266-185
Audit Basis

Issued To

SECRETARY        PRESIDENT

Countersigned by

                                  Authorized Representative

Issued                        Sales Office and No.            End. Serial No. 33

CG 26 08 04 98           Copyright, Insurance Services Office, Inc., 1990

254200500007000070

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ARKANSAS CHANGES – TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM LIABILITY COVERAGE FORM
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The following is added to the Transfer Of Rights Of Recovery Against Others To Us Condition:

We will be entitled to recovery only after the insured ("insured") has been fully compensated for the loss or damage sustained, including expenses incurred in obtaining full compensation for the loss or damage.

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium  $
Effective Date                     Expiration Date
For attachment to Policy No.    TB1-191-012285-185
Audit Basis

Issued To

SECRETARY                          PRESIDENT

Countersigned by _____
                                      Authorized Representative

Issued                      Sales Office and No.          End. Serial No. 34

IL 01 99 07 02              © ISO Properties, Inc.,  2001              Page 1 of 1

ISD05000070007t

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph 5. of the Cancellation Common Policy Condition is replaced by the following:

**5.a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** We will refund the pro rata unearned premium if the policy is:

(1) Cancelled by us or at our request;

(2) Cancelled but remitten with us or in our company group;

(3) Cancelled because you no longer have an insurable interest in the property or business operation that is the subject of the insurance; or

(4) Cancelled after the first year of a prepaid policy that was written for a term of more than one year.

**c.** If the policy is cancelled at the request of the first Named Insured, other than a cancellation described in b.(2), (3) or (4) above, we will refund 90% of the pro rata unearned premium. However, the refund will be less than 90% of the pro rata unearned premium if the refund of such amount would reduce the premium retained by us to an amount less than the minimum premium for this policy.

**d.** The cancellation will be effective even if we have not made or offered a refund.

**e.** If the first Named Insured cancels the policy, we will retain no less than $100 of the premium, subject to the following:

(1) We will retain no less than $250 of the premium for the Boiler And Machinery Coverage Part.

(2) We will retain the premium developed for any annual policy period for the General Liability Classifications, if any, shown in the Declarations.

(3) If the Commercial Auto Coverage Part covers only snowmobiles or golfmobiles, we will retain $100 or the premium shown in the Declarations, whichever is greater.

(4) If the Commercial Auto Coverage Part covers an "auto" with a mounted amusement device, we will retain the premium shown in the Declarations for the amusement device and not less than $100 for the auto to which it is attached.

**B.** The following is added to the Cancellation Common Policy Condition:

**7. Cancellation Of Policies In Effect More Than 60 Days**

**a.** If this policy has been in effect more than 60 days or is a renewal policy, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium;

256200500067000072

(2) Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

(3) The occurrence of a material change in the risk which substantially increases any hazard insured against after policy issuance;

(4) Violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or its occupancy which substantially increases any hazard insured against under the policy;

(5) Nonpayment of membership dues in those cases where our by-laws, agreements or other legal instruments require payment as a condition of the issuance and maintenance of the policy; or

(6) A material violation of a material provision of the policy.

b. Subject to Paragraph 7.c., if we cancel for:

(1) Nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy at least 10 days before the effective date of cancellation.

(2) Any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy at least 20 days before the effective date of cancellation.

c. The following applies to the Farm Umbrella Liability Policy, Commercial Liability Umbrella Coverage Part and the Commercial Automobile Coverage Part:

(1) If we cancel for nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 10 days before the effective date of cancellation;

(2) If we cancel for any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 20 days before the effective date of cancellation.

C. The following Condition is added and supersedes any other provision to the contrary:

NONRENEWAL

1. If we decide not to renew this policy, we will mail to the first Named Insured shown in the Declarations written notice of nonrenewal at least 60 days before:

a. Its expiration date; or

b. Its anniversary date, if it is a policy written for a term of more than one year and with no fixed expiration date.

However, we are not required to send this notice if nonrenewal is due to your failure to pay any premium required for renewal.

2. We will mail our notice to the first Named Insured's mailing address last known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

---

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date

For attachment to Policy No.        TB1-191-012268-185

Audit Basis

Issued To

Expiration Date

*Dexter R. Legg*
SECRETARY

*Edmund F. Kelly*
PRESIDENT

Countersigned by _____

Authorized Representative

Issued              Sales Office and No.              End. Serial No. 35

© ISO Properties, Inc., 2001          IL 02 31 07 02

2562005000070000073

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES - POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Subparagraph f., Pollution of Paragraph 2., Exclusions of Bodily Injury And Property Damage Liability Coverage (Section I - Coverages) and to Paragraph 2., Exclusions of Personal And Advertising Injury Liability Coverage (Section I - Coverages) or to any amendment to or replacement thereof:

This Pollution Exclusion applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location.

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date                  Expiration Date

For attachment to Policy No.     TB1-191-012268-185

Audit Basis

Issued To

                                      *Dexter R. Legg*        *Edmund F. Kelly*
                                          SECRETARY             PRESIDENT

                        Countersigned by     _____
                                                   Authorized Representative

           Issued                          Sales Office and No.                End. Serial No. 36

CG 01 23 03 97             Copyright, Insurance Services Office, Inc., 1996

256200500007000074

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME – LIABILITY FOR GUESTS' PROPERTY SAFE DEPOSIT BOX
COVERAGE FORM K
COMMERCIAL CRIME – LIABILITY FOR GUESTS' PROPERTY PREMIUM
COMMERCIAL FORM L
COMMERCIAL CRIME – SAFE DEPOSITORY LIABILITY COMMERCIAL FORM M
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY – MORTGAGE HOLDER ERRORS AND OMISSIONS
COVERAGE FORM*
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

*   Under the MORTGAGE HOLDERS ERRORS AND OMISSIONS COVERAGE FORM, the following
    condition applies only to Coverage C and Coverage D.

The following condition is added:

Notice given by or on behalf of the insured to any of our authorized agents in Indiana, with particulars sufficient
to identify the insured, shall be considered to be notice to us.

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium   $
Effective Date
For attachment to Policy No.   TB1-191-012268-185
Audit Basis

Issued To

*Dexter B. Legg*
SECRETARY

*Gene F. Klff*
PRESIDENT

Countersigned by   _____
                                              Authorized Representative

Issued                    Sales Office and No.              End. Serial No. 37

IL 01 58 04 98

256200500007000075

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> ELECTRONIC DATA LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCT WITHDRAWAL COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The Legal Action Against Us Condition (Section IV –
Conditions) is replaced by the following.

**Legal Action Against Us**

A person or organization may bring a "suit" against us
including, but not limited to, a "suit" to recover on an
agreed settlement or on a final judgment against an
insured; but we will not be liable for damages that are
not payable under the terms of this Coverage Part or
that are in excess of the applicable limit of insurance.
An agreed settlement means a settlement and release
of liability signed by us, the insured and the claimant
or the claimant's legal representative.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium   $
Effective Date
For attachment to Policy No.      TB1-191-012268-185
Audit Basis

Issued To

SECRETARY          PRESIDENT

Countersigned by _____

Authorized Representative

Issued          Sales Office and No.          End. Serial No. 38

256200500007000076

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – INSURING AGREEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Paragraph 1.a. of Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability is replaced with the following:

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C. However, using up the Medical Expense Limit does not end our right and duty to defend.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

B. Paragraph 1.a. of Section I – Coverages, Coverage B – Personal And Advertising Injury Liability is replaced with the following:

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C. However, using up the Medical Expense Limit does not end our right and duty to defend.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date                              Expiration Date

For attachment to Policy No.      TB1-191-012268-185

Audit Basis

Issued To

SECRETARY                        PRESIDENT

Countersigned by _____

                                                    Authorized Representative

Issued                          Sales Office and No.              End. Serial No. 39

256200500007000077

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US CONDITION

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    ELECTRONIC DATA LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCT WITHDRAWAL COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

The Transfer Of Rights Of Recovery Against Others To Us Condition Section IV – Conditions is replaced by the following:

**TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

In the event of any payment under this Coverage Part, we will be entitled to the insured's rights of recovery against any person or organization, and the insured will do whatever is necessary to secure such rights. Our right to recover is subordinate to the insured's right to be fully compensated.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date                Expiration Date

For attachment to Policy No.    TB1-191-012288-185

Audit Basis

Issued To

                                      SECRETARY          PRESIDENT

                        Countersigned by
                                    Authorized Representative

      Issued                       Sales Office and No.            End. Serial No.  40

256200500007000078

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – PREMIUM AUDIT CONDITION

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

Paragraph 5.b. of Section IV – Conditions is replaced by the following:

5. **Premium Audit**

    b.  Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date              Expiration Date

For attachment to Policy No.    TB1-191-012268-195

Audit Basis

Issued To

SECRETARY              PRESIDENT

Countersigned by         _____
                                Authorized Representative

Issued                 Sales Office and No.          End. Serial No. 41

256200500007000079

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## MISSOURI CHANGES – POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Subparagraph f., Pollution of Paragraph 2., Exclusions under Section I – Coverage A – Bodily Injury And Property Damage Liability Coverage and to Subparagraph m., Pollution of Paragraph 2., Exclusions under Section I – Coverage B – Personal And Advertising Injury Liability or to any amendment to or replacement thereof:

This Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises, site or location.

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium   $

Effective Date

Expiration Date

For attachment to Policy No.      TB1-191-012268-185

Audit Basis

Issued To

SECRETARY                          PRESIDENT

Countersigned by

Authorized Representative

Issued                              Sales Office and No.              End. Serial No.   42

256200500007000080

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MISSOURI CHANGES – GUARANTY ASSOCIATION

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> ELECTRONIC DATA LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PRODUCT WITHDRAWAL COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

**Missouri Property and Casualty Insurance Guaranty Association Coverage Limitations**

A. Subject to the provisions of the Missouri Property and Casualty Insurance Guaranty Association Act (to be referred to as the Act). If we are a member of the Missouri Property and Casualty Insurance Guaranty Association (to be referred to as the Association), the Association will pay claims covered under the Act if we become insolvent.

B. The Act contains various exclusions, conditions and limitations that govern a claimant's eligibility to collect payment from the Association and affect the amount of any payment. The following limitations apply subject to all other provisions of the Act:

1. Claims covered by the Association do not include a claim by or against an insured of an insolvent insurer, if the insured has a net worth of more than $25 million on the date the insurer becomes insolvent.

If the insured prepares an annual report to shareholders, or an annual report to management reflecting net worth, then such report for the fiscal year immediately preceding the date of insolvency of the insurer will be used to determine net worth.

2. Payments made by the Association for covered claims will include only that amount of each claim which is:

   a. In excess of $100; and

   b. Less than $300,000.

   However, the Association will not:

   (1) Pay an amount in excess of the applicable limit of insurance of the policy from which a claim arises; or

   (2) Return to an insured any unearned premium in excess of $10,000.

These limitations have no effect on the coverage we will provide under this policy.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date

Expiration Date

For attachment to Policy No.   TB1-191-012268-195

Audit Basis

Issued To

*[signature]* SECRETARY       *[signature]* PRESIDENT

Countersigned by

_____
Authorized Representative

Issued          Sales Office and No.          End. Serial No. 43

256200500007000081

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MISSOURI CHANGES - MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  Paragraph 1.a. of Coverage C. Medical Payments is replaced with the following:

1.  **Insuring Agreement**

    a.  We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1)  On premises you own or rent;

      (2)  On ways next to premises you own or rent; or

      (3)  Because of your operations:

      provided that:

      (1)  The accident takes place in the "coverage territory" and during the policy period;

(2)  The expenses are incurred and reported to us within one year of the date of the accident.  However, expenses reported to us after one year of the date of the accident will not be denied solely because of the late submission unless such late submission operates to prejudice our rights; and

(3)  The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date

For attachment to Policy No.    TB1-191-012266-185

Audit Basis

Issued To

SECRETARY                PRESIDENT

Countersigned by _____

                                       Authorized Representative

Issued            Sales Office and No.            End. Serial No. 44

CG 26 50 12 96            Copyright, Insurance Services Office, Inc., 1998

256200500007000082

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

A. Paragraph b. of the Premium Audit Condition (Section IV) is replaced by the following:

5. **Premium Audit**

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the policy. But the audit may be waived if the total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1500. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

B. Except as provided in Paragraph A. above, the **Examination Of Your Books And Records** Common Policy Condition continues to apply.

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date

For attachment to Policy No. Expiration Date

TB1-191-012268-185

Audit Basis

Issued To

_Dexter R. Legg_
SECRETARY

_Edmund F. Kelly_
PRESIDENT

Countersigned by
Authorized Representative

Issued

Sales Office and No.

End. Serial No.  45

© ISO Properties, Inc.,  2001

256200500007008083

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES
## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A.  Paragraph 1. Insuring Agreement of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)  The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

        (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)  The "bodily injury" pr "property damage" occurs during the policy period; and

        (3)  Prior to the policy period, no insured listed under Paragraph 1. Of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    c.  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

          Copyright, Insurance Services Office, Inc., 1999

256200500007000084

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

B. Paragraph 1.a of Section I - Coverage B - Personal And Advertising Injury Liability is replaced by the following:

1.   Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at

our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A and B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

C. The following is added as Paragraph e. to the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition (Paragraph 2. of Section IV - Commercial General Liability Conditions):

2.   Duties In The Event Of Occurrence, Offense, Claim Or Suit

e. Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

D. The definition of "loading or unloading" in the Definitions Section does not apply.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date                              Expiration Date

For attachment to Policy No.   TB1-191-012288-185

Audit Basis

Issued To

*Dexter R. Legg*
SECRETARY

*Gene F. Kelly*
PRESIDENT

Countersigned by _____
Authorized Representative

Issued                    Sales Office and No.                End. Serial No. 46

256200500007000085

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES - TRANSFER OF
# DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Condition is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**Transfer of Duties When a Limit of Insurance is Used Up.**

a. If we conclude that, based on "occurrences," offenses, claims or "suits" which have been reported to us and to which this Insurance may apply, the:

(1) General Aggregate Limit (other than the Products/Completed Operations Aggregate Limit);

(2) Products/Completed Operations Aggregate Limit;

(3) Personal and Advertising Injury Limit;

(4) Each Occurrence Limit; or

(5) Fire Damage Limit

is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

b. When a limit of insurance described in paragraph a. above has actually been used up in the payment of judgments or settlements:

(1) We will notify the first Named Insured, in writing, as soon as practicable, that:

(a) Such a limit has actually been used up; and

(b) Our duty to defend "suits" seeking damages subject to that limit has also ended.

(2) We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

(3) The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

c. The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph b.(2) above.

The duty of the first Named Insured to reimburse us will begin on:

Copyright, Insurance Services Office, Inc., 1991     Page 1 of 2

256200500007000006

**COMMERCIAL GENERAL LIABILITY**

(1) The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph a. above; or

(2) The date on which we sent notice in accordance with paragraph b.(1) above, if we did not send notice in accordance with paragraph a. above.

d.  The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date

For attachment to Policy No.    TB1-191-012266-185

Audit Basis

Issued To

SECRETARY                                   PRESIDENT

Countersigned by      _____

Authorized Representative

Issued                        Sales Office and No.                  End. Serial No. 47

256200500007000087

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## NEW YORK CHANGES - LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The LEGAL ACTION AGAINST US Condition (Section IV) is replaced by the following:

**LEGAL ACTION AGAINST US**

No person or organization has a right under this Coverage Part:

a.   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b.   To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

This endorsement is executed by the  LIBERTY MUTUAL INSURANCE COMPANY

Premium   $

Effective Date

For attachment to Policy No.      TB1-191-012266-195

Expiration Date

Audit Basis

Issued To

*Dexter B. Lazy*
SECRETARY

*Lowe F. Kelly*
PRESIDENT

Countersigned by _____

Authorized Representative

Issued                        Sales Office and No.                        End. Serial No. 46

CG 26 24 06 92                        Copyright, Insurance Services Office, Inc., 1992

256200500007000088

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. With regard to liability for Bodily Injury, Property Damage and Personal And Advertising Injury, unless we are prejudiced by the insured's or your failure to comply with the requirement, no provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

B. Paragraph 2.d, of Section I – Coverage B – Personal And Advertising Injury is replaced by the following:

2. Exclusions

   This insurance does not apply to:

   d. Criminal Acts

   "Personal and advertising injury" arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $
Effective Date
For attachment to Policy No.   TB1-191-012268-185
Audit Basis

Issued To

_Dexter R. Legg_
SECRETARY

_Edmund F. Kelly_
PRESIDENT

Countersigned by _____
                          Authorized Representative

Issued                    Sales Office and No.        End. Serial No. 49

CG 01 03 03 02            © ISO Properties, Inc., 2001            Page 1 of 1

256200500007000089

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or to repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b) or (c) above is directed.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $

Effective Date

For attachment to Policy No.    TB1-191-012288-185    Expiration Date

Audit Basis

Issued To

*Dexter R. Legg*
SECRETARY

*Lance F. Kff*
PRESIDENT

Countersigned by   _____
                          Authorized Representative

Issued              Sales Office and No.              End. Serial No. 50

256200500007000090

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – DUTIES

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added to the Duties Condition.

We will notify the first Named Insured in writing of:

1. An initial offer to compromise or settle a claim made or "suit" brought against any insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

This endorsement is executed by the LIBERTY MUTUAL INSURANCE COMPANY

Premium  $
Effective Date
For attachment to Policy No.    TB1-191-012268-185
Audit Basis
Issued To

SECRETARY                    PRESIDENT

Countersigned by
Authorized Representative

Issued                     Sales Office and No.              End. Serial No.  51

256200500007000091

# ARKANSAS

## IMPORTANT INFORMATION TO POLICYHOLDERS

In the event you need to contact someone about this policy for any reason, please contact your Sales Representative or Producer of Record as shown in the policy declarations.

If you have additional questions, you may contact the company at the following address and telephone number:

**LIBERTY MUTUAL INSURANCE GROUP**
**10800 Financial Centre Parkway**
**Suite 300**
**Little Rock, AR 72211**
**Telephone: (501) 224-4300**

If we at LIBERTY MUTUAL fail to provide you with adequate service, you should feel free to contact:

**ARKANSAS INSURANCE DEPARTMENT**
**Consumer Service Division**
**1200 West 3rd Street**
**Little Rock, Arkansas 72201**
**Telephone: (501) 371-2640**

Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your Sales Representative, company or the Arkansas Insurance Department, have your policy number available.

GPO 4096 R2 10 02

256200500007000092

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

256200500007000093

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**THIS ENDORSEMENT IS NOT APPLICABLE IN HAWAII AND WASHINGTON.**

256200500007000094

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2003

256200500007000095

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © ISO Properties, Inc., 2003 CG 00 01 12 04

256200500007000096

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

256200500007000097

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

　　　© ISO Properties, Inc., 2003　　　CG 00 01 12 04

25620050000700009B

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

256200500007000099

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

   © ISO Properties, Inc., 2003   CG 00 01 12 04

256200580007000100

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

256200500007000101

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

  © ISO Properties, Inc., 2003  CG 00 01 12 04

256200500007000102

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

256200500007000103

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV.-- COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

     (1) How, when and where the "occurrence" or offense took place;

     (2) The names and addresses of any injured persons and witnesses; and

     (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

     (1) Immediately record the specifics of the claim or "suit" and the date received; and

     (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

     (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

     (2) Authorize us to obtain records and other information;

     (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

     (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

25620050000700610 4

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

256200500007000105

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

© ISO Properties, Inc., 2003

256200500007000106

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

© ISO Properties, Inc., 2003

25620050000700107

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      **(1)** Products that are still in your physical possession; or

      **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

      **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

      **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

 © ISO Properties, Inc., 2003 CG 00 01 12 04

256200500007000108

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      (2) The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2003

256200500007000109

**LIABILITY POLICY**



### Liberty Mutual Insurance Company

### (A Stock Company herein called the Company)

While this policy is in effect, the named insured first named in the Declarations is a member of Liberty Mutual Holding Company, Inc. and is entitled to vote either in person or by proxy at any and all meetings of the members of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is in Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

The named insured first named in the Declarations Page shall participate in the distribution of any dividends declared by us for this Policy. The amount of such Named Insured's participation is determined by the decision of our Board of Directors in compliance with any laws that apply.

This policy is classified for dividend purposes in DIVIDEND CLASS I - General Class.

IN WITNESS WHEREOF, the company has caused this policy to be signed by its President and its Secretary in Boston, Massachusetts, and the countersigned on the declaration page by a duly authorized representative of the company.

SECRETARY          PRESIDENT

GPO 4078 R2 (11-14-01)