## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**RICELAND FOODS, INC.**                                          **PLAINTIFF**

**vs.**                          **Case No. 4:10-CV-091 SWW**

**LIBERTY MUTUAL INSURANCE COMPANY**                  **DEFENDANT**

### BRIEF IN SUPPORT OF DEFENDANT'S MOTION
### TO DISMISS OR STAY THIS ACTION IN FAVOR OF ARBITRATION

Defendant Liberty Mutual Insurance Company ("Liberty Mutual"), by and

through its undersigned counsel, pursuant to Fed. R. Civ. P. 12 and the Federal

Arbitration Act, 9 U.S.C. §3, submits this Brief in Support of its Motion To Dismiss Or

Stay This Action In Favor Or Arbitration against Riceland Foods, Inc. ("Plaintiff" or

"Riceland") and hereby states as follows:

### FACTUAL BACKGROUND

At issue in this Action are consecutive Commercial General Liability Policies

issued by Liberty Mutual to Riceland for the periods of August 1, 2005 to August 1, 2006

(the "2005-2006 Policy"), August 1, 2006 to August 1, 2007 (the "2006-2007 Policy")

and August 1, 2007 to August 1, 2008 (the "2007-2008 Policy") (collectively, the

"Policies").  The Policies provide general liability coverage, including a potential duty to

defend, subject to the terms, condition, exclusions and limits of the Policies.

Each of the Policies contains an endorsement providing for binding arbitration for

disputes over coverage.  This Binding Arbitration Endorsement states that "[i]f [Liberty

Mutual] and the insured do not agree whether coverage is provided under this Coverage

Part for a claim made against the insured, then either party may make a written demand

for arbitration" and provides for a binding decision to be made by majority vote of a panel of three arbitrators.  2005-2006 Policy, Endorsement No. 10; 2006-2007 Policy, Endorsement No. 10; 2007-2008 Policy, Endorsement No. 10 (the "Arbitration Endorsement").  (Relevant excerpts of the Policies are attached as Exhibit A hereto.)[1]

The coverage dispute between Liberty Mutual and Riceland arises from numerous suits against Riceland alleging the contamination of rice supplies by strains of genetically-modified rice.  Riceland is an agricultural cooperative in the business of providing marketing services for rice, soybeans and wheat grown by its farmer-members.  Complaint, ¶¶ 2 & 3.  Riceland's website reports that it is the world's largest miller and marketer of rice with 1,900 employees.  (Exhibit B hereto.)  Riceland has been named as one of several defendants in at least 118 lawsuits initiated by rice growers and farmers (the "Grower Suits"), and at least 7 lawsuits filed by entities that purchased rice for distribution abroad (the "Distributor Suits").  These claimants are seeking relief as a result of alleged cross-pollination and contamination of the Arkansas and United States long-grain rice supply with genetically modified rice.  Riceland is seeking from Liberty Mutual a defense and indemnity for the Grower and Distributor Suits under the Policies.

The Policies each contain an amendatory clause excluding coverage for injury or damage caused by instances of cross-pollination, which states:

> Coverage is excluded under this policy for bodily injury or property damage caused in <u>whole or in part</u> by:
>
> A)      Cross Pollination
>
> B)      Failure of Germination

---

[1]      Each Policy is over 100 pages long.  To avoid overburdening the Court's docket, we have attached relevant excerpts of the Policies.

      C)      Transmission to plants grown with such seeds, of any Disease, Rust, Wilt, Fungus or Insects or Larvae or eggs thereof by seeds sold by Insured

      D)      Mis-Delivery, Mis-packaging, or Mis-Labeling

2005-2006 Policy, Endorsement No. 30; 2006-2007 Policy, Endorsement No. 29; 2007-2008 Policy, Endorsement No. 29 (the "Cross Pollination Exclusion") (emphasis added). (Exhibit A hereto.)

Plaintiffs in the Grower Suits allege that Riceland knew that genetically modified rice seeds would cross-pollinate with other rice plants, contaminating the entire United States rice supply, thus resulting in the harm alleged by the plaintiffs. For example, in *Schafer, et al. v. Riceland Foods, et. al.*, No. CV-2006-413 (Ark. Cir. Ct., Lonoke Cty.), the Fourth Amended and Substituted Complaint contains the following allegations:

> ¶ 47: During all times relevant to this Complaint, including the years of 2000 and 2001, Riceland Foods, Inc., and the Bayer defendants knew that non-GE rice could become contaminated with Liberty Link rice, including LL62/601/604, through a wide variety of means, including cross-pollination and commingling during harvest, storage, transport and disposal.

> ¶ 83: In 2000 and 2001, Riceland and Bayer failed to take adequate steps to prevent cross-pollination and co-mingling of LL62 rice with non-GE rice. Additionally or alternatively, Riceland and Bayer knew or should have known that no degree of precautions could have prevented such cross-pollination.

> ¶ 89: Riceland's and the Bayer defendants' course of conduct caused the GE contamination of the 2006 Arkansas long-grain rice crop as well as damage to the 2007 and 2008 crops.

*See also Kennedy, et. al. v. Bayer, et. al.*, No. LCV-2009-48-2, ¶¶ 91, 113, 199 (Ark. Cir. Ct., Lincoln Cty.) (making the same allegations set forth in *Schafer*). (Copies of the *Schafer* and *Kennedy* Complaints are attached as Exhibits C and D hereto.)

Plaintiffs in the Distributor Suits are allegedly business partners of Riceland that purchased rice from Riceland pursuant to contracts that obligated Riceland to provided non-genetically modified rice for distribution in European and overseas markets. The Distributor Suits allege that Riceland knew that its European customers would not accept genetically modified rice, but nevertheless mis-delivered shipments containing genetically modified rice caused by cross-pollination and commingling of genetically modified and non-genetically modified rice. For example, the plaintiffs in *In re Genetically Modified Rice Litigation* (*Tilda Ltd. v. Riceland Foods, Inc.*), No. 4:07-CV-0457 CDP, Second Amended Complaint (E.D. Mo. 2008) allege that:

> ¶ 33. Bayer and Riceland have caused strains of genetically modified rice to be grown experimentally in the United States. At all relevant times, Bayer and Riceland knew of the tremendous risk for such strains of genetically modified rice to contaminate non-genetically modified rice through cross-pollination and through commingling during harvest, storage and transport.

> ¶ 51. Despite these facts, Riceland and Producers contracted to sell and sold rice to entities such as Tilda without implementing the proper safeguards to prevent the export of GE contaminated rice into markets such as the EU when Riceland knew such export was prohibited.

*See also Veetee Rice Ltd. v. Riceland Foods, Inc., et al.*, No. 4:07-CV-463, Second Amended Complaint, ¶ 16 (E.D. Ark.) ("Bayer and Riceland have caused strains of genetically-modified rice to be grown experimentally in the United States, including LLRICE 62 and LLRICE 601. At all relevant times, Bayer and Riceland knew of the tremendous risk for such strains of genetically-modified rice to contaminate nongenetically-modified rice through cross-pollination and through commingling during harvest, storage, and transport."). (Copies of the *Tilda and Veetee* Complaints are attached as Exhibits E and F hereto.)

Because the parties disagree over whether there is coverage under the Policies, Liberty Mutual submitted a Claim for Arbitration to resolve the dispute on January 22, 2010. (Exhibit G hereto.) Riceland responded by initiating this Action with a Complaint filed on February 10, 2010. In its Complaint, Riceland seeks, *inter alia*, a declaration that the Binding Arbitration Endorsement in the Policies should not be enforced, that the Policies apply to claims against Riceland and that Liberty Mutual owes Riceland a duty to defend (thus implying that the Cross Pollination Exclusion does not apply). Liberty Mutual has agreed to provide Riceland with a defense with respect to all but three suits, subject to a reservation of rights, including to terminate the defense upon establishment of no duty to defend. Liberty Mutual respectfully submits that this Action must be dismissed or stayed in favor of arbitration for the reasons further set out below.

## ARGUMENT

Liberty Mutual requests that this Action be dismissed, or at a minimum, stayed in favor of arbitration for the following reasons: (1) the arbitration provision included in the Policies is enforceable under the Federal Arbitration Act ("FAA"); (2) to the extent that Arkansas Uniform Arbitration Act were applicable (which it is not), it also would support a stay in favor of arbitration of whether the Cross Pollination Exclusion in the Policies bars a duty to defend, which is a question of law; and (3) on the face of the Policies, there is adequate notification of the arbitration clauses in the Policies at issue. Under both the FAA and Arkansas law, if any suit or claim is referable to arbitration by written agreement, any party to the agreement may apply for stay of the matter pending arbitration in accordance with the terms of the agreement. 9 U.S.C. §3; *see also Cash in a Flash Check Advance of Ark., LLC v. Spencer*, 348 Ark. 459, 465, 74 S.W.3d 600, 604 (2002) (party in a lawsuit may apply to the trial court to obtain a stay of the proceedings

and an order pursuant to an arbitration agreement).  Courts have recognized that when all claims are subject to mandatory arbitration, dismissal of a complaint under Fed. R. Civ. 12(b)(6) is the appropriate remedy.  *See, e.g., Simula, Inc. v. Autonliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (affirming dismissal of complaint based upon Rule 12(b)(6) because claims were subject to mandatory arbitration); *Alford v. Dean Witter Reynolds*, 975 F.2d 1161, 1164 (5th Cir. 1992) (dismissal is an appropriate remedy under 9 U.S.C. §3).

## I.     THE FEDERAL ARBITRATION ACT APPLIES TO THE COVERAGE DISPUTE UNDER THE POLICIES.

Section 3 of the Federal Arbitration Act ("FAA") provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. §3.  In enacting the FAA, Congress "declared a national policy favoring arbitration and withdrew the power of states to require a judicial forum for the resolution of claims."  *Southland Corp. v. Keating*, 465 U.S. 1, 7, 10 (1984) ("[c]ontracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts"); *see Mastrobuono v. Shearson Lehman Hutton, Inc.* 514 U.S. 52, 56 (reaffirming *Southland*'s explanation of the purpose of the FAA); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 271 (1995) ("the basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate;" the FAA was to have an expansive interpretation in order to reach all transactions involving interstate commerce).

Consequently, any state law that disfavors arbitration agreements will be preempted by the FAA.

The primary determinant for application of the FAA is whether the dispute involves interstate commerce. *See Allied-Bruce Terminix*, 513 U.S. at 277 (FAA extends to all contracts that could be regulated by Congress's commerce power). The U.S. Supreme Court has held that "insurance policies are contracts 'involving commerce' and are therefore subject to the Federal Arbitration Act." *United States Department of Treasury v. Fabe*, 508 U.S. 491, 113 S. Ct. 2202 (1993); *see IGF Ins. Co. v. Hat Creek P'ship.*, 349 Ark. 133, 138, 76 S.W.3d 859, 862 (2002) (citing *Fabe*). Courts throughout the country routinely hold that insurance policies involve interstate commerce, such that arbitration clauses in such contracts are subject to enforcement under the FAA. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 688 (ruling that a Montana statute conditioning enforceability of arbitration agreements on compliance with a special notice requirement was preempted by the FAA); *Lomax v. Woodmen of World Life Ins. Soc.*, 228 F. Supp. 2d 1360, 1366 (N.D. Ga. 2002) (FAA, rather than Georgia Arbitration Act, applied to agreement to arbitrate over life insurance benefits, where benefit certificates were issued in Nebraska and mailed to Georgia); *Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1316 (S.D. Fla. 2004) (holding that the FAA, rather than Florida law, applied in determining enforceability of arbitration clause); *Walton v. Lewis*, 337 Ark. 45, 49, 987 S.W.2d 262, 264-65 (1999) (applying FAA instead of Arkansas Uniform Arbitration Act to tort action).

Therefore, when a dispute in Arkansas involves interstate commerce, the FAA, and not the Arkansas Uniform Arbitration Act ("AUAA"), Ark. Code Ann. § 16-108-201,

controls the issue of enforcement of arbitration provisions. *See Walton*, 337 Ark. at 49, 987 S.W.2d at 264-65 (applying FAA instead of AUAA to tort action because underlying dispute involved interstate commerce); *Pest Management, Inc. v. Langer*, 369 Ark. 52, 59, 250 S.W.3d 550, 556 (2007) (holding that arbitration clause is governed by FAA and reversing circuit court holding that claims in tort are not subject to arbitration under Arkansas Arbitration Act); *Remmel Revocable Trust v. Regions Financial Corp.*, 369 Ark. 392, 398, 255 S.W.3d 453, 458 (2007) (declining to determine whether FAA or AUAA applied to tort claim because parties did not appeal this issue, but stating that the FAA applies to matters involving interstate commerce); *see also Lehman Props., LP v. BB&B Constr. Co.*, 81 Ark. App. 104, 106, 98 S.W.3d 470, 471-72 (2003) (concluding that the FAA did not preempt the AUAA, but only because all relevant contacts were in Arkansas and did not involve interstate commerce).

The coverage dispute in this Action clearly involves interstate commerce. Liberty Mutual is a Massachusetts corporation, with its principal place of business in Massachusetts and Riceland is an Arkansas corporation, with its principal place of business in Arkansas. (*See* Exhibit A, Complaint ¶ 1.) *See also Sims*, 336 F. Supp. 2d at 1316 (FAA, rather than Florida law, applies in determining enforceability of arbitration clause in that insurance policy involved interstate commerce, since it was issued by a New Jersey insurer to a Florida resident). Further, the Policies at issue provide liability coverage for events taking place throughout the United States and in certain foreign territories. The "Coverage Territory" is defined in the Policies as covering the a) United States of America, Puerto Rico and Canada, b) international waters or airspace, and c) all other parts of the world if the injury or damage arises out of certain activities by the

insured.  Policies, Commercial General Liability Coverage Form, § V.4.  (Exhibit A

hereto.)

Moreover, according to Riceland's Complaint, there are over 100 underlying

lawsuits naming Riceland as a defendant, the claimants of which are located in several

states within the United States, as well as in other countries.  Complaint, ¶ 56.  *See, e.g.,*

*Schafer v. Riceland Foods, Inc.*, No. CV-2006-413 (Ark. Cir. Ct., Lonoke Cty.) (plaintiffs

are residents of Arkansas); *Veetee Rice Ltd. v. Riceland Foods, Inc.*, No. 4-07-CV-463

(E.D. Ark. 2007) (plaintiff is a company organized under the laws of the United

Kingdom), *Soufflet Alimentaire v. Riceland Foods, Inc.* (Valenciennes Commercial

Court, France) (plaintiff is a company organized under the laws of France) (Exhibits C,

D, E & F hereto).  The underlying complaints allege contamination of both the Arkansas

and United States long-grain rice supply.  Complaint, ¶ 56.  Many of these suits have

been consolidated into a Multi-District Litigation in Missouri, *In re Genetically Modified*

*Rice Litigation (Tilda LTD v. Riceland Foods, Inc.*, Case No. 4:06MD 1811 CDP (No.

4:07-CV-0457 CDP) (D. Mo.).  Complaint, ¶ 61 and Exhibit 5 thereto.  Accordingly, as

the Policies and underlying suits clearly involve interstate commerce, the FAA controls

the issue of enforcement of the arbitration provisions of the Policies and the Binding

Arbitration Endorsement is enforceable.  Further, the FAA "requires a federal court to

enforce arbitration agreements and to stay litigation that contravenes them . . . .  The FAA

affords no latitude for discretion."  *Burns v. New York Life Ins. Co.*, 202 F.3d 616, 620

(2d Cir. 2000) (internal citations omitted); *see also Moses H. Cone Mem. Hosp. v.*

*Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

## II. ALTHOUGH IT IS NOT APPLICABLE, EVEN THE AUAA SUPPORTS A STAY IN FAVOR OF ARBITRATION OF THE CROSS-POLLINATION EXCLUSION.

As shown above, the FAA, not the AUAA, plainly controls the enforcement of the parties' arbitration dispute in this matter. However, even if the AUAA were applicable, it would support arbitration of the key issues at stake between Liberty Mutual and Riceland. The AUAA reflects strongly-stated Arkansas public policy in favor of enforcement of arbitration provisions. *See* Arkansas Code § 16-108-201(b)(1); *Remmel Revocable Trust v. Regions Financial Corp.*, 369 Ark. 392, 398, 255 S.W.3d 453, 458 (2007); *Hart v. McChristian*, 344 Ark. 656, 662, 42 S.W.3d 552, 556 (2001); *Anthony v. Kaplan*, 324 Ark. 52, 57, 918 S.W.2d 174, 177 (1996).[2]

Arkansas Code Section 16-108-201(b) contains a limited exception to the enforceability of arbitration provisions in insurance contracts. *See* Ark. Code § 16-108-201(b)(2) ("[t]his subsection shall have no application to personal injury or tort matters, employer-employee disputes, nor to any insured or beneficiary under any insurance policy or annuity contract"). Under Arkansas Code § 23-79-203, an arbitration clause in an insurance policy is void only if it deprives the insured or policy beneficiary of a right to a jury trial <u>on a question of fact</u>. Arkansas Code § 23-79-203 ("Insurance Policies Generally – Suits Against Insurers") (emphasis added). On the other hand, this provision does not prohibit enforcement of arbitration clauses in insurance contracts concerning questions of law.

---

[2]    Courts view arbitration as "a less expensive and more expeditious means of settling litigation and relieving docket congestion." *Remmel Rev. Trust*, 369 Ark. at 398-99, 255 S.W.3d at 458-59. Arkansas courts view arbitration as a matter of contract between the parties and will read arbitration agreements to include subjects within the spirit of the parties' agreement. *Id.* Any doubts or ambiguities will be resolved in favor of arbitration. *Id.*

The key issue between the parties here is a question of law: whether the Cross Pollination Exclusion in the Policies at issue precludes any duty to defend Riceland for suits that allege that rice supplies became contaminated by genetically-modified rice through a variety of means, including cross-pollination.[3]  Under Arkansas law, the construction of unambiguous contract terms is a question of law for the court.  *See Fryer v. Boyett*, 64 Ark. App. 7, 11, 978 S.W.2d 304, 306 (1998) (where the terms of the contract were unambiguous, the circuit court's judgment was proper, regardless of what the parties discussed during their negotiations); *Cranfill v. Union Planters Bank*, 86 Ark. App. 1, 14, 158 S.W.3d 703, 711 (2004) (upholding trial court's determination that personal guaranty provision was unambiguous and enforceable as a matter of law).  *Accord Jackson v. Daley*, 739 So. 2d 1031, 1041 (Miss. 1999) (the trial court, not the jury, must determine the meaning and effect of an insurance contract if the meaning is clear and unambiguous).  Thus, even if the AUAA were somehow applicable (which, Liberty submits, it is not), it would support a stay of this Action in favor of arbitration of the application of the Cross-Pollination Exclusion, which is an issue of law.

---

[3]    The Cross Pollination Exclusion states that "[c]overage is excluded under this policy for bodily injury or property damage caused in whole or in part by:  A) Cross Pollination . . . D) Mis-Delivery, Mis-Packaging, or Mis-Labeling" (emphasis added).  As quoted previously in this Brief, the Grower and Distributor Suits allege that contamination of the Arkansas and United States rice supply was caused by the cross-pollination and commingling of non-genetically modified rice with genetically modified rice.  The Distributor Suits additionally allege that Riceland delivered shipments containing genetically modified rice, knowing that shipments contained genetically modified rice and that the distributors' customers would not accept genetically modified rice.

**III.   ANY NECESSARY NOTIFICATION OF THE ARBITRATION ENDORSEMENTS IS SHOWN ON THE FACE OF THE AGREED POLICY TERMS.**

Each of the Liberty Mutual Policies at issue contains a Binding Arbitration Endorsement.[4]  Riceland alleges in its Complaint that the Binding Arbitration Endorsement in the three Policies at issue is not enforceable because it was not part of the 2004-2005 Policy (not at issue) and Riceland allegedly was not notified of the inclusion of the Arbitration Endorsement in the subsequent Policies at issue.  Complaint, ¶ 89 ("Liberty never advised or explained to Riceland that it had altered policy terms through the addition of an arbitration clause beginning with the renewal and placement of the 2005 Policy.")  However, any necessary notification is shown on the face of the Binding Arbitration Agreements that Riceland itself admits are the Policies' terms.

The Binding Arbitration Endorsement in each of the Policies clearly states in bold and all capitals:  **"THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."**  (Exhibit A hereto.)  In addition, this Binding Arbitration Endorsement was included in policies for three consecutive years, *i.e.*, the 2005-2006 Policy, the 2006-2007 Policy and the 2007-2008 Policy, such that Riceland had ample opportunity to review the Policies and object to the inclusion of the Binding Arbitration Endorsement.

The exact notification found in the Binding Arbitration Endorsement has been deemed sufficient notice by other courts.  In *Willems v. Rural Mut. Ins. Co.*, 2007 WL

---

[4]      Riceland's Complaint states that the underlying suits allege that contamination took place in 2006-2008.  Complaint, ¶ 65.  Thus, the earliest potentially triggered policy is the 2005-2006 Policy.

4198613, 743 N.W.2d 168 (table) (Wis. Nov. 29, 2007) (per curiam),[5] the court

determined that the insureds had sufficient notice and refused to reform the agreement

where the policy endorsement included the warning "THIS ENDORSEMENT

CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."  The *Willems* court

explained that the policy provided notice sufficient to alert a reasonable person that the

coverage under the policy had changed and that no cover letter or notice from an agent

was necessary to either locate or understand the relevant policy.  *Willems*, at 168; *see also*

*Mundy v. Lumberman's Mut. Cas. Co.*, 783 F.2d 21 (1st Cir. 1986) (where renewal policy

contained a reduction in coverage "written in readable English in good-sized print" and

admonished the reader to read the policy carefully, the insurer had sufficiently called the

insured's attention to the change in coverage); *Gov't Emps. Ins. Co. v. United States*, 400

F.2d 172, 175 (10th Cir. 1968) (cover letter sent with the renewal policy containing an

additional exclusion and advising the insured to carefully read the policy, had sufficiently

notified the insured of the change in coverage and therefore, the exclusion was

incorporated into the renewal policy).[6]

    For the reasons stated, this Court should enforce the Binding Arbitration

Endorsement of the Policies as required by the FAA, and dismiss or stay this suit in favor

of the arbitration initiated by Liberty Mutual pursuant to the Policies' terms.

---

[5]    The decision in *Willems* includes a legend that it is "unpublished" and has restricted precedential value under Wisconsin Rule of Appellate Procedure 809.23(3).  However, that rule only restricts citation in Wisconsin courts.

[6]    Moreover, in the present case, the inclusion of an arbitration clause did not change the scope of coverage, but rather inserted a procedural mechanism for the resolution of disputes over coverage. Where, as here, an addition to a renewal policy does not alter the coverage provided under the policy and is not inconsistent with or repugnant to the provisions of the initial policy, it should be enforced.

## CONCLUSION

For the reasons set forth above, Liberty Mutual urges this Court to recognize the validity of the Binding Arbitration Endorsement and to grant its Motion to Dismiss or Stay In Favor Of Arbitration.

Respectfully submitted,

H. William Allen (ABN 69001)
Brooks C. White (ABN 2000093)
ALLEN LAW FIRM
A Professional Corporation
212 Center Street, 9th Floor
Little Rock, AR  72201
(501) 374-7100
hwallen@allenlawfirmpc.com
bcwhite@allenlawfirmpc.com

By:  /s/ H. William Allen
          H. William Allen

By:  /s/ Brooks C. White
          Brooks C. White

Laura A. Foggan
Dale E. Hausman
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
(202) 719-7000
lfoggan@wileyrein.com
dhausman@wileyrein.com

Dated: March 29, 2010

## CERTIFICATE OF SERVICE

I hereby certify that, on this 29th day of March, 2010, I electronically filed the foregoing Brief in Support of Defendant's Motion To Dismiss Or Stay This Action In Favor Of Arbitration with the Clerk of the Court using the CM/ECF System, which will send immediate notification of such filing to the following other counsel:

Paul D. Waddell, Esq.
Barrett & Deacon, P.A.
300 S. Church Street
Jonesboro, Arkansas  72403
*Counsel for Plaintiff, Riceland Foods, Inc.*

Matthew S. Darrough, Esq.
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO  63101
*Counsel for Plaintiff, Riceland Foods, Inc.*

/s/ H. William Allen_____
H. William Allen