UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| RICELAND FOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:10-cv-091-SWW |
| | ) | |
| LIBERTY MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF RICELAND FOODS, INC.'S MEMORANDUM
IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS OR STAY ACTION IN FAVOR OF ARBITRATION**

This case presents a coverage dispute between Riceland Foods, Inc. ("Riceland") and its insurer, Liberty Mutual Insurance Company ("Liberty").  Liberty wants to avoid this Court's continued involvement and a jury trial.  To accomplish that end, Liberty hopes to compel arbitration under the Federal Arbitration Act ("FAA").  The Court should not accept Liberty's invitation to contravene established law.

Liberty wholly ignores the substance of Ark. Code § 16-108-201, which unequivocally invalidates arbitration clauses in insurance policies.  Liberty compounds its statutory oversight with its refusal to recognize Eighth Circuit precedent that holds statutes like Ark. Code § 16-108-201 preempt the FAA (not the other way around).  Liberty's motion should meet the same fate as the insurer's efforts to enforce an arbitration provision antithetical to the state statute reviewed in *Standard Security Life Ins. Co. v. West*, 267 F.3d 821 (8th Cir. (Mo.) 2001) ("reverse preemption" required enforcement of state statute invaliding arbitration provision in insurance policy).  The Court should deny Liberty's motion to either dismiss or stay in favor of arbitration.

## RELEVANT FACTS

### A.     The Policies

Riceland purchased a primary general liability policy from Liberty to cover the period of August 1, 2004 to August 1, 2005.  (Riceland's Complaint, ¶¶ 11-12.)[1]  It contained no provisions seeking to mandate the arbitration of disputes between the parties.  (Riceland Complaint, ¶ 14.)  Riceland also paid Liberty for primary commercial general liability insurance intended to cover the periods of August 1, 2005 to August 1, 2008.  (See Riceland's Complaint, Exhibits 1-3.)  Upon purchase of these renewal policies, Liberty failed to disclose or explain to Riceland that the renewed policies contained a new endorsement concerning arbitration. (Riceland Complaint, ¶ 15.)

### B.     The Underlying Lawsuits

Over the last several years, Riceland has been named as a defendant in excess of 100 lawsuits that concern the alleged contamination of the Arkansas and United States long-grain rice supply with Bayer CropScience's genetically modified Liberty Link rice from 2006-2008. (Riceland's Complaint, ¶¶ 55-65.)   These lawsuits allege an improper "commingling" of genetically modified rice with the long-grain rice supply as the causal factor.   (Riceland's Complaint, Exhibits 4-6.)  Riceland sought coverage under the Liberty policies that it purchased. (Riceland's Complaint, 68-75.)  In response, Liberty repeatedly stated that it would participate in the defense of the vast majority of these lawsuits.  (Riceland's Complaint, ¶ 77.)   Despite extensive defensive efforts with respect to more than 100 lawsuits over a period of years and its contrary promises, Liberty has paid nothing.  (Riceland's Complaint, ¶ 79.)

---

[1] Liberty's responsive pleading is in the nature of a motion to dismiss.  Riceland's allegations are to be taken as true for purposes of the motion.  Liberty attaches exhibits to its supporting brief, some of which are beyond the pleadings.  Riceland's statement of facts is based on the pleadings.

C.    **Liberty's "Claim for Arbitration"**

On January 22, 2010, (as Riceland was preparing for the first trial of these many genetically modified rice lawsuits), Liberty sent Riceland a complaint captioned a "Claim for Arbitration".   (See Riceland's Complaint, Exhibit 6.)   In it, Liberty seeks a no coverage determination for the policies it issued Riceland for the 2005-2008 timeframe.   *Id.*   Liberty's "Claim for Arbitration" alleges that arbitration is compelled through its election in accordance with the "Binding Arbitration" endorsements found in each policy. *Id.* Liberty's "Claim for Arbitration" purports to contain the following claims:  Count I (no coverage regarding the cross-pollination exclusion); Count II (no coverage if Riceland knew of the injuries to third parties prior to policy placement or intended or expected such injuries to occur); Count III (no coverage if Riceland failed to cooperate with Liberty); Count IV (the application of at least twelve other policy provisions that Liberty contends could preclude coverage); and Count V (alternative claim concerning reasonableness of costs).   *Id.*   Even a perfunctory examination of  Liberty's "Claim for Arbitration" demonstrates its inclusion of factual matters for determination through arbitration.  *Id.*

D.    **Riceland's Complaint in this Coverage Action**

Count I of Riceland's Complaint seeks a declaration that Arkansas Code § 16-108-201 **and/or** Arkansas Code § 23-79-203 render any arbitration provisions in its policies invalid, void, null, unenforceable, or of no effect.  (Complaint, Count I.)  Riceland's Complaint further alleges that Liberty placed arbitration endorsements on its renewal policies without advising or explaining to Riceland that Liberty had done so, providing further grounds to render the arbitration provisions unenforceable.   (Complaint, ¶¶ 89, 94.)   Riceland also seeks actual damages for Liberty's contractual breaches (Count II), statutory damages for Liberty's wrongful

denials of policy benefits (Count III), and punitive damages to punish and deter the bad faith conduct of Liberty (Count IV).

**ARGUMENT**

Arkansas law invalidates arbitration provisions in insurance policies. This specific Arkansas law concerning insurance trumps the general preference for arbitration found in the FAA. The principle is referred to as "inverse preemption" (also known as "reverse preemption"). Courts examining the interplay of such state statutes and the FAA have uniformly applied "inverse preemption." Among them, the Eighth Circuit determined that a nearly identical Missouri statute invalidated an arbitration provision within a policy of insurance, leaving the insured to pursue his claims through the judicial process. Liberty fails to address both the Arkansas statute and the caselaw finding that statute invalidates arbitration provisions in insurance policies.

**A.      Choice of Law**

This Court should apply Arkansas's choice of law rules. Arkansas has traditionally applied the law of the state where an insurance contract is formed (*lex loci contractus*) in a choice of law analysis. *S. Farm Bureau Cas. Ins. Co. v. Craven*, 79 Ark. App. 423, 427-28, 89 S.W.3d 369, 372 (2002). However, Arkansas courts have also looked to the most significant contacts approach when faced with a choice of law determination. *Id.* Under that approach, the following factors are considered: (1) place of contracting; (2) the place of negotiation; (3) the place of performance; (4) location of subject matter of contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. RESTATEMENT (SECOND) CONFLICT OF LAWS, § 188.

Here, Arkansas law is the appropriate choice under both tests.  While Liberty is a Massachusetts insurer, it issued the policies to an Arkansas company, indicating its Arkansas address in the declarations.  The policies themselves provide Riceland with a Liberty claims address in Arkansas and contact to the Arkansas Department of Insurance.  While the policies conceptually insure occurrences outside of Arkansas, it is clear under the circumstances that much of the insured risk is in Arkansas.  Riceland's principal place of business is in Arkansas.  The majority of Riceland's rice driers, mills, and warehouses are in Arkansas, thus a majority of Riceland rice is purchased, stored, processed, and shipped from Arkansas.  Indeed, the claims at issue pertain to damages asserted by persons and entities growing rice in Arkansas.  This Court should apply Arkansas law, which Liberty's motion appears to concede by identifying Arkansas authorities.

**B.      The Arkansas Statute on Arbitration**

Arkansas Code § 16-108-201 "Agreement to arbitrate – Application" is part of a chapter adopting the Uniform Arbitration Act (Liberty refers to the chapter as the "AUAA").  Section 16-108-201 states:

> (a)   A written agreement to submit any existing controversy to arbitration arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract.

> (b)(1)  A written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract.

> (2)  This subsection shall have no application to personal injury or tort matters, employer-employee disputes, nor to any insured or beneficiary under any insurance policy or annuity contract.

Ark. Code § 16-108-201.   Subsection (b) applies to any arbitration provisions in the insurance policies Liberty issued to Riceland – "written provision[s] to submit to arbitration any controversy thereafter arising between the parties." *Id.*

Arkansas Code § 16-108-201(b)(2) unequivocally invalidates the enforcement of arbitration provisions in insurance policies.   According to the statute, such provisions are neither "valid" nor "enforceable".  Arkansas (like other states that adopted similar statutes) determined that insurers could not enforce arbitration provisions in policies of insurance against their insureds as a matter of public policy.  Yet, Liberty's motion attempts to do just that.   This  Court should reject Liberty's invitation to err by ignoring or giving a stilted construction to Arkansas's express bar on arbitration provisions in insurance policies.

Liberty's supporting brief identifies the relevant provision, but then without explanation states:  "Arkansas Code Section 16-108-201(b) contains a limited exception to the enforceability of arbitration provisions in insurance contracts."  (Liberty's Brief in Support of Dismissal Motion, p. 10.)  Liberty's too narrow view ignores the statute's plain and unambiguous language. Liberty fails to explain why its effort to compel arbitration here does not fall squarely into the Arkansas prohibition against the enforcement of arbitration provisions that even Liberty recognizes.  Liberty's argument that the AUAA supports arbitration of the coverage issues under the policies of insurance at issue between Riceland and Liberty is contrary to the well-established cannons of statutory construction and patently erroneous.  (Liberty's Brief in Support of Dismissal Motion, pp. 10-11.)  The AUAA does the exact opposite.

**C.      Arkansas Statute on Right to Jury In Coverage Dispute**

Rather than make any attempt to explain away the plain language of Arkansas Code § 16-108-201(b)(2) that prevents Liberty from compelling arbitration or offer any distinction, Liberty

tries an end run.  Liberty attempts to fuse that statute together with Arkansas Code § 23-79-203 to support its contention that the Arkansas legislature only intended to bar arbitration of factual issues by making an exception for arbitrating questions of law.  The Arkansas General Assembly did nothing of the sort.  Liberty's contention to the contrary ignores the plain language of the statutes and the cannons of statutory interpretation.

Riceland's complaint identifies Arkansas Code § 23-79-203 as an independent basis for litigating the coverage action in this Court rather than through arbitration.  That section states:

> (a)  No insurance policy or annuity contract shall contain any condition, provision, or agreement which directly or indirectly deprives the insured . . . of the right to trial by jury on any question of fact arising under the policy or contract.

> (b)  All such provisions, conditions, or agreements shall be void.

Ark. Code § 23-79-203.  Liberty seeks to meld § 23-79-203 and § 16-108-201(b)(2) to achieve a legislative intent that compels the arbitration of insurance disputes concerning questions of law. The approach is flawed in multiple respects.

First, the arbitration endorsements in the Liberty policies violate § 23-79-203 in that they deprive Riceland of a trial by jury on questions of fact arising under the policies.  Indeed, Liberty's Claim for Arbitration is laden with factual issues on which Liberty sought to deprive Riceland of a jury trial through a binding arbitration approach.[2]  As such, the arbitration

---

[2] Liberty seizes on just a few allegations from thousands made in the various lawsuits against Riceland to argue that a "cross-pollination" exclusion precludes coverage.  Even assuming as Liberty does that the exclusion (that does not define "cross-pollination") proves unambiguous, Liberty cannot satisfy its burden of demonstrating application of this exclusion under all possible scenarios.  Liberty's argument ignores a fundamental tenant of insurance law:  the duty to defend is broad and coverage is provided for all claims made if there is *any* possibility of indemnification coverage under the policies.  *See, e.g., Ison v. Southern Farm Bureau Cas. Co.*, 93 Ark.App. 502, 508, 221 S.W.3d 373, 378 (2006); *Madden v. Cont'l. Casualty Co.*, 53 Ark.App. 250, 254, 922 S.W.2d 731, 734 (1996).  The complaints in the underlying lawsuits contain alternative allegations concerning contamination that involve causal factors other than cross-pollination. (Complaint, Exhibits 4-6.)  Liberty cannot carry its burden of demonstrating there is no possibility of indemnification coverage under the policies because it cannot show that the claims alleged are each dependent on proof of cross-pollination.  Moreover, even if the four

provision is void.  The use of the term "void" renders the arbitration endorsements a nullity or of no legal effect.  *See* BLACK'S LAW DICTIONARY (8th ed. 2004) (void applies to those provisions of no effect whatsoever – those that are an absolute nullity).  It is as if the policies were issued without these endorsements.   The statutory language does not provide for  a partial application of the non-effectual arbitration clauses.   Section 23-79-203 (or its predecessor with nearly identical language) has long been part of Arkansas law.  As early as 1917, Arkansas courts recognized the purpose of the statute was to enable policyholders to litigate coverage disputes in the court system with respect to both issues of fact determined by the jury and questions of law by the courts.  *Firemen's Ins. Co. of Newark, N.J. v. Davis*, 130 Ark. 576, 198 S.W. 127 (Ark. 1917).

Secondly and importantly, § 23-79-203 is not part of the AUAA.  The Uniform Arbitration Act is found in Title 16, Chapter 108, Subchapter 2 of the Arkansas Code (§§ 16-108-201 through 16-108-223).  *See* Ark. Code. 16-108-223 (referring to subchapter as "Uniform Arbitration Act").  Section 16-108-202 requires the courts to deny efforts to compel arbitration unless an agreement falls within the ambit of § 16-108-201.  Ark. Code § 16-108-202.  That statutory provision controls here because Liberty attempts to compel arbitration based on endorsements to insurance policies, which the statute plainly bars.  Ark. Code § 16-108-201.  Title 23 contains additional statutes pertaining to "Regulated Industries" such as insurers.

Title 23 is not part of the AUAA.  There is no indication in the Arkansas Code that § 23-79-203 was intended to abrogate the clear prohibition on enforcing arbitration provisions in insurance contracts found in the AUAA.  Rather, Title 23 provides a second and independent

corners of a complaint do not reveal coverage, facts extrinsic to the lawsuit can generate a duty to defend. *Murphy Oil USA, Inc. v. Unigard Security Ins. Co.*, 347 Ark. 167, 175-76, 61 S.W.3d 807, 812 (2001). Here, there is no indication that Riceland contributed to any cross-pollination.  Even the plaintiffs' expert in the underlying lawsuits have opined that commingling, rather than cross-pollination, contaminated the rice supply.

reason why the arbitration endorsements are unenforceable.  Yet, Liberty characterizes the Title

23 section as an implied repeal of the no arbitration provision in Arkansas Code § 16-108-202.

However, "[t]he fundamental rule of the doctrine is that a repeal by implication is not favored

and is never allowed except where there is such an invincible repugnancy between the provisions

that both cannot stand." *Brock v. Townsell*, 2009 Ark. 224, at 6-7.  No such invincible

repugnancy exists here.  Indeed, these statutes do not at all conflict and can be read in harmony.

Collectively, these statutes present a door that opens one way – against arbitration.  The

Arkansas General Assembly preserves: (1) a policyholder's right to avoid arbitration of a

coverage dispute; **and** (2) a policyholder's right to try facts issues to a jury (no litigant would be

permitted to have the jury decide questions of law within the province of the court).   These two

statutes plainly can be read in accord.  Because there is no conflict between Arkansas Code § 16-

108-202 and Arkansas Code § 23-79-203, the strictures of statutory construction compel this

Court to reject Liberty's narrowed interpretation of Arkansas Code § 16-108-202.  Therefore,

this Court need not reach Liberty's cumbersome request that it alternatively, stay these

proceedings with a related bifurcation of questions of law and fact.  Riceland, nonetheless,

explains below why such an approach proves problematic.

**D.      "Inverse Preemption"**

Liberty contends that any state law that disfavors arbitration agreements should be

preempted by the FAA.  (Liberty's Brief in Support of Dismissal Motion, p. 7.)  Liberty argues

that the FAA reflects a national policy favoring arbitration and withdrew the power of the states

to require a judicial forum to resolve disputes.  (Liberty's Brief in Support of Dismissal Motion,

p. 6.)  Liberty ignores that the Arkansas statutes at issue are aimed directly at the regulation of

insurance.  That critical fact results in an "inverse preemption" or "reverse preemption" under

which state statutes disfavoring arbitration agreements in insurance policies preempt the FAA's more general provisions.

In *Standard Security Life Ins. Co. v. West*, 267 F.3d 821 (8th Cir. 2001), the Eighth Circuit Court of Appeals found Missouri's statute effectively prohibited the enforcement of arbitration clauses in insurance contracts. Devon West, a running back with the University of Missouri-Columbia, purchased a disability insurance policy from Standard that contained an arbitration provision. Standard insisted on arbitrating a coverage dispute with West arising from the policy. West refused to arbitrate, filing a lawsuit. West explained that RSMo. § 435.350 (that portion of Missouri's adopted "Uniform Arbitration Act" permitting the enforcement of an arbitration provision in a written contract, "except contracts of insurance") rendered the arbitration provision in his policy ineffective. Standard argued the FAA preempted the Missouri statute. The district court correctly identified the impact of the McCarran-Ferguson Act that results in an "inverse-preemption" and bars application of the Federal Arbitration Act because Missouri's statute relates to insurance. *Id.* The Eighth Circuit adopted the district court's analysis and affirmed the decision. *Id.*

The controlling legal analysis here involves an intersection of three statutes: (1) the McCarran-Ferguson Act (15 U.S.C. § 1012(b)); (2) the Arkansas Statutes identified above invaliding arbitration agreements in insurance policies; and (3) the federal statute comprising the part of FAA that states written arbitration agreements are enforceable (9 U.S.C. § 2).

The McCarran-Ferguson Act states that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for purpose of regulating the business of insurance, … unless such Act specifically relates to the business of insurance…" 15 U.S.C. § 1012(b). The FAA, 9 U.S.C. § 2, does not specifically relate to the business of

insurance.  *See McKnight v. Chicago Title Ins. Co.*, 358 F.3d 854 (11th Cir. 2004).  Its language

is general, rendering the tail of 15 U.S.C. § 1012(b) inapplicable.  Hence, the McCarran

Ferguson Act inverse preempts/reverse preempts any provision of the FAA if the FAA

provision's enforcement invalidates, impairs, or supersedes a state law regulating the business of

insurance.  The McCarran-Ferguson Act, therefore, provides an exception to the FAA provisions

on which Liberty seeks to rely here if § 16-108-201 and/or § 23-79-203 are laws enacted by

Arkansas "for the purpose of regulating the business of insurance."  The governing McCarran-

Ferguson precedent and the language of those Arkansas statutes speak plainly on that issue.

    Courts have found the McCarran-Ferguson Act left to the states the "relationship between

insurer and insured, the type of policy which could be issued, its reliability, interpretation, and

enforcement . . .  [s]tatutes aimed at protecting or regulating this relationship, directly or

indirectly, are laws regulating the 'business of insurance.'"  *McKnight*, 358 F.3d at 858 (citations

omitted).  Three criteria examined are:  (1) whether the practice has the effect of transferring or

spreading a policyholder's risk; (2) whether the practice is an integral part of the policy

relationship between the insurer and insured; and (3) whether the practice is limited to entities

within the insurance industry.  *Id.*

    The courts that have applied these factors with respect to provisions in state arbitration

codes excepting insurance contracts have concluded such statutes are laws regulating the

business of insurance.  *Id.* (citing *West* and *Mut. Reinsurance Bureau v. Great Plains Mut. Ins.

Co.*, 969 F.2d 931, 934-35 (10th Cir. 1992); *see also, Am. Bankers Ins. Co. of Florida v. Inman*,

436 F.3d 490 (5th Cir. 2006); *Datacor, Inc. v. Heritage Warranty Ins. Risk Retention Group,

Inc.*, No. 4:09-CV-1123, 2009 WL 5062137 (E.D. Mo. Dec. 16, 2009) (applying Nebraska

statute essentially identical to Arkansas Code § 16-108-201(b)(2)).

The Arkansas statutes, like those evaluated in the aforementioned authorities, spread risk by introducing the possibility of jury verdicts into the process for resolving disputed claims.  *Id.* They affect the insurer-insured relationship by invalidating a chosen mode of contract enforcement.  *Id.*  And, they are expressly limited to entities within the insurance industry.  *Id.; See Datacor*, 2009 WL 5062137 (to extent statutory language restricts enforceability with respect to tort claims or employer-employee disputes it does not change the analysis).  The Arkansas statutes at issue here are no different than the state statutes adopted in other states and examined in such decisions.  Thus, the outcome should be the same.[3]

## E.      A Stay Is Inappropriate

As detailed above, the Arkansas statutes do not promote or even permit a splintering of Riceland's claims (or for that matter, those that Liberty sought to assert in its Claim for Arbitration) between an arbitration panel and this Court.  Liberty has yet to answer Riceland's Complaint.  Based on Liberty's Claim for Arbitration, there will undoubtedly be both factual and legal issues involved in this case and the defenses.  In that sense, the case is not unlike most others.  Liberty makes no effort to explain why the Arkansas statute preserving an insured's right to trial by jury of factual issues requires the arbitration of questions of law here.  The unambiguous language of the Arkansas statutes does not support Liberty's contention.  Nor would it have made any practical sense for the General Assembly to adopt such a cumbersome procedure so at odds with the general right to trial by jury on both questions of law and fact.  Liberty cites absolutely no authority that would support its approach of parsing the questions of law from the questions of fact and dividing the two between tribunals.  None exists.

---

[3] Of note, Arkansas Code § 16-108-201(b)(2) is reviewed for "inverse preemption" in two reported cases: *IGF Ins. Co. v. Hat Creek P'ship*, 349 Ark. 133, 76 S.W.3d 859 (2002) and *Murphy Oil USA, Inc. v. SR Int'l Bus. Ins. Co.*, 2007 WL 2752366 (W.D. Ark. 2007).  Neither adopted "inverse preemption"; both, however, accepted the premise that § 16-108-201(b)(2) regulates insurance and instead, turned on the existence of federal enactments specifically governing insurance that are not present in this case.  *Id.*

The practical ramifications of Liberty's alternative approach are sure to create inefficiencies and much confusion if employed.  With respect to Liberty's plan, certain issues (which Liberty has identified as key) should be determined by the arbitrator as questions of law (because Liberty contends they unambiguously support its coverage interpretation, which they do not, nor are they truly legal issues).  Liberty would apparently have this dispute ping-pong back and forth between the Court and the arbitration panel as the case progresses and it proves necessary to address various issues of law and facts.  While courts are frequently faced with difficult issues concerning the lines between fact and law, they are usually not faced with the inefficiencies of relying on those beyond the Court's control to determine all legal issues before the Court may proceed.  Or, does Liberty contend only certain legal issues go through arbitration?  If so, which ones and why?  Who decides the priority?  And how is this Court to schedule the matters?  For good reason, no authority supports Liberty's stay approach.  It simply makes no sense.

**F.     Liberty's Addition of Arbitration Endorsements in Renewal Policies**

While Riceland suggests that Liberty's motion is easily deniable based on the Arkansas statutes and "inverse preemption", there is yet another basis to reject any attempt to compel arbitration of all or part of the coverage dispute.  Liberty placed the arbitration endorsements in Riceland's renewal policies without specifically advising it had done so.  Under Arkansas law, the insurer has a duty to issue a renewal policy on the same terms and conditions as the original policy.  *See, e.g., General Agents Insurance Co. v. St. Paul Ins. Co.*, 22 Ark. App. 46, 732 S.W.2d 868 (1987); *American Cas. Co. of Reading, PA. v. Hambleton,* 233 Ark. 942, 349 S.W.2d 664 (1961) (if insurer sought to vary terms of renewal, it had a clear duty to advise the insured of the changes made; insured entitled to assume renewals identical unless it has contrary

notice of new terms);  *see also*,  Russ & Segalia, 2 Couch on Insurance 3d §29:42 (2005).  If an insurer wishes to change the terms and conditions in a renewal policy, it must notify the insured that the renewal differs from the original policy.  *St. Paul*, 732 S.W.2d at 870.  If it fails to do so, the renewal policy should be corrected or the insurer estopped from relying on adverse and unadvised changes.  *Id.; see also Coal Operators Cas. Co. v. F.S. Neely Co.*, 219 Ark, 579, 583-85, 243 S.W.2d 744, 746-47 (1951); *Southern Farm Bureau Cas. Ins. Co. v. U.S.*, 395 F.2d 176, 181-82 (8th Cir. (Ark.) 1968).

Liberty's position is that it provided the appropriate notification of change as the arbitration endorsement contains a header, stating: "THIS ENDORSEMENT CHANGES THE POLICIES.  PLEASE READ IT CAREFULLY".  (Liberty's Brief in Support of Dismissal Motion, pp. 12-13).  But, all endorsements are intended to change the terms the policy, otherwise, they would not be endorsements.  All the endorsements in all of the Liberty Policies contain such headers.  The law is that Liberty was required to advise Riceland that it had changed the policy in the 2005 renewal (and the subsequent renewals) by adding a new arbitration endorsement.  The out of state authorities relied on by Liberty do not support its position that form endorsement language (contained on all of its endorsements) provides sufficient notification to the insured that the policy has been changed from the original.  In each, the courts look at other factors indicating noticed changes, such as cover letters explaining changes, summaries of differences, or other forms of notification.   Tellingly, Liberty does not identify any such notifications.

<u>**CONCLUSION**</u>

Based on the foregoing, Riceland respectfully requests that this Honorable Court deny Liberty's motion to dismiss, deny Liberty's alternative motion to stay, and grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

BARRETT & DEACON, P.A.

  /s/  Paul D. Waddell
Barry Deacon, #75030
Paul D. Waddell, #87179
P.O. Box 1700
Jonesboro, AR  72403
(870) 931-1700
bdeacon@barrettdeacon.com
pwaddell@barrettdeacon.com

and

THOMPSON COBURN LLP

  /s/ Matthew S. Darrough
Matthew S. Darrough, *pro hac vice*
One US Bank Plaza
St. Louis, Missouri  63101
314-552-6000
FAX 314-552-7000
mdarrough@thompsoncoburn.com

Attorney for Plaintiff
Riceland Foods, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this  12th  day of April, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all attorneys of record.

/s/ Matthew S. Darrough