UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**RICELAND FOODS, INC.**                                                                                    **PLAINTIFF**

vs.                                    **Case No. 4:10-CV-091 SWW**

**LIBERTY MUTUAL INSURANCE COMPANY**                                            **DEFENDANT**

### DEFENDANT'S REPLY BRIEF TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR STAY

Defendant Liberty Mutual Insurance Company ("Liberty"), by and through its undersigned counsel, pursuant to Fed. R. Civ. P. 12 and the Federal Arbitration Act, 9 U.S.C. §3, submits this Reply Brief to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Or Stay This Action In Favor of Arbitration against Riceland Foods, Inc. ("Plaintiff" or "Riceland") and hereby states as follows:

### ARGUMENT

In its Memorandum in Opposition to Defendant's Motion to Dismiss or Stay ("Memo in Opposition"), Riceland argues that the McCarran Ferguson Act "reverse preempts" application of the Federal Arbitration Act ("FAA"). Riceland's arguments are misplaced, as the Arkansas Uniform Arbitration Act ("AUAA"), Ark. Code § 16-108-201(b)(2), does not regulate the business of insurance and the FAA does not impair, invalidate or supersede Ark. Code § 23-79-203.

Riceland also fails to explain why the highlighted notification that the Arbitration Endorsement changes the policy was somehow inadequate in placing Riceland on notice of its inclusion in three consecutive policies. Nothing in Riceland's Memo in Opposition overcomes

the strong federal and Arkansas public policy in favor of enforcing arbitration clauses. Accordingly, the Arbitration Endorsement in the policies at issue should be enforced.

I. **THE MCCARRAN FERGUSON ACT DOES NOT BAR APPLICATION OF THE FEDERAL ARBITRATION ACT.**

Riceland does not, and cannot, refute Liberty's threshold showing for application of the FAA, that the dispute between Liberty and Riceland involves interstate commerce. Thus, this matter clearly is within the "national policy favoring arbitration" reflected in the FAA. *See Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984). Riceland attempts to avoid application of the FAA by arguing that, under the McCarran Ferguson Act, the AUAA "reverse preempts" the FAA. Riceland's argument is misplaced.

To establish that the McCarran Ferguson Act "reverse preempts" the FAA, Riceland must show that: 1) the FAA does not specifically relate to the business of insurance; 2) the relevant state statute has been enacted for the purpose of regulating the business of insurance; *and* 3) the FAA would invalidate, impair or supersede the state statute. 15 U.S.C. § 1012(b); *see IGF Ins. Co. v. Hat Creek P'ship.*, 349 Ark. 133, 140, 76 S.W.3d 859, 863-64 (2002); *see also SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 459 (1969) (stating that the McCarran Ferguson Act "did not purport to make the States supreme in regulating all the activities of insurance companies; its language refers not to the persons or companies who are subject to the state regulation, but laws 'regulating the business of insurance.'"). All three of these requirements must be met in order to prevent preemption by the FAA. Liberty does not contest the first factor, *i.e.*, that the FAA does not specifically relate to the business of insurance. However, the second and third factors are not present here.

### A. The AUAA Was Not Enacted For The Purpose Of Regulating Insurance.

Contrary to Riceland's arguments, the AUAA on its face does not regulate the business of insurance. The AUAA appears in § 16-108-201(b)(2) of the Arkansas Code. Title 16 of the Arkansas Code relates to "Practice, Procedure, and Courts," and Chapter 108 applies to "Arbitration and Award." Thus, the AUAA is a procedural statute with broad application. Indeed, the AUAA is exactly like the FAA as it clearly is not designed to regulate the business of insurance. Moreover, the AUAA identifies matters involving insurance policies as one of several exceptions to the enforcement of arbitration agreements. The AUAA provides in part:

> (b)(1) A written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist for revocation of any contract.
>
> (2) This subsection shall have no application to personal injury or tort matters, employer-employee disputes, nor to any insured or beneficiary under any insurance policy or annuity contract.

Ark. Code § 16-108-201. All but one of the exceptions to enforcement of arbitration provisions – personal injury or tort matters, employer-employee disputes, and annuity contracts – have nothing to do with insurance.

Courts apply a three-factor test in determining whether a state law regulates the "business of insurance" within the meaning of the McCarran Ferguson Act. *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982). In order to regulate the business of insurance, a state law must: (1) have the effect of transferring or spreading a policyholder's risk; (2) be an integral part of the insurance policy relationship; and (3) be limited to entities within the insurance industry. *Pireno* at 129, 3009; *see also Group Life & Health Ins. v. Royal Drug Co.*, 440 U.S. 205, 211 (1979) (the "business of insurance" focuses on the underwriting and spreading of the policyholder's risk). None of these factors is present in the AUAA.

The AUAA deals with dispute resolution, and was not drafted with the intent to regulate the business of insurance. *See Triton Lines, Inc. v. S.S. Mut. Underwriting Ass'n*, 707 F. Supp. 277, 279 (S.D. Tex. 1989) (ruling that Texas anti-arbitration provision is preempted by the FAA because resolution of "a disputed claim is not the business of insurance" within the meaning of the McCarran Ferguson Act). On its face, § 16-108-201 bears no relation to such fundamental insurance characteristics as the scope of coverage provided, exclusions or conditions to coverage, or the calculation or payment of premiums. It does not have the effect of transferring or spreading a policyholder's risk. *See Pireno* at 130 ("The transfer of risk from an insured to insurer is effected by means of the contract between the parties – the insurance policy – and is complete at the time that contract is entered."). Further, in light of the exceptions for "personal injury or tort matters, employer-employee disputes, nor to any insured or beneficiary under any insurance policy or annuity contract," it is evident from the plain language of the statute that it is not limited to entities within the insurance industry or insurance policies. Accordingly, the AUAA does not meet the factors for application of the McCarran Ferguson Act.

Courts throughout the country apply the FAA to insurance disputes, notwithstanding state statutes similar to the AUAA. *See, e.g., Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1316 (S.D. Fla. 2004) (holding that the FAA, rather than Florida law, applied in determining enforceability of arbitration clause); *Lomax v. Woodmen of World Life Ins. Soc.*, 228 F. Supp. 2d 1360, 1366 (N.D. Ga. 2002) (FAA, rather than Georgia Arbitration Act, applied to agreement to arbitrate over life insurance benefits, where benefit certificates were issued in Nebraska and mailed to Georgia); *Little v. Allstate Ins. Co.*, 705 A.2d 538, 539 (Vt. 1997) (holding that the FAA preempted anti-insurance provision of the Vermont Arbitration Act because the state statute "related to" but did not "regulate" insurance). Arkansas courts have not directly ruled upon the

priority between the FAA and AUAA when the dispute involved interstate commerce. *See IGF Ins.*, 349 Ark. at 138, 76 S.W.3d at 862 (2002) (although parties initially raised arguments regarding preemption by the FAA, the court ultimately determined that the Federal Crop Insurance Act was the proper federal regulation for McCarran Ferguson analysis); *Walton v. Lewis*, 337 Ark. 45, 49, 987 S.W.2d 262, 264-65 (1999) (applying FAA instead of Arkansas Uniform Arbitration Act to tort action); *Lehman Props., LP v. B, B & B Constr. Co.*, 81 Ark. App. 104, 106, 98 S.W.3d 470, 471-72 (2003) (concluding that the FAA did not preempt the AUAA, but only because all relevant contacts were in Arkansas and did not involve interstate commerce). Accordingly, the McCarran Ferguson Act does not prevent FAA preemption of the AUAA.

### B.     Ark. Code § 23-79-203 Also Does Not Reverse Preempt The FAA.

Arkansas Code § 23-79-203 is also subject to preemption by the FAA, and cannot be "reverse preempted" by the McCarran Ferguson Act. A review of § 23-79-203 shows that neither the second nor third requirements of the McCarran Ferguson Act can be met. Applying the FAA to the coverage dispute between Liberty and Riceland would not "invalidate, supersede or impair" § 23-79-203, because requiring arbitration on the issues of law present here clearly does not interfere with the statute's purpose of protecting jury trials for issues of fact. Further, even though § 23-79-203 governs insurance policies, it does not regulate the "business of insurance." Therefore, the second and third McCarran Ferguson Act requirements are not met.

Section 23-79-203 seeks to prevent an insured from losing the right to a jury trial where issues of fact exist. As Liberty explained in its Motion to Dismiss, the issue of coverage under the policies can be determined as a matter of law. Where, as here, the key issue between the parties is a question of law, arbitration is completely appropriate. Section 23-79-203 declares as void only those provisions that would deprive an insured of the right to trial by jury on any

question of fact. Despite Riceland's characterization, permitting arbitration would have no such effect.[1] The FAA would not invalidate, supersede or impair § 23-79-203, because it would not deprive Riceland of a trial by jury on issues of fact. As such, the McCarran Ferguson Act should not prevent FAA preemption of § 23-79-203.

Riceland states that even if the cross-pollination exclusion applies, some of the complaints in the underlying lawsuits contain allegations beyond just cross-pollination and therefore involve factual issues. Riceland, however, neglects to read the cross-pollination exclusion for what it is – an exclusion for damage caused *in whole or in part* by cross-pollination and other related events. The underlying suits are unquestionably based on Riceland's involvement in the distribution of genetically modified rice that may have been mixed with non-genetically modified rice. Cross pollination is a core allegation of each complaint, and even where additional causal factors are alleged and may have exacerbated damages, cross-pollination would still be, *in part*, the cause of damage. The question of law at issue is whether the cross pollination exclusion precludes any duty to defend for suits that allege that rice supplies became contaminated by genetically-modified rice.

Additionally, as noted above, for a law to regulate the business of insurance, it must have the effect of transferring or spreading a policyholder's risk. Section 23-79-203 strictly addresses a limited right to a jury trial for disputes related to insurance policies and annuity contracts. Like the AUAA, this section has no relation to fundamental insurance characteristics, such as the scope coverage, exclusions or conditions to coverage, or the underwriting process. In sum, § 23-79-203 fails to defeat two of the three hurdles necessary for reverse preemption.

---

[1]  Additionally, Liberty is not trying to "fuse" § 16-108-201(b) with § 23-79-203 as Riceland suggests. Liberty is simply reading the two statutes in conjunction so that a reasonable meaning may be given to both regulations.

## II.   RICELAND'S RELIANCE ON *STANDARD SECURITY* IS MISPLACED.

Riceland's opposition to application of the FAA is based almost exclusively on the Eighth Circuit's decision applying a Missouri statute in *Standard Security Life Insurance Co. v. West*, 267 F.3d 821 (8th Cir. 2001). Riceland argues that because the Eighth Circuit refused to permit FAA preemption of a Missouri statute involving arbitration in *Standard Security*, that the court should do the same here. Riceland's reliance on *Standard Security*, however, is misplaced.

Contrary to Riceland's argument that the Missouri statute at issue in *Standard Security* is "like" the AUAA, the two statutes are markedly different. The AUAA contains numerous exceptions to enforcement of arbitration clauses that have nothing to do with insurance, *i.e.*, personal injury and tort matters, employer-employee disputes and annuity contracts. In contrast, the Missouri statute in *Standard Security* only has exceptions for contracts of insurance and adhesion contracts. *See Standard Security*, 267 F.3d at 823. The court in *Standard Security* failed to address whether the inclusion of "adhesion contracts" took the statute outside of regulating the business of insurance. Nevertheless, the AUAA addresses much broader exceptions than the Missouri statute and is clearly outside the business of insurance.

Moreover, federal and Arkansas law strongly favors arbitration. Under Arkansas law, "any doubts and ambiguities must be resolved in favor of arbitration." *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007) (citing *Pest Mgmt., Inc. v. Langer*, 369 Ark. 52, 59, 250 S.W.3d 550, 556 (2007) (holding that homeowner's negligence claim against extermination company was subject to arbitration under the FAA instead of the state arbitration act where agreement was pursuant to interstate commerce)). Missouri, on the other hand, historically has a long-standing policy against the validity of arbitration clauses. *See Ainsworth v. Allstate Ins. Co.*, 634 F. Supp. 52, 55 (W.D. Mo. 1985) (ruling that despite Missouri's longstanding policy against the validity of arbitration clauses, the FAA's preemptive authority

could not be defeated by state arbitration regulations). Therefore, the court cannot assume that a Missouri court's application of arbitration law would be the same as that of an Arkansas court.

For these reasons, it is inappropriate to rely on *Standard Security* in determining whether FAA preemption should apply to the Liberty policies. Accordingly, the FAA preempts any Arkansas arbitration regulations.

### III.   RICELAND WAS ADEQUATELY NOTIFIED OF THE ADDITION OF THE ARBITRATION ENDORSEMENT.

While relying upon general Arkansas case law for the proposition that an insurer must notify a policyholder of a change in terms and conditions upon renewal, Riceland attempts to avoid the impact of the clear notification on the Arbitration Endorsement that: "**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**" by arguing that all endorsements change the policy. That is exactly the point. This notification clearly notifies Riceland of the policy change. *See Willems v. Rural Mut. Ins. Co.*, 2007 WL 4198613, 743 N.W.2d 168 (table) (Wis. Nov. 29, 2007) (per curiam) (determining that that the insureds had sufficient notice and refusing to reform the agreement where the policy endorsement included the warning "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY."); *see also Mundy v. Lumberman's Mut. Cas. Co.*, 783 F.2d 21, 22 (1st Cir. 1986) (where renewal policy contained a reduction in coverage "written in readable English in good-sized print" and admonished the reader to read the policy carefully, the insurer had sufficiently called the insured's attention to the change in coverage). Riceland's attempt to distinguish *Willems* and *Mundy* as out of state authority do not change their impact. These cases are on all-fours with the present case.

None of the Arkansas cases cited by Riceland establish that this notification is inadequate. *See Am. Casualty Co. v. Hambleton*, 233 Ark. 942, 944, 349 S.W.2d 664, 666

(1961) (requiring reformation of renewal policy because policyholder had explicitly requested a particular clause in its renewal and insurer neglected to include it); *Coal Operators Cas. Co. v. F.S. Neely Co.*, 219 Ark. 579, 243 S.W.2d 744 (1951) (reformation required where policyholder and agent of insured had intended coverage in two states, but policy only reflected one state); *General Agents Ins. Co. v. St. Paul Ins. Co.*, 22 Ark. App. 46, 50, 732 S.W.2d 868, 871 (1987) (reformation required when garage coverage, which was specifically requested by the policyholder, was omitted from renewal with no notice to policyholder). Each of the cases that Riceland cites involves a legitimate decrease in coverage from what the policyholder requested and expected in its renewal, with zero notice to the policyholder (whether due to mistake or intentional omission). The addition of an endorsement governing dispute resolution, with a highlighted notification of its presence, is not cause for reformation to an earlier policy. After receiving notification of the policy change for three consecutive years, Riceland cannot avoid enforcement of the Arbitration Endorsement.

### IV.   CHOICE OF LAW ARGUMENT IS PREMATURE.

Riceland chose to include in its Memo in Opposition an argument that the court should apply Arkansas's choice of law rules. A choice of law determination, however, is inappropriate at this early stage of litigation on a procedural issue. *E.g., In re Onstar Contract Litig.*, 600 F. Supp. 2d 861, 865 (E.D. Mich. 2009) (in ruling on a motion to dismiss, the court held that where limited arguments had been made and no discovery conducted, a choice of law analysis was premature); *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1349 (S.D. Fla. 2008) ("Without the benefit of discovery or briefing on the issue by [p]arties, it is premature to rule on the controlling law of the case."); *In re Air Crash Near Peixoto De Azaveda, Brazil*, 574 F. Supp. 2d 272, 288-89 (E.D.N.Y. 2008) (stating that it would be premature to make a definitive choice of law ruling because the litigation was at a preliminary stage and because it was not yet clear that the relevant

laws even conflicted). Therefore, the court should decline to rule on Riceland's choice of law argument.

## CONCLUSION

For the reasons set forth above, Liberty Mutual urges this Court to recognize the validity of the Arbitration Endorsement and to grant its Motion to Dismiss or Stay In Favor Of Arbitration.

Respectfully submitted,

H. William Allen (ABN 69001)
Brooks C. White (ABN 2000093)
ALLEN LAW FIRM
A Professional Corporation
212 Center Street, 9th Floor
Little Rock, AR 72201
(501) 374-7100
hwallen@allenlawfirmpc.com
bcwhite@allenlawfirmpc.com

By: /s/ H. William Allen
    H. William Allen

By: /s/ Brooks C. White
    Brooks C. White

Laura A. Foggan
Dale E. Hausman
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000
lfoggan@wileyrein.com
dhausman@wileyrein.com

## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of April, 2010, I electronically filed the foregoing Defendant's Reply Brief to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss or Stay with the Clerk of the Court using the CM/ECF System, which will send immediate notification of such filing to the following other counsel:

Paul D. Waddell, Esq.
Barrett & Deacon, P.A.
300 S. Church Street
Jonesboro, Arkansas 72403
pwaddell@barrettdeacon.com

-and-

Matthew S. Darrough, Esq.
Thompson Coburn LLP
One US Bank Plaza
St. Louis, Missouri 63101
mdarrough@thompsoncoburn.com

*Counsel for Plaintiff, Riceland Foods, Inc.*

/s/ H. William Allen
H. William Allen