**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| RICELAND FOODS, INC. | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | |
| | * | NO: 4:10CV00091   SWW |
| LIBERTY MUTUAL INSURANCE | * | |
| COMPANY | * | |
| | * | |
| Defendant | | |

## ORDER

Riceland Foods, Inc. ("Riceland") brings this insurance dispute pursuant to the Court's diversity jurisdiction against Liberty Mutual Insurance Company ("Liberty"). Before the Court is Liberty's motion to dismiss or stay the case in favor of arbitration (docket entries #12, #13), Riceland's response in opposition (docket entry #16), and Liberty's reply (docket entry #19). After careful consideration, and for reasons that follow, Liberty's motion will be denied.

**I.**

Riceland, an agricultural cooperative that provides marketing services for its farmer members, has been named as a defendant in over 100 lawsuits (hereinafter referred to as "underlying lawsuits") filed by coop members and rice distributors. The plaintiffs in the underlying lawsuits allege, among other things, that Riceland negligently allowed genetically modified rice to contaminate the United States long-grain rice supply, causing the plaintiffs to

1

suffer damages.

Liberty issued consecutive general liability policies to Riceland for the periods covering August 1, 2004 through August 1, 2008. The first policy issued, which provides coverage for the period from August 1, 2004 through August 1, 2005, did not contain an arbitration provision. However, the renewed policies, which together provide coverage for the period from August 1, 2005 through August 1, 2008, contain an arbitration provision that reads as follows:

> If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then either party may make a written demand for arbitration.

Compl., Exs. #1, #2, #3.

Riceland notified Liberty of the underlying lawsuits and sought defense and indemnification benefits under the aforementioned policies. Liberty declined to assume the defense of the underlying lawsuits or to reimburse Riceland for fees and costs incurred. On January 22, 2010, Liberty filed a claim for arbitration, seeking a declaration that Riceland has no right to coverage under the policies with respect to the underlying lawsuits. *See* Compl., Ex. #6. On February 10, 2010, Riceland commenced this diversity action seeking, among other things, declarations that the aforementioned arbitration endorsements are void under the Arkansas Uniform Arbitration Act ("AUAA") and otherwise unenforceable and that Liberty has a duty to defend and indemnify Riceland in the underlying lawsuits.

**II.**

Liberty moves to dismiss or stay this action in favor of arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. Riceland opposes the motion, arguing that pursuant to the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, the AUAA renders the arbitration

endorsements unenforceable.

    **Choice of Law**.

Riceland asserts that Arkansas law governs the interpretation of the insurance policies, but Liberty contends that a choice of law determination is "inappropriate at this early stage of litigation on a procedural issue." Docket entry #19, at 9. To the contrary, the question of whether the McCarran-Ferguson Act prevents the application of the FAA and compelled arbitration is a question of substantive law. Furthermore, unless Arkansas law governs the interpretation of the policies at issue, there is no basis for precluding application of the FAA. Accordingly, it is imperative that Court determine, at this time, which state's law governs interpretation of the insurance policies at issue in this case.

In a diversity action, a federal court looks to the choice-of-law principles of the forum state–in this case Arkansas--and applies those principles as the forum state would. *Simpson v. Liberty Mut. Ins. Co.*, 28 F.3d 763, 764 (8th Cir. 1994). In contract actions, when, as in this case, an agreement does not specify the law to be applied, Arkansas Courts have applied the "significant contacts" test, which requires an inquiry into the nature and quantity of each state's contacts with the transaction at issue. *Fuller v. Hartford Life Ins. Co.,* 281 F.3d 704, 706 (8th Cir. 2002); *Southern Farm Bureau Casualty Ins. Co. V. Craven*, 79 Ark. App. 423, 89 S.W.3d 369 (2002).

"In cases not involving an effective choice of law by the parties, the following factors are relevant to the determination of which state has the most significant relationship to a particular case: 1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; 5) the domicile, residence,

nationality, place of incorporation and place of business of the parties." *Crisler v. Unum Insurance Co. of America,* 366 Ark. 130, 133, 233 S.W.3d 658, 660 (2006)(citing Restatement (Second) Conflict of Laws § 188 (1971)).

Here, Liberty is a Massachusetts corporation with a principal place of business in Boston, *see* docket entry #13, Ex. G, and Riceland is an Arkansas corporation, with a principal place of business in Stuttgart. Although the Court has no information regarding the place of contracting or negotiation of the policies at issue, the face of the policies indicate that they were issued from Liberty's sales office in Little Rock, Arkansas. Additionally, the policies provide that if Riceland has questions, it should contact Liberty at a Little Rock address and phone number and contact the Arkansas Insurance Department if Liberty fails to provide adequate service. Finally, it is clear that the majority of the insured risk, thus the subject matter of the contract, is located in Arkansas. The Court finds that Arkansas law governs the interpretation of the insurance policies at issue in this case.

**Arbitration**.

Section 2 of the FAA compels judicial enforcement of arbitration agreements in any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. There is no dispute that the insurance policies at issue evidence a transaction involving interstate commerce. However, a provision contained in the AUAA, specifically Ark. Code Ann. § 16-108-201(b)(2), conflicts with the FAA's mandate because it provides that arbitration agreements contained in insurance contracts are unenforceable against insureds and beneficiaries.[1] *See IGF Ins. Co. v. Hat Creek*

---

[1] Another state law, Ark. Code Ann. § 23-79-203, declares void any provision contained in an insurance contract that directly or indirectly deprives the insured or beneficiary of the right to trial by jury on any question of fact arising under the contract. Liberty contends that pursuant

*Partnership*, 349 Ark. 133, 137, 76 S.W.3d 859. 862 (2002). Arkansas Code § 16-108-201(b) provides:

> (1) A written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract.
>
> (2) This subsection shall have no application to personal injury or tort matters, employer-employee disputes, nor to any insured or beneficiary under any insurance policy or annuity contract.

Ark. Code Ann. § 16-108-201(b).

Ordinarily, the FAA would preempt conflicting state law, but the McCarran-Ferguson Act operates to bar application of the FAA if (1) the FAA does not specifically relate to the business of insurance, (2) a state statute has been enacted for the purpose of regulating the business of insurance, and (3) the FAA would invalidate, impair, or supersede the state statute. *See Standard Security Life Ins. Co. of New York v. West*, 267 F.3d 821, 823 (8th Cir. 2001). Liberty does not dispute that the FAA does not specifically relate to the business of insurance, but it contends that the second and third factors are not present in this case. For the reasons that

---

to § 23-79-203, an arbitration clause in an insurance contract is unenforceable under § 16-108-201(b)(2) only when enforcement would deprive the insured of a jury trial on a question of fact. According to Liberty, the key issues in this case concern questions of law, rendering § 16-108-102(b)(2) inapplicable.

Liberty's argument is without merit. Far from putting limits on the applicability of § 16-108-201(b)(2), which invalidates arbitration agreements in insurance contracts, § 23-79-203 invalidates insurance policy provisions that bind insureds or beneficiaries to an appraisement of damages. As explained by the Arkansas Supreme Court, the object of § 23-79-203 is to invalidate "a clause providing for an appraisal in case of disagreement as to such an amount and make this condition precedent to the insured's rights of action on the policy" and "to enable policy holders to go before a jury on questions of fact *as well as* questions of law." *Firemen's Ins. Co. of Newark, N.J., v. Davis,* 130 Ark. 576, 198 S. W. 127, 128 (Ark. 1917).

follow, the Court disagrees.

Regarding the second factor, the Supreme Court has prescribed a framework for resolving whether a state law "regulates insurance" within the meaning of the McCarran-Ferguson Act. *See UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 373, 119 S. Ct. 1380, 1389 (1999). Under that framework, the a court must initially consider whether "from a common-sense view of the matter" the law regulates insurance. *UNUM*, 526 U.S. at 367, 119 S. Ct. at 1386. Next, a court should consider three factors: (1) whether the statue has the effect of spreading a policyholder's risk; (2) whether the statute is an integral part of the policy relationship between the insurer and the insured; and (3) whether the statute is limited to the entities within the insurance industry. *UNUM*, 526 U.S. at 367, 119 S. Ct. at 1386. Although the foregoing factors are relevant, they are merely guideposts, not separate essential elements that must each be satisfied. *UNUM*, 526 U.S. at 374, 119 S. Ct. at 1389(quoting *Cisneros v. UNUM Life Ins. Co.*, 134 F.3d 939, 945 (1998)).

Because § 16-108-201(b)(2) expressly exempts arbitration provisions in insurance contracts from the general policy of enforcing such provisions, common sense dictates that the provision regulates the business of insurance. As for the next three factors, the Court finds that two are clearly met. Section 16-108-201(b)(2) affects policyholder risk "by introducing the possibility of jury verdicts into the process of resolving disputed claims." *Standard Security Life Ins.*, 267 F.3d at 824. And § 16-108-201(b)(2) regulates an integral part of the insurer-insured relationship by invalidating an otherwise mandatory insurance contract term thus subjecting all disputes to the possibility of a jury trial. *Id*. Although § 16-108-201(b)(2) also exempts tort and employment claims from arbitration and thus is not limited to entities within the insurance

industry, a finding that two of the three *UNUM* factors is sufficient to conclude that the provision regulates insurance.

Regarding the third factor, that is, whether the FAA would invalidate, impair, or supersede § 16-108-201(b), it is clear that application of the FAA to enforce the arbitration endorsements would terminate the operation of § 16-108-201(b)(2) and have the effect of displacing or superceding the state law.  In sum, the Court finds that the three criteria relevant to deciding whether the McCarran-Ferguson Act bars application of the FAA are met in this case, and that Liberty's motion must be denied.

### III.

For the reasons stated, Defendant's motion to dismiss or stay this action in favor or arbitration (docket entry #12) is DENIED.

IT IS SO ORDERED THIS 6TH  DAY OF AUGUST, 2010.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE
