**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| RICELAND FOODS, INC. | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | |
| | * | NO: 4:10CV00091 SWW |
| LIBERTY MUTUAL INSURANCE | * | |
| COMPANY | * | |
| | * | |
| Defendant | | |

**ORDER**

Riceland Foods, Inc. ("Riceland") brings this diversity action against Liberty Mutual Insurance Company ("Liberty"), seeking a declaratory judgment regarding Liberty's duty to defend it against claims arising from contamination of the commercial rice supply by genetically modified ("GM") rice. Before the Court is Liberty's motion for summary judgment (docket entries #38, #39, #40, #41), Riceland's response in opposition (docket entries #44, #45), and Liberty's reply (docket entry #46). After careful consideration, and for reasons that follow, the motion for summary judgment will be granted to the extent that the Court finds that Liberty owes Riceland no defense in *Soufflet Alimentaire v. Riceland Foods, Inc.* (Valenciennes Commercial Court, France), but the motion is denied in all other respects.

I.

Riceland is an agricultural cooperative that processes and markets rice and other agricultural commodities for its farmer members, and Liberty is an insurance company that issued commercial general liability policies ("the Policies") to Riceland for the periods covering

August 1, 2005 through August 1, 2008.  Riceland and various affiliates of Bayer Crop Science ("Bayer") have been named as defendants in over 170 civil lawsuits in which the plaintiffs claim that they suffered damages from the contamination of the commercial rice supply by GM rice. The underlying lawsuits include "Grower Lawsuits" prosecuted by rice growers and "Distributor Lawsuits" prosecuted by rice distributors.

Riceland notified Liberty of the underlying lawsuits and sought a defense under the Policies.  Under a reservation of rights, Liberty agreed to provide a defense in all of the underlying lawsuits, with the exception of three, but then filed a claim for arbitration, taking a no-coverage position as to all of the underlying lawsuits.  On February 10, 2010, Riceland commenced this action seeking a declaration regarding Liberty's duty to defend, and by order entered August 6, 2010, the Court denied Liberty's motion to dismiss or stay this case in favor of arbitration.  The matter is now before the Court on Liberty's motion for summary judgment.

II.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but

must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

### III.

Liberty maintains that the Policies' terms and exclusions "plainly and unambiguously" preclude coverage with respect to the Grower and Distributor Lawsuits. As a general rule, the duty to defend is determined by comparing the allegations in the underlying complaint with the scope of coverage provided under the insurance policy. *See Murphy Oil USA, Inc. v. Unigard Security Insurance Co.,* 347 Ark. 167, 175-76, 61 S.W.3d 807, 812-13 (2001) (citations omitted). Under Arkansas law,[1] the duty to defend is broader than the duty to indemnify, and it arises when there is a *possibility* that the injury or damage may fall within the liability policy coverage. *See id.* An intent to exclude coverage in an insurance policy must be expressed in clear and unambiguous language, and the burden is upon the insurance company to present facts that come within the stated exclusion. *See Union Bankers Ins. Co. v. National Band of Commerce*, 241 Ark. 554, 556, 408 S.W.2d 898, 900 (1966). In testing the pleadings to determine if they state a claim within the policy coverage, a court must resolve any doubt in favor of the insured. *See Murphy Oil,* 347 Ark. at 178, 61 S.W.3d at 814.

<u>Pertinent Policy Provisions</u>

Regarding the scope of coverage, the Policies provide:

---

[1] For reasons explained in the order entered on August 6, 2010 (docket entry #24), the Court finds that Arkansas law governs the substantive issues in this case.

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

Compl., Exs. ##1-3 (Commercial General Liability Coverage Form, Section I(1)(a)).

The Policies specify that the insurance applies to claims for "property damage" only if the damage is caused by an "occurrence." *Id*. (Commercial General Liability Coverage Form, Section I(1)(b)). The Policies contain the following definitions for "property damage" and "occurrence."

> "Property damage" means:
>
> > a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use she be deemed to occur at the time of the physical injury that caused it; or
> >
> > b. Loss of the use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> "Occurrence" means:
>
> > An accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*Id*. (Commercial General Liability Coverage Form, Section V(13, 17)).

Finally, a change endorsement to the Policies excludes coverage for property damage caused in whole or in part by (among other things) cross-pollination, mis-delivery, mis-packaging, or mis-labeling.[2]

---

[2]The change endorsement reads:

Coverage is excluded under this policy for bodily injury or property damage caused in

4

The Grower Lawsuits

The parties agree that the Grower Lawsuits for which Liberty has agreed to provide a defense, under a reservation of rights, involve similar if not identical factual allegations and seek relief under the same legal theories--including negligence, gross negligence, fraudulent concealment, and strict liability. A sample of complaints[3] filed in the Grower Lawsuits set forth the following common allegations:

- Arkansas rice is marketed as a commodity to domestic and foreign purchasers. GM rice has not been proven safe for long-term human or animal consumption, and many rice purchasers, especially member states of the European Union, will not accept GM rice. Accordingly, the Grower Plaintiffs have never intentionally planted GM rice for commercial production.

- From 1996 to 2006, Bayer grew and tested varieties of GM rice known as Liberty Link Rice ("LLRICE"),[4] and during that time, Bayer failed to take precautions to prevent LLRICE from contaminating or infiltrating the nation's commercial rice supply. For example, Bayer failed to use safe growing zones; failed to properly train individuals who grew, handled, and transported LLRICE; failed to segregate equipment used in fields where LLRICE grew; and failed to exercise reasonable care in the transportation and storage of LLRICE.

---

whole or in part by:

    A) Cross Pollination
    B) Failure of Germination
    C) Transmission to plants grown with such seeds, of any Disease, Rust, Wilt, Fungus or Insects of Larvae of eggs thereof by seeds sold by the Insured.
    D) Mis-Delivery, Mis-Packaging, or Mis-Labeling

Compl., Exs. #1-3 (Change Endorsement).

[3]Liberty presents copies of 167 complaints filed in the Grower Lawsuits. *See* docket entry #39, Exs. ##1-10. Because the parties agree that the complaints contain similar allegations, the Court has reviewed only a portion of the pleadings submitted.

[4]The complaints refer to several varieties of Liberty Link Rice, but for the purpose of this Order, the Court refers to all varieties as "LLRICE."

- In the early 2000's, Riceland began taking an active role in Bayer's LLRICE project by entering contracts with farmers to grow LLRICE and by milling and processing LLRICE for Bayer. Riceland failed to take precautions to prevent LLRICE from contaminating or infiltrating the commercial rice supply. Like Bayer, Riceland failed to utilize growing buffer zones, failed to segregate LLRICE and equipment used to grow LLRICE, and failed to exercise reasonable care in the transportation and storage of harvested LLRICE.

- In August 2006, the United States Department of Agriculture ("USDA") announced that LLRICE had been discovered in the United States rice supply, which caused an immediate drop in the price of rice. Contamination of the rice supply caused Arkansas rice farmers to suffer significant damage–including lost profits from 2006 and subsequent rice crops, loss of superior seed varieties, and the permanent contamination of rice fields.

- Bayer and Riceland knew or should have known of the LLRICE contamination long before the USDA's announcement, but the companies withheld the information. In January 2006, Riceland learned that LLRICE had been discovered in a variety of long-grain rice but failed to pass the information on to its farmer members, including the Grower Plaintiffs, who were making planting decisions for the 2006 growing season. Because Riceland failed to disclose information about the LLRICE contamination, the Grower Plaintiffs planted contaminated rice supplied by Riceland, causing permanent damage to their crops and land.

Liberty asserts that coverage with respect to the Grower Lawsuits is foreclosed under the aforementioned cross-pollination exclusion, which precludes coverage for property damage "*caused in whole or in part*" by cross-pollination. According to Liberty, "the core allegation in . . . the Grower Lawsuits is that cross-pollination was the primary means of contamination of the . . . rice supply." Docket entry #31, at 1. The Court disagrees. The Grower Plaintiffs charge that LLRICE entered the commercial rice supply through cross-pollination in the field *or* the physical mixing of LLRICE with conventional rice during harvest, processing, transportation, or storage. The pleadings are void of allegations suggesting that cross-pollination is a primary, indispensable, or "but for" cause of property damage.[5]

---

[5]The Grower Plaintiffs assert that GM rice can enter the commercial rice supply through various avenues including "(1) birds and/or other natural elements such as wind transporting

According to Liberty, the cross-pollination exclusion requires that "even if the Grower Suits allege multiple causes for the contamination of the rice supply, if cross-pollination is one of those [alleged] causes, coverage is excluded." Docket entry #41, at 11. But, as Riceland points out, the cross-pollination exclusion eliminates coverage for property damage "*caused* in whole or in part" by cross-pollination; it does not preclude coverage on the basis of *alleged* causes of damage.

Riceland notes that the Policies contain other exclusionary provisions that specifically preclude coverage for property damage "allegedly caused by" certain factors. For example, the Policies contain an asbestos exclusion that precludes coverage for "damage caused by or allegedly caused by asbestos either alone or in combination with other substances or factors" and a fungi exclusion that precludes coverage for damage "which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with exposure to, existence of, or presence of any 'fungi' or bacteria within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage." Compl., Exs. ##1-3 (Change Endorsements). If Liberty intended to eliminate coverage upon any allegation of cross-pollination, it could have used similar language in the cross-pollination exclusion, but it did not.

Under Arkansas law, contracts are to be construed as a whole, and all terms should be

---

genetically modified rice to other fields containing non-genetically modified rice, (2) . . . use of equipment on fields where genetically modified rice was being planted/grown/tested and then using the same equipment on fields that were supposed to contain only genetically modified rice, thereby transporting genetically modified rice and contaminating non-genetically modified rice fields, and (3) commingling of genetically modified rice with non-genetically modified rice during harvest, transport, storage and processing." *See* docket entry #39, Exs. ##15-22. The Grower Plaintiffs further charge that if Riceland had informed them of the contamination in January 2006, they would have avoided permanent damage to their crops and land.

given meaning. *See Wintermute v. Kansas Bankers Sur. Co.,* 630 F.3d 1063, 1071 (8th Cir.

2011)(citing *Travelers Indem. Co. v. Olive's Sporting Goods, Inc.*, 764 S.W.2d 596, 599

(1989)). Under the plain language of the exclusion precluding coverage for property damage

"*caused* in whole or in part" by cross-pollination, the duty to defend remains when cross-

pollination is presented as one of several potentially independent causes of the damage. Under

the pleadings against Riceland, it is possible that contamination of the rice supply occurred in the

absence of cross-pollination, and the cause of contamination is a question for the trier of fact.[6]

---

[6]Liberty cites three cases, summarized below, in which insurance policies excluded coverage for damages caused "in whole or in part" by certain injury-producing agents. Unlike the present case, allegations in the underlying complaints clearly matched the exclusionary provisions and foreclosed any possibility that the injury or damage fell within the policy coverage.

- In *International Hospitality Services, Inc., v. Hartford Casualty Insurance Co.*, No. 2:04CV774, 2005 WL 2622023, *6 (E.D. Va. Oct. 14, 2005), a cataclysmic release of asbestos occurred in the course of hotel renovations, causing $2,000,000 in damages. The hotel sued the contractor for negligence, and the contractor requested a defense under an liability policy that excluded coverage for damages incurred by reason of any claim "alleging actual or threatened injury of any nature or kind to persons or property that would not have occurred in whole or in part but for the asbestos hazard." *Id.*, *1. The insurer denied coverage under the asbestos exclusion, and the contractor filed suit, arguing, among other things, that the hotel actively concealed the presence of asbestos. The district court held that the asbestos exclusion precluded coverage, finding that it was "plainly wrong to say that the damages were not caused at least 'in part' by the asbestos hazard." *Id.* at *6 n.12.

- In *Regis Ins. Co. v. Kenny's Bar & Restaurant,* No. 06-05703-28-5, 2008 WL 2973884 (Pa. Com. Pl. April, 1, 2008), the policyholder, a restaurant owner, sought a defense when a patron claimed that improperly trained restaurant employees failed to protect him from a physical assault. The insurer denied coverage under an exclusionary provision that precluded coverage for injury arising in whole or in part from assault and battery or any act or omission in connection with the prevention of assault and battery and which applied "without regard to . . . the alleged failure of the insured . . . in the hiring, supervision, retention, or control of any person." Because the patron clearly sought recovery for injuries caused at least in part by assault and battery, coverage was precluded.

Notwithstanding the plain language of the cross-pollination exclusion, Liberty argues that the express language of the Policies' insuring agreement relieves it of a duty to defend any lawsuit alleging property damage caused in whole or in part by cross-pollination. The insuring agreement provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. *We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.*

(Complaint, Exs. 1-3) (emphasis added).

Under the Policies, the term "suit" is defined as "a civil proceeding in which damages because of . . . 'property damage' . . . to which this insurance applies are alleged." Compl., Exs. #1-3(Section V(18)). Construing the Policies so that all parts harmonize, the Court interprets the insuring agreement to mean that Liberty has a duty to defend any suit that includes a claim for property damage to which the insurance applies, but has no duty to defend if the claims for damages are limited to those to which the insurance does not apply. *See Smith v. Southern Farm Bureau Cas. Ins. Co.,* 353 Ark. 188, 196, 114 S.W.3d 205, 209 (2003)(stating that clauses must be read together and the contract construed so that all of its parts harmonize, if that is possible).

---

- In *S.J.A.J. v. First Things First,* No. 99-0552, 2000 WL 463309 (Wis. Ct. App. April 25, 2000), the court held that an insurer had no duty to defend a psychotherapist facing charges that he "negligently had sexual contact" with a patient "and committed other similar acts of malpractice." The policy at issue excluded coverage for "any claims made or suits brought against any insured alleging, in whole or in part, . . . behavior which threatened, led to or culminated in any sexual act." *Id.* The policyholder argued that the psychotherapist's improper relationship with the patient and his failure to properly treat her amounted to independent, concurrent causes of injury. The court disagreed, finding that the negligent acts charged in the complaint were clearly excluded under the broadly-worded, sexual-act exclusion.

9

This interpretation is consistent with the general rule that the duty to defend, if triggered by one claim asserted against the insured, obligates the insurer to provide a defense as to the entire action, even though other claims are clearly outside the scope of coverage. *See Homebank of AR v. Kansas Bankers Sur. Co*., No. 4:06CV01670 SWW, 2008 WL 2704670, *7 (E.D. Ark. July 7, 2008)(citing *Medical Liability Mut. Ins. Co. v. Alan Curtis Enterprises, Inc*., No. 4:05CV01317 GTE, 2006 WL 3542986, * 12 (E.D. Ark. Dec. 8, 2006)).

For the reasons stated, Liberty is not entitled to summary judgment by reason of the cross-pollination exclusion.

The Distributor Lawsuits

The Distributor Plaintiffs are European companies that purchase rice from various suppliers, including Riceland, and distribute the same to European customers, who will not accept GM rice. The Distributor Plaintiffs charge that Riceland wrongfully supplied them with genetically modified rice, which caused them to suffer damages including lost profits and loss of inventory. Additionally, the Distributor Plaintiffs claim that Riceland failed to use ordinary care to prevent contamination of the commercial rice supply by GM rice.

Liberty asserts that the policy change endorsement excluding coverage for "property damage caused in whole or in part by . . . Mis-Delivery, Mis-Packaging, or Mis-Labeling" relieves it of a duty to defend Riceland in the Distributor Lawsuits. According to Liberty, "whether Riceland's shipment of genetically modified rice . . . is characterized as an error or a fraudulent attempt to pass off genetically modified rice as non-genetically modified rice, each shipment constitutes a 'Mis-Delivery, Mis-Packaging, or Mis-Labeling' of nonconforming goods." Docket entry #41, at 18.

Under Arkansas law, any intent to exclude coverage in an insurance policy should be

expressed in clear and unambiguous language, and the burden is upon the insurance company to show that the injury or damage comes within the stated exclusion. *See State Farm Mutual Auto Insurance Company v. Baker*, 239 Ark. 298, 388 S.W.2d 920 (1965). Liberty fails to present any facts or authority demonstrating that the Distributor Plaintiffs seek relief from property damage caused in whole or in part by mis-delivery, mis-packaging, or mis-labeling, terms that are not defined under the Policies.

"'Absent absolute clarity on the face of the complaint that a particular policy exclusion applies, there exists a potential for coverage and an insurer cannot justifiably refuse to defend.'" *Wintermute v. Kansas Bankers Sur. Co.* 630 F.3d 1063, 1071 (8th Cir. 2011)(quoting *Lorenzo v. Capitol Indem. Corp.*, 401 Ill. App. 3d 616, 340 Ill. Dec. 677, 928 N.E.2d 1274, 1278 (2010)). Here, the underlying pleadings seek damages for breach of contract, breach of warranties, negligence, nuisance, strict liability, fraud, deceptive trade practices, and conspiracy, and no facts indicate that the plaintiffs seek relief from property damage caused by mis-delivery, mis-packaging, or mis-labeling. Liberty has failed to show that it is entitled to summary judgment under the mis-delivery, mis-labeling, or mis-packaging exclusions.

Liberty argues that the cross-pollination exclusion eliminates a duty to defend the Distributor Lawsuits "because they allege harm at least 'in part' by cross pollination." Docket entry #41, at 13. Like the Grower Plaintiffs, the Distributor Plaintiffs present cross-pollination as one of several, independent means by which LLRICE may have entered the commercial rice supply. *See* docket entry #39, Ex. # 100 ¶¶ 31-33. For reasons previously explained, Liberty is not relieved of a duty to defend under the cross-pollination exclusion.

<u>Specific Grower Lawsuits for which Liberty Denied Coverage</u>

Liberty declined to provide a defense in two Grower Lawsuits, *Heigle v. Bayer*

*CropScience US*, No. 4:07CV00526 CDP (E.D. Mo.) and *Parson v. Bayer CropScience*, No. 4:07CV00053 CDP (E.D. Mo.). In these cases, the plaintiffs claim that Riceland negligently contaminated the rice supply with GM rice, which caused them to suffer damages "by an enormous drop and loss in [the] value of their rice product." Docket entry #40, Ex. #109, ¶ 38.

The Policies provide that the insurance apples to "property damage" caused by an "occurrence." Liberty asserts that it has no duty to provide a defense in *Heigle* and *Parson* because the plaintiffs do not allege an "occurrence" or "property damage" within the meaning of the Policies. The Policies define "property damage" as (a) physical injury to tangible property, including all resulting loss of use of that property or (b) loss of the use of tangible property that is not physically injured, and "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Compl., Ex. ## 1-3. (Commercial General Liability Coverage Form, Section V(13, 17)).

Courts interpreting similar policy definitions have held that negligent contamination of drink and food products by a harmful or undesirable substance amounts to an "occurrence" resulting in "property damage" covered under the policy. *See Nat'l Union Fire Ins. Co. v. Terra Indus., Inc.*, 346 F.3d 1160, 1165 (8th Cir. 2003)(finding the incorporation of contaminated carbon dioxide in consumer beverages represented an "occurrence" resulting in "property damage"); *Zurich Am. Ins. Co. v. Cutrale Citrus Juices USA, Inc*., 2002 WL 1433728, at *3 (M.D. Fla. Feb.11, 2002)(finding the adulteration of juice constituted an "occurrence" that resulted in "property damage"); *Chubb Ins. Co. of N.J. v. Hartford Fire Ins. Co.*, 1999 WL 760206, at *8 (S.D.N.Y. Sep.27, 1999) ("Fruit juice is tangible property, and the accidental introduction of an adulterant is a physical event that causes injury or damage just as surely as the damage resulting from the collision of two automobiles.").

Keeping in mind that a duty to defend arises with a mere possibility that coverage exists and that any doubt must be resolved in favor of the insured, the Court finds that the negligent or accidental contamination of the commercial rice supply by unapproved, unmarketable GM rice amounts to an "occurrence" under the Policies, and the resulting harm to the grower plaintiffs' fields and rice crops, whether viewed as physical injury to tangible property or lost use of tangible property, constitutes "property damage" under the Polices.  *See Geurin Contractors, Inc. v. Bituminous Cas. Corp.* 5 Ark. App. 229, 236, 636 S.W.2d 638, 641 (1982)(finding that lost profits resulting from road closure satisfied policy definition of property damage); *see also St. Paul Fire & Marine Ins. Co. v. Northern Grain Co.*, 365 F.2d 361, 366 (8th Cir. 1966)(finding that diminution in the value of a wheat crop amounted to property damage within the scope of liability policy).

### Specific Distributor Lawsuit for which Liberty Denied Coverage

Liberty has denied coverage in a Distributor Lawsuit captioned *Soufflet Alimentaire v. Riceland Foods, Inc., et al.*, (Valenciennes Commercial Court, France), on the ground that the plaintiff seeks relief solely for breach of contract and does not allege "property damage" caused by an "occurrence."

A writ of summons filed in *Soufflet* on April 26, 2007 (docket entry #40, Ex. #140) states that in March 2006, pursuant to two contracts between Riceland and food distributor Soufflet Alimentaire ("Soufflet"), Soufflet received rice cargos supplied by Riceland. According to Soufflet, the rice received contained traces of genetically-modified rice, rendering the grain unsaleable.  Soufflet reports that the contaminated rice is stored in warehouses, and Riceland has disclaimed all liability and has refused Soufflet's requests for a remedy.  Soufflet claims that Riceland is "contractually liable toward Soufflet . . . for the contaminated product."

13

Courts must resolve any doubt in favor of the insured in determining whether a complaint states a claim within the policy coverage.  *See Murphy Oil*, 347 Ark. at 178, 61 S.W.3d at 814.   Courts are not, however, required by the rules of contractual construction to stretch the imagination to create coverage where none exists. *See Pate v. U.S. Fid. & Guar. Co.*, 14 Ark. App. 133, 136, 685 S.W.2d 530, 532 (1985).   Here, the writ of summons  is void of allegations suggesting that Soufflet suffered property damage; it merely alleges that Riceland is contractually liable  because it supplied Soufflet a contaminated, unmarketable product.  Accordingly, the Court agrees that Liberty owes no duty to defend Riceland in  *Soufflet Alimentaire v. Riceland Foods, Inc., et al.*, (Valenciennes Commercial Court, France).  *See Unigard Security Ins. Co. v. Murphy Oil*, 331 Ark. 211, 962 S.W.2d 735 (1998)(holding that liability policy covering claims for property damage provided no coverage for claims arising from breach of contract).

IV.

For the reasons stated, Defendant's motion for summary judgment (docket entry #38) is GRANTED IN PART AND DENIED IN PART.  The motion is granted to the extent that the Court finds that Defendant Liberty Mutual Insurance Company has no duty to defend Plaintiff Riceland Foods, Inc. in a civil proceeding captioned  *Soufflet Alimentaire v. Riceland Foods, Inc., et al.*, (Valenciennes Commercial Court, France).  The motion is denied in all other respects.

IT IS SO ORDERED THIS 8TH   DAY OF JUNE, 2011.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

14